**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

LINDSAY L. CLAYTON
Assistant Director

ALEX SCHULMAN
Trial Attorney

Tax Litigation Branch
Civil Division, Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044

**TABLE OF CONTENTS**

| **Content(s)** | **Page(s)** |
|---|---|

I.  Legal Standards ................................................................................................. 1

      a. Rule 12(b)(1) .................................................................................................. 2

      b. This Court's Jurisdiction Over Refund Suits ................................................... 2

II.  Factual Background ........................................................................................... 3

III. Argument ........................................................................................................... 3

      a. BMW's original return determines the timeliness of its refund claim ............................ 4

      b. The other authorities BMW may rely upon are inapposite, and BMW's reading
         of the law contradicts longstanding Supreme Court precedent concerning
         the statute of limitations on tax assessments ..................................................... 7

            1. BMW's reliance on *Haggar v. Helvering* and/or a superseded IRS Chief
               Counsel Advisory are misplaced .......................................................... 7

            2. BMW's position would call into question longstanding Supreme Court
               precedent on tax-assessment statutes of limitation, which adopts
               a parallel original return rule .......................................................... 10

IV. Conclusion ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Case(s)**                                                                              **Page(s)**

*AD Glob. Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*,
    67 Fed. Cl. 657, 693 (2005) ................................................................................. 8

*Badaracco v. Deleet Merchandising Corp. v. Comm'r*,
    464 U.S. 386, 389, 391, 392-393, 396, 397 (1984) ........................................... 8, 11, 12, 13

*Biestek v. United States*,
    No. 2023-1467, 2025 WL 2985073, at **6-8 (Fed. Cir. Oct. 23, 2025) ........................2, 3

*Brown v. United States*,
    22 F.4th 1008, 1011 (Fed. Cir. 2022) .................................................................. 2

*Chaney v. United States,*
    45 Fed. Cl. 309, 311-312 (1999) ........................................................................ 5

*Chavez v. Bondi*,
    134 F.4th 207, 220-221 (4th Cir. 2025) .............................................................. 9

*Dixon v. United States*,
    67 F.4th 1156, 1161 (Fed. Cir. 2023) ................................................................. 2

*Edwards v. United States*,
    92 Fed. Cl. 277, 282-283 (2010) ........................................................................ 1

*First Charter Financial Corp. v. United States*,
    669 F.2d 1342 (9th Cir. 1982) ............................................................................ 2

*Greene v. United States*,
    191 F.3d 1341, 1342, 1343 (Fed. Cir. 1999) ...................................................... 5, 6, 7, 13

*Haggar v. Helvering*,
    308 U.S. 389, 391-395 (1940) ...................................................................... *passim*

*Hall v. United States*,
    111 Fed. Cl. 766, 769 (2013) .............................................................................. 8

*Kaltreider Const., Inc. v. United States,*
    303 F.2d 366, 367-369 (3d Cir. 1962) ................................................................4, 5

*Koopmann v. United States*,
    150 Fed. Cl. 290, 297–98 (2020) ........................................................................8, 9

ii

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369, 388, 394, 400 (2024) ................................................................ 9

*Malonek v. United States,*
923 F. Supp. 1462, 1465 (D. Wyo. 1996) ........................................................ 5

*McCaffery v. United States,*
155 Fed. Cl. 121, 126 (2021) .......................................................................... 1

*Mertens v. United States,*
12 Cl. Ct. 678, 679 (1987) .............................................................................. 5

*Mitchell v. Comm'r,*
103 T.C. 520, 522 (1994) ................................................................................ 2

*Nat'l Paper Prods. Co. v. Helvering,*
293 U.S. 183, 186 (1934) ................................................................... 10, 11, 12

*Polk v. United States,*
167 Fed. Cl. 731, 759-61 (2023) ..................................................................... 2

*Skidmore v. Swift & Co.,*
323 U.S. 134, 140 (1944) ................................................................................ 9

*Sullivan v. United States,*
46 Fed. Cl. 480, 490 (2000) ............................................................................ 8

*Trusted Integration, Inc. v. United States,*
659 F.3d 1159, 1163 (Fed. Cir. 2011) ............................................................ 2

*United States v. Brockamp,*
519 U.S. 347, 352 (1997) ................................................................................ 8

*United States v. Dalm,*
494 U.S. 596, 602 (1990) ................................................................................ 2

*Zellerbach Paper Co. v. Helvering,*
293 U.S. 172, 173-174, 175, 176, 180, 181 (1934) ............................. 10, 11, 12

**Procedural Rules**                                                    **Page(s)**

RCFC § 12(b)(1) .......……………................................……….....……..... 1, 2

RCFC § 12(h)(3) ............................................................................................. 1

**Federal Statute(s)**                                                                    **Page(s)**

26 U.S.C. § 168(k) ................................................................................................. 3

26 U.S.C. § 250 ..................................................................................................... 3

26 U.S.C. § 6501 ............................................................................................... 9, 12

26 U.S.C. § 6501(a) ...................................................................................... 10, 11, 12

26 U.S.C. § 6501(b)(1) ........................................................................................ 2, 9

26 U.S.C. §§ 6501(b) through (q) ............................................................................ 12

26 U.S.C. § 6501(c)(1) ........................................................................................... 12

26 U.S.C. § 6511(a) ......................................................................................... *passim*

26 U.S.C. § 6511(c) ............................................................................................... 10

26 U.S.C. § 6511(d)(2) ........................................................................................... 10

26 U.S.C. § 6513(a) ............................................................................................. 2, 9

26 U.S.C. § 7422(a) ................................................................................................. 2

**Regulation(s)**                                                                         **Page(s)**

Additional First Year Depreciation Deduction
    85 Fed. Reg. 71,734 (Nov. 10, 2020) ................................................................. 3

**Other Authorities**                                                                     **Page(s)**

IRS CCA 200645019,
    2006 WL 3251969 (Nov. 10, 2006) ................................................................. 9, 10

IRS CCA 202026002,
    2020 WL 3481726 (June 26, 2020) ................................................................... 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**MOTION TO DISMISS**

Defendant, the United States, respectfully requests that the Court dismiss the complaint in the above-captioned case under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). This is a tax refund case in which plaintiff claims to be entitled to around $38.5 million in overpayments for its 2019 tax year. *See* Dkt. 1 at ¶¶ 1-2. The case should be dismissed because the jurisdictional prerequisites for seeking a tax refund in this Court were not met.

**I.    Legal Standards**

**a.  Rule 12(b)(1)**

"A plaintiff in this Court must establish subject matter jurisdiction by a preponderance of the evidence." *McCaffery v. United States*, 155 Fed. Cl. 121, 126 (2021). Lack of subject matter jurisdiction requires dismissal under RCFC 12(h)(3). *Edwards v. United States*, 92 Fed. Cl. 277, 282–83 (2010). In evaluating a motion to dismiss pursuant to RCFC 12(b)(1) the Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable

1

inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### b. This Court's Jurisdiction Over Refund Suits

There are well-established statutory preconditions to this Court's having jurisdiction over a tax refund suit. First, "[n]o suit or proceeding shall be maintained" unless "a claim for refund … has been duly filed" with the IRS "according to the provisions of law in that regard." I.R.C. § 7422(a). Second, that administrative refund claim must have been "filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." *Id.* § 6511(a). A return filed before the last day to file is generally deemed filed on that last day. *See* I.R.C. §§ 6501(b)(1), 6513(a). However, "[w]hen an extension of time to file is obtained, a return that is delivered to the IRS before the extended due date is considered filed as of the day it is delivered to the IRS." *Mitchell v. Comm'r*, 103 T.C. 520, 522 (1994); *see also First Charter Financial Corp. v. United States*, 669 F.2d 1342 (9th Cir. 1982). Generally, unless the statutory filing preconditions are met, a refund suit "may not be maintained in any court" and will be dismissed for lack of subject-matter jurisdiction. *United States v. Dalm*, 494 U.S. 596, 602 (1990).

The Federal Circuit has held that the "duly filed" requirement of Section 7422(a) is not always jurisdictional because "the adequacy of the filing … is different from the fact of filing." *Brown v. United States*, 22 F.4th 1008, 1011 (Fed. Cir. 2022). However, this is squarely a jurisdictional "fact of filing" case per the time limitation rules of Section 6511(a) and, therefore, proper for disposition under RCFC 12(b)(1). *See Dixon v. United States*, 67 F.4th 1156, 1161 (Fed. Cir. 2023) (holding that Section 6511(a) compliance remains jurisdictional); *Polk v. United States*, 167 Fed. Cl. 731, 759-61 (2023) (same); *accord Biestek v. United States*, No. 2023-1467,

2

2025 WL 2985073, at **6-8 (Fed. Cir. Oct. 23, 2025) (Section 6511(a) time limitations are not subject to equitable tolling principles).

## II.    Factual Background

Plaintiff (henceforth "BMW") is the American parent corporation for a group of companies operating in the United States, and the agent authorized to file corporate tax returns on behalf of that consolidated group. This case concerns two separate tax returns and a later refund claim filed for BMW's 2019 tax year. Dkt. 1 at ¶¶ 9-10, 12-13.

BMW's 2019 return was timely filed on September 15, 2020, prior to the IRS-extended due date of October 15, 2020. *Id.* at ¶¶ 9-10. On September 21, 2020, the IRS issued final regulations concerning I.R.C. § 168(k) that affected an aspect of BMW's 2019 return. *Id.* at ¶ 11; *see* 85 Fed. Reg. 71,734 (Nov. 10, 2020). BMW then filed a timely supplemental return on October 14, 2020. Dkt. 1 at ¶ 12. BMW later filed, allegedly on October 13, 2023 (*id.* at ¶ 13),[1] a Form 1120-X, Amended U.S. Corporation Income Tax Return seeking a refund of around $38.5M due to changes in foreign-derived intangible income under I.R.C. § 250 as well as other informational and computational adjustments. The IRS disallowed the claim as untimely on November 21, 2023. Dkt. 1 at ¶ 14.

## III.    Argument

It is not in dispute that the administrative refund claim relevant to this Court's jurisdiction was filed more than three years after BMW's original 2019 tax return, making it untimely under

---

[1] Both IRS transcripts and the notice of disallowance indicate the refund claim was in fact filed on October 11, 2023, but this discrepancy is irrelevant to the instant motion as the United States' argument shows the filing was untimely in either case. Reflecting the standard discussed in Section I.a, the United States assumes the truth of the allegations in the Complaint cited herein for the purposes of this motion. The United States reserves the right to challenge BMW's factual assertions in later proceedings, should they occur.

3

I.R.C. § 6511(a) if pegged to that original return. The only question, then, is whether BMW can rescue this suit by tying the timeliness of the refund claim to what BMW calls its "superseding" return filed a month later. Dkt. 1 at ¶ 12. But case law forecloses that argument, leaving this Court without jurisdiction to hear BMW's refund suit. Under I.R.C. § 6511(a), the limitations period for claims of credit or refund for BMW's 2019 tax year lapsed on September 15, 2023, three years after its first-filed return.

### a. BMW's original return determines the timeliness of its refund claim.

Section 6511(a)'s language "within 3 years from the time the return was filed" must be construed such that "the return" refers to the first-filed return rather than any allegedly supplemental or superseding return, barring one narrow exception not applicable here. That has been the conclusion of every court to examine this question going back decades, and it should be the dispositive conclusion here.

The Third Circuit articulated this rule in *Kaltreider Const., Inc. v. United States. See* 303 F.2d 366 (3d Cir. 1962), *cert. denied*, 371 U.S. 877 (1962). The taxpayer filed a tax return for its 1952 tax year in March 1953, and then filed an amended return reporting and simultaneously paying additional tax in March 1956. *Id.* at 367. *Id.* Shortly after a 1958 judgment held that the wrong party had paid that additional tax, the taxpayer filed a refund claim to get the amount back. *Id.* The IRS rejected the claim as untimely, measuring from the original rather than amended return filing, and the court agreed. *See id.* at 367-8. "The statute prescribes the period of limitation," the court reasoned, and "[n]either this Court nor the taxpayer can enlarge that period of limitation beyond what Congress has prescribed." *Id.* at 368. Though sympathy with the taxpayer's position may have been warranted given the timeline, "[s]tatutes of limitation

frequently involve some hardship [and] the alleviation of that hardship is a matter of policy for the Congress." *Id.* at 368-9.

This Court adopted the same rule as *Kaltreider* in *Chaney v. United States*. There, the taxpayers initially filed their 1991 tax return in April 1992, and then amended it, reporting and paying additional tax based on IRS advice in November 1993. *See* 45 Fed. Cl. 309, 311-12 (1999). However, subsequent alleged communications with the IRS convinced the taxpayers that the additional payments had been unwarranted, and so they filed a refund claim in January 1996. *Id.*at 311. The IRS denied it as untimely because more than three years had passed from the filing of the initial return. *Id.* at 312. The taxpayers "assert[ed] that their amended 1991 tax return, dated November 16, 1993, began anew the three-year statute of limitations." *Id.* The Court rejected this contention and held that "the statute of limitations time periods set out by I.R.C. § 6511(a) are three years from the time of the filing of the **original** return." *Id.* at 317 (emphasis added); *see also Mertens v. United States*, 12 Cl. Ct. 678, 679 (1987); *Malonek v. United States*, 923 F. Supp. 1462, 1465 (D. Wyo. 1996).

The only potential exception to this bright line original return rule is when events triggering the tax reported on the later return take place after the taxable year, as the Federal Circuit found in *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999). But that case is irrelevant here. *Greene*'s taxpayer, the Great Global Assurance Company (GGAC), had operated in its 1983 tax year as a life insurance company subject to a statutory regime whereby a portion of income was sequestered and tax on it deferred until the taxpayer had ceased operating as a life insurance company for two consecutive years. *See id.* at 1341-2. GGAC filed its initial 1983 tax return in September 1984 but then ceased to operate as a life insurance company in 1984 and 1985, rendering it newly subject to taxation on certain 1983 income, which GGAC paid via an

5

amended 1983 return filed in 1990. *Id.* at 1342. Later, in 1993, believing that payment had been in error, GGAC filed a refund claim, which the IRS denied as untimely filed. *Id.*

GGAC argued "that the 1983 return cannot be the 'return' referred to in § 6511(a) because GGAC could not pay the [relevant] tax until after 1985 when it ceased to be an insurance company for two successive years, well after the 1983 return was filed," and the Federal Circuit agreed. *Id.* at 1343. The court held that "where the events giving rise to the tax necessarily took place after the taxable year, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income." *Id.* And "[b]ecause there apparently was no date on which the return showing the [newly taxable] income was required to be filed, and hence no other such return was filed, the 1990 amended return is the only return that could have started the running of the limitations period." *Id.*

This case's facts are unlike *Greene*'s. *Greene* involved the specific timeline whereby the original tax return for a given year **could not have reported the tax** later sought to be recovered via a refund claim because key events had not yet occurred. Here, contrariwise, the changed circumstances between BMW's first-filed and superseding return have no relationship to BMW's refund claim. Although a regulatory change may have prompted BMW to file an amended return, *see* Dkt. 1 at ¶ 12, that change is irrelevant to the refund sought here: this suit is based on an item present in the original return and unchanged between the original and supplemental returns. *Compare* Dkt. 5-1 at 5-7 (administrative refund claim for $38,436,201 comes from "A REVISED DEDUCTION ON LINE 29B SPECIAL DEDUCTIONS FOR SECTION 250" based on "A DETAILED STUDY [ ] PERFORMED AFTER THE ORIGINAL RETURN WAS FILED"); *with* Ex. 1 at 1-2 (Section 250 deduction also reported on lines 29b and Schedule C line 22 of first-filed return) *and* Ex. 2 at 1, 3 (Section 250 deduction reported on lines 29b and

6

Schedule C line 22 of supplemental return was the same as that reported on first-filed return).[2]

Moreover, there is no argument that BMW's refund claim seeks a tax reported for the first time

on the supplemental return that itself depended on events that necessarily took place after the

taxable year. Nor can there be, given that the supplemental return made no change to the item in

question. Thus, the narrow exception articulated in *Greene* does not apply here.

> **b. The other authorities BMW may rely upon are inapposite, and BMW's reading of the law contradicts longstanding Supreme Court precedent concerning the statute of limitations on tax assessments.**

> > **1. BMW's reliance on *Haggar v. Helvering* and/or a superseded IRS Chief Counsel Advisory are misplaced.**

In the protest letter BMW submitted to IRS after disallowance, it chiefly cited *Haggar v.*

*Helvering*, 308 U.S. 389 (1940), as it may again in response to this motion, to support the

position that BMW's supplemental return rather than its first-filed return should begin the

running of the limitations period in I.R.C. § 6511(a). *See* Dkt. 1 at ¶ 8 & n1. But *Haggar* does

not help BMW.

*Haggar* involved a provision of the 1933 National Industrial Recovery Act requiring

taxpayers, for the purposes of a capital stock and excess profits tax, to declare the value of their

capital stock on the "first return" filed in the first applicable taxable year. *See Haggar*, 308 U.S.

at 391. Taxpayers could declare any value, but the declared value fixed the computation of

excess profits taxes in subsequent years, and the initial value once declared could not be

---

[2] The United States has in an abundance of caution filed the minimum excerpts from these documents necessary to make its argument (rather than the full returns) given BMW's previous motion to seal its refund claim. *See* Dkt. 5. The United States will promptly provide complete exhibits to the Court at its request.

changed. *Id.* at 392. The taxpayer in *Haggar* reported a mistaken capital stock value but filed a superseding return correcting the value prior to the due date. *Id.*

The Supreme Court held the taxpayer could do so, finding that "a literal reading" of statutory use of the "first return" as meaning "the first paper filed by the taxpayer as a return … forbid[ding] any amendment" would have thwarted Congress's purpose. *Id.* at 393. The purpose of the statute—to provide an efficient method for taxpayers to self-report capital stock value while guarding against loss of tax revenue due to underreporting—was not violated but rather fulfilled by allowing a taxpayer to more accurately fix that value through a timely amendment. *Id*. at 394-5. Therefore, the Supreme Court construed the term "first return" in that specific statute to mean "the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year." *Id.* at 395.

*Haggar* dealt with a substantive law on computing and self-reporting tax, not a time bar. The *Haggar* decision nowhere addressed the limitations period for filing an administrative refund claim nor, indeed, any limitations period. It cannot be used to read into I.R.C. § 6511(a) an implicit ability to toll the statute of limitations via an amended return. Statutes of limitations in tax matters are construed strictly in favor of the government, both when they bar the government's right to take action and when, as with refund suits, they waive sovereign immunity and allow the government to be sued. *See, e.g.*, *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984); *United States v. Brockamp*, 519 U.S. 347, 352 (1997); *AD Glob. Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 67 Fed. Cl. 657, 693 (2005), *aff'd*, 481 F.3d 1351 (Fed. Cir. 2007); *Hall v. United States*, 111 Fed. Cl. 766, 769 (2013). Furthermore, the purpose of statutes of limitations is not to maximize the accuracy of tax returns; it is the efficient administration of tax law. *Cf. Sullivan v. United States*, 46 Fed. Cl. 480, 490 (2000); *Koopmann v. United States*,

8

150 Fed. Cl. 290, 297–98 (2020), *aff'd*, No. 2021-1329, 2022 WL 1073340 (Fed. Cir. Apr. 11, 2022)*. Haggar* has therefore never been applied to interpret the term "the return" in I.R.C. § 6511(a) to really mean "the latest timely return filed for the relevant tax year," and it should not be so applied here.[3]

Plaintiffs also discussed IRS guidance in their protest letter. Courts no longer give mandatory *Chevron* deference to agency interpretations of ambiguous statutory language; rather, this Court must "exercise independent judgment" to "determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 400 (2024). But the Court may still consider such guidance, given "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id*. at 388 (quoting *Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944)); *see also id.* at 394 ("[C]ourts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes."); *Chavez v. Bondi*, 134 F.4th 207, 220–21 (4th Cir. 2025) (affording respect to, and ultimately following, agency views on how to interpret statutory phrase).

In 2006, IRS Chief Counsel issued an advisory opinion that cited (*inter alia*) the *Haggar* case and summarily concluded that in the circumstances of an extension of time to file a return, a

---

[3] *Haggar* also, unlike this case, involved two returns that were timely per the original due date. Here, both returns were filed per an agreed extension. *See supra* at 3; Dkt. 1 at ¶¶ 9-10. Given the statutory rules for deemed filing dates, if BMW's filings had been timely per the original rather than extended due date there could be no dispute here: both would be deemed filed on that due date by statute and the existence of the supplemental return therefore irrelevant. *See* I.R.C. §§ 6501(b)(1), 6513(a). This shows why it makes no sense to introduce *Haggar*'s holding on a substantive tax statute's use of the term "first return" into such a different context. In the ordinary case of determining the statute of limitations on refund claims, there is only "the return" (*i.e.* the one deemed filed on the due date) irrespective of how many returns were filed.

"valid return filed on … the extended due date, is the return of the taxpayer and starts the statute of limitations on assessment under section 6501." *See* IRS CCA 200645019, 2006 WL 3251969 (Nov. 10, 2006); Ex. 3 at 4. But this terse conclusion, which referred only to the statute of limitations on IRS assessments, was abrogated in a subsequent more fulsome 2020 Chief Counsel advisory opinion. *See* IRS CCA 202026002 (June 26, 2020); Ex. 4. The 2020 opinion concluded, distinguishing *Haggar*, that "the original return, not the superseding return, is 'the return' that starts the statutory period" both for the IRS to assess and for the taxpayer to file a refund claim within three years. Ex. 4 at 2-3. To the extent the Court finds agency interpretation relevant to deciding this motion it should regard the far more thoroughly-cited and well-reasoned 2020 advisory opinion, and disregard the 2006 opinion.

> **2. BMW's position would call into question longstanding Supreme Court precedent on tax-assessment statutes of limitation, which adopts a parallel original return rule.**

An additional virtue of the 2020 IRS opinion referenced above is that it harmonizes the meaning of "the return" in Section 6511(a) with that of the same term in Section 6501(a), the statutory subsection governing the time within which the IRS may make tax assessments. *See* Ex. 4 at 2-3. These two provisions as well as others create a structure whereby the limitation on the IRS's ability to assess mirrors the limitation on the taxpayer's ability to request a credit or refund. *See also*, *e.g.*, I.R.C. §§ 6511(c) (agreement to extend period to assess tax automatically extends period to claim credit or refund), (d)(2) (window to claim refund attributable to loss carryback is tied to assessment period for loss year).

It has been established for nearly a century that the IRS's assessment period is tied to the original rather than any subsequent amended return. The foundational cases here are *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *Nat'l Paper Prods. Co. v. Helvering*, 293 U.S.

183 (1934), decided at the same time, with the latter involving a subsidiary of the former. Shortly after these taxpayers filed 1920 returns, the Revenue Act was amended with certain changes directed to take effect retroactively. *See Zellerbach Paper*, 293 U.S. at 173-4. Taxpayers whose previous taxes were retroactively increased were instructed to file amended returns; the *Zellerbach Paper* plaintiff did not while the *Nat'l Paper Prods.* plaintiff did. *Zellerbach Paper*, 293 U.S. at 175; *Nat'l Paper Prods.*, 293 U.S. at 186.

When the IRS asserted deficiencies seven years later, it argued that the government's assessment periods were not tied to the original returns, because the intervening law and amended-return directive in effect nullified them. *See Zellerbach Paper*, 293 U.S. at 176, 181. The Supreme Court disagreed: "a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run." *Id.* at 180; *see also Nat'l Paper Prods.*, 293 U.S. at 186 ("For reasons stated in [*Zellerbach Paper*], the period of limitation began to run on the filing of the first return, and a return for additional taxes, even if filed afterwards, was an amendment or supplement which did not toll the statute.).

The Supreme Court reaffirmed the principle that statutory limitations periods for assessment are not altered by superseding returns in *Badaracco v. Comm'r*, 464 U.S. 386 (1984). The taxpayers in *Badaracco* conceded they had filed fraudulent returns for tax years 1965-1969. *Id.* at 389. In 1971, however, they submitted nonfraudulent amended returns for the same years and paid the related additional taxes. *Id.* When the IRS issued notices asserting deficiencies in 1977, the taxpayers argued that the assessments were untimely because the amended returns had pegged assessments of the disputed tax years to the ordinary three-year periods under I.R.C.

11

§ 6501(a) rather than to the unlimited period for the IRS to assess fraudulent returns that applied to the original returns under I.R.C. § 6501(c)(1). *Badaracco*, 464 U.S. at 389.[4]

The Supreme Court held for the government: the "unambiguous" lack of a limitations period in I.R.C. § 6501(c)(1) could not be undone by interposing a nonfraudulent amendment of a fraudulent return to take advantage of the three-year rule of I.R.C. § 6501(a). *Badaracco*, 464 U.S. at 392-3. As the Court explained, "the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." *Id.* The taxpayer in *Badaracco* tried to argue, as BMW may here, that the first-filed returns for 1965-1969 were rendered "nullities" for timeliness purposes by subsequent events. *Id.* at 396. The Court was unpersuaded, because "it is plain that 'the return' referred to in § 6501(a) is the original, not the amended, return." Noting that the taxpayer conceded numerous provisions of I.R.C. § 6501 would still apply to the original return despite supplemental filings, the Court reasoned thus: "The word 'return,' [ ] appears no less than 64 times in § 6501. Surely, Congress cannot rationally be thought to have given that word one meaning in § 6501(a), and a totally different meaning in §§ 6501(b) through (q)." *Id.* at 397.

*Badaracco* has stood undisturbed for over forty years; *Zellerbach Paper* and *Nat'l Paper Prods.* for nearly one hundred. What's more, *Haggar* was decided before *Badaracco*, but the Supreme Court in *Badaracco* at no point even considered the possibility that *Haggar*'s construal

---

[4] *Badaracco* was decided alongside *Deleet Merchandising Corp. v. United States.* The latter case had the same fact pattern—fraudulent returns followed by amended returns followed by assessments more than three years after the amended returns. *See Badaracco*, 464 U.S. at 390.

12

of "first return" in a different substantive tax statue was relevant to what "the return" means for a statute of limitations.

It is hard to see how a holding that there is jurisdiction here would not call these longstanding precedents into question. Generally, as discussed above, *see supra* at 10, the limitations periods for assessments and refund claims match. And, as argued above in the discussion of *Greene*, *see supra* at 5-7, there is nothing in this case arguably unique to a refund claim, as with *Greene*'s tax that depended on subsequent events that could only have been reported via the supplemental return. This is important not only as a matter of statutory construction, but also should BMW try to make equitable arguments here, as those on the wrong end of time bars often do. Aside from the well-known general principle that harshness is baked into statutes of limitations, the point in this taxation context is that they are there to protect taxpayers as well as the Treasury. BMW's supplemental return did not give the IRS bonus time to assess, just as it did not give BMW an extra month in which to file a jurisdictionally sound administrative refund claim.

## IV.    Conclusion

This Court lacks jurisdiction to hear BMW's claim because BMW did not submit a refund claim within the three-year period specified by I.R.C. § 6511(a). The United States' motion to dismiss should be granted.

13

Respectfully submitted,

Dated: February 11, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Assistant Director

*/s/ Alex Schulman*
ALEX SCHULMAN
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Telephone: (202) 514-0456
Alexander.Schulman@usdoj.gov

*Attorneys for Defendant*

14