**Office of Chief Counsel**
**Internal Revenue Service**

# memorandum

CC:PA:02:THHUSE
POSTF-123485-19

Number: **202026002**
Release Date: 6/26/2020

UILC: 6501.00-00, 6501.03-01, 6501.03-03, 6501.04-11, 6511.00-00, 6511.01-01, 6511.01-03, 6511.09-00, 6511.10-00

date: February 26, 2020

to: Karo Gary Petrosyan, Attorney
(Large Business & International)

from: Elizabeth Chirich, Branch Chief (Branch 1)
(Procedure & Administration)

---

subject: The effect of superseding returns on the statute of limitations in sections 6501 and 6511

This Chief Counsel Advice responds to your request for assistance.  This advice may not be used or cited as precedent.

ISSUES

1. When a return is filed and then a second return is subsequently filed before the return due date (i.e. a superseding return[1]), which return constitutes "the return" for purposes of section 6501 and starts the statutory period for assessment of three years?
2. When a return is filed and then a second return is subsequently filed before the return due date (i.e. a superseding return), which return constitutes "the return" for purposes of section 6511 and starts the statutory period for filing a claim for refund of three years?

---

[1] A "superseding return" is sometimes referred to as a "substitute," "supplemental," or "timely amended" return as well.

POSTF-123485-19                              2

CONCLUSIONS

For both issues, the original return, not the superseding return, is "the return" that starts the statutory period. *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934).

FACTS

 I.   Tax Year

      ("the Taxpayer"), a calendar-year taxpayer, filed a timely extension, Form 7004, Application for Automatic Extension of Time to File Certain Business Income Tax, Information, and Other Returns, to extend the time for filing its Form 1120 from March 15,  to September 15,  . The Taxpayer timely filed its  Form 1120 on     , four days earlier than the extended due date. However, the Taxpayer made a mistake. During  the taxpayer made an automatic change to its accounting method. The instructions to Form 3115, Application for Change in Accounting Method, state that taxpayers must file Form 3115 in duplicate, and a copy must be filed no later than the date the original Form 3115 is filed with the Federal income tax return. The taxpayer realized it failed to file a copy of the Form 3115 before filing the original Form 3115 with the Form 1120. Thus, the taxpayer     subsequently filed a superseding Form 1120 on    ,  before the extended due date of September 15,  .

  On     , the Taxpayer filed a Form 1120X for  claiming an overpayment for that year. The Taxpayer argues that its claim for refund is timely because it was filed within three years of    , the date it filed its superseding Form 1120. They argue that the period of limitations for refunds under section 6511 began on that date. You have asked whether the period of limitations under section 6511 for filing the claim for refund began on    , when the Taxpayer timely filed its original Form 1120 for  , or    , when the Taxpayer timely filed its superseding Form 1120 for  .

 II.   Tax Year

  The Taxpayer timely requested an automatic extension to file its  Form 1120, which extended the due date until October 15,  . The Taxpayer requested the extension because it expected to adjust some amounts on its  Form 1120. Despite the extension, the Taxpayer filed its  Form 1120 on   , which return showed a loss and refund due of approximately $  . On    , before the extended due date, the Taxpayer filed a superseding Form 1120 showing a larger loss and a larger refund, approximately $  . You have asked whether the three-year statute for assessment under section 6501 should begin on   , the original filed date for the return, or    , the date the superseding return was filed reporting the larger loss.

POSTF-123485-19                                   3


LAW AND ANALYSIS

    I.       Relevant Provisions

       Under section 6501(a), the Service must assess additional tax for a given tax year within three years after "the return" for that year was filed.  Under section 6511(a), a taxpayer must file a claim for refund of any tax within three years from the time "the return" was filed or two years from the time the tax was paid, whichever period expires later.  These statutes are ambiguous, however, as to which return is "the return" for purposes of the statutes of limitation when more than one return has been filed.

       If both returns are filed before the original due date, this ambiguity has no effect on when the statute of limitations begins because a return filed before the last day prescribed for filing is deemed filed on the last day.  *See* I.R.C. §§ 6501(b)(1) and 6513(a).  Thus, in that situation, regardless of which return is "the return," the statute will begin on the original due date for the return.  But a return filed on extension is treated as filed on the day it is received.  *See, e.g., First Charter Financial Corp. v. United States*, 669 F.2d 1342 (9th Cir. 1982) (finding that return filed during automatic extension period was filed when received for purposes of statute of limitation on assessment).  So where the first return is filed before the last date prescribed for filing (original or extended), and a second return is subsequently filed during the extension period, the statute would begin running on different dates, depending on which return is "the return" for purposes of section 6501(a) or 6511(a).

       Two related cases, *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *National Paper Products Co. v. Helvering*, 293 U.S. 183 (1934), and *Haggar Co. v. Helvering*, 308 U.S. 389, (1940), are relevant to this discussion.  We conclude that *Zellerbach* requires that the original return, not the superseding return, starts the limitations periods under both sections 6501 and 6511, and that *Haggar* is distinguishable.  These cases will be analyzed first in the context of the statute of limitations for assessment under section 6501 and then in the refund context under section 6511.

    II.      Statute of Limitations for Assessments under Section 6501

       Under *Zellerbach* and *National Paper*, the original return, not the superseding return, starts the period of limitations for assessment under section 6501.  In these two related cases, the issue before the Supreme Court was substantially the same, but the facts were slightly different.  In both cases, new statutes were enacted after two companies had already timely filed their tax returns. Each statute affected income tax and was effective retroactively.  In response to the new law, "[National Paper] filed an additional return, supplementing the original one by a statement of the additional taxes due." *Nat'l Paper*, 293 U.S. at 186.  Zellerbach Paper, on the other hand, "did not make a new or supplemental return correcting the computation in the one on file." *Zellerbach*,

POSTF-123485-19                                              4

293 U.S. at 175.  In both cases, the Commissioner issued a notice of deficiency after the limitation period for assessment had run from the original returns' filing date.

The taxpayers argued that the notices of deficiency were untimely.  The government's position was that, since the original returns did not incorporate the changes under the statute, the original return in both cases was a nullity, so the statute of limitations on assessment had not begun to run with the filing of the original returns. The Court disagreed.  Discussing what is now known as the *Beard* test, the Court found the original returns filed by both Zellerbach Paper Company and National Paper met that test and started the statute of limitations for assessment.  Thus, the notices of deficiency were untimely.

The court disagreed with the government's argument that starting the period of limitation for assessment with the original return unfairly curtails the government's time for audit and assessment:

> [A] second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run. . . . Supplement and correction in such circumstances will not take from a taxpayer, free from personal fault, the protection of a term of limitation already running for his benefit.

*Id.* at 180.[2]  In coming to this conclusion, the *Zellerbach* Court deemed a loss of four months for audit insignificant, *Id.* at 181, and it apparently did not find a loss of ten months alone to be a factor that would change its decision in *National Paper*.  *Nat'l Paper*, 293 U.S. at 185.

The Court found the idea of tolling the statute due to a supervening change in the law particularly unfair to the taxpayer.  Its reasoning, however, applies more broadly to all situations where an amended return is filed.  For example, in *Badaracco v. Commissioner*, 464 U.S. 386 (1984), the Supreme Court held that the later filing of a non-fraudulent amended return, after the filing of a fraudulent return, cannot reinstate the general three-year limitations period and terminate the indefinite limitations period under section 6501(c)(1).  *Badaracco*, 464 U.S. at 393–94 ("Thus, when Congress provided for assessment at any time in the case of a false or fraudulent 'return,' it plainly included by this language a false or fraudulent *original* return. . . .  It is established that a taxpayer who submits a fraudulent return does not purge the fraud by subsequent

---

[2] *Zellerbach* is cited for the proposition that a second return does not restart the limitations period, despite the fact that the taxpayer in *Zellerbach* did not file a second return. This is because the Court explained its reasoning on this issue in its *Zellerbach* opinion and then just referred back to that reasoning in its *National Paper* opinion.  *See Nat'l Paper*, 293 U.S. at 186 ("*For reasons stated in our opinion in* [*Zellerbach*]*, the period of limitation began to run on the filing of the first return, and a return for additional taxes, even if filed afterwards, was an amendment or supplement which did not toll the statute.*") (emphasis added).

POSTF-123485-19                                  5

voluntary disclosure; the fraud was committed, and the offense completed, when the original return was prepared and filed.")

In reaching its conclusion, the Court rejected the taxpayers' argument that, under *Zellerbach*, a "repentant" return terminated the indefinite limitations period, stating, "The [*Zellerbach*] Court held that an original return, despite its inaccuracy, was a 'return' for limitations purposes, so that the filing of an amended return did not start a new period of limitations running." *Badaracco*, 464 U.S. at 397. And it further noted, relying on *Zellerbach* and other cases, that "[i]t thus has been consistently held that the filing of an *amended return* in a nonfraudulent situation does not serve to extend the period within which the Commissioner may assess a deficiency." *Id.* at 393 n. 8 (emphasis added).[3]

*Badaracco* recognized that *Zellerbach* applies to any case involving amended returns. Thus it is a natural extension that *Zellerbach* apply to superseding returns filed during an extension period as well. Nothing in the *Zellerbach* opinion limits its holding to amended returns, nor does it differentiate between second returns filed before or after the deadline for filing. Rather, the Court refers to "a second return, reporting an additional tax," that is, "an amendment or supplement to a return already upon the files," a definition that would encompass both amended returns and superseding returns.

The reasoning of *Zellerbach* also applies with equal force to superseding returns filed on extension. In both superseding- and amended-return situations, if the second return were to restart the limitations period, the taxpayer would lose the protection of the assessment statute for the period between the dates the two returns were filed. This is unfair to the taxpayer and thwarts the purpose of the statute of limitations,[4] which, in the tax context, is "to cut off rights that might otherwise be asserted . . . ." *See Kavanagh v. Noble*, 332 U.S. 535, 539 (1947) (*citing Rosenman v. United States*, 323 U.S. 658, 661 (1945)), *reh'g denied*, 333 U.S. 850 (1948). This purpose is served best when the original return starts the period of limitations.

The loss of time to audit the superseding return, even if the superseding return were filed at the end of a six-month automatic extension period, does not influence our conclusion that an original return, despite its inaccuracy, is the return for purposes of the statute of limitations on assessment, and the filing of a superseding return during an

---

[3] The *Badaracco* opinion referred to, and was consistent with, an extensive body of law cited for the general proposition that an amended return is a nullity for most purposes (apart from refund claims). *See, e.g., J.E. Riley Investment Co. v. Comm'r*, 311 U.S. 55 (1940) (an election required to be made on a "return" generally cannot be made or modified on an amended return); *Koch v. Alexander*, 561 F.2d 1115 (4th Cir. 1977) (A taxpayer cannot create Tax Court jurisdiction by filing an amended return reflecting a decrease in tax; *Plunkett v. Comm'r*, 41 B.T.A. 700, (1940) [CCH Dec. 11,045], *aff'd*, 118 F.2d 644 (1st Cir. 1941) [41-1 USTC ¶9373] (The filing of a correct amended return does not cure an earlier defective filing so as to avoid the penalty for failure to file). Because this line of cases involves amended returns, it is distinguishable from cases that involve superseding returns, like the cases at hand, and should not apply to them.

[4] Courts consult a statute's purpose when, as here, the text ("the return") being interpreted is ambiguous.

POSTF-123485-19                               6

extension period does not restart the period of limitations.  *See Zellerbach* and *National Paper* (Court was unmoved by losses of four and ten months, respectively).

*Haggar  Co. v. Helvering*, 308 U.S. 389, (1940), does not require a different conclusion.  In *Haggar*, for purposes of a new capital stock tax, the taxpayer was required to declare the value of its stock on what the statute referred to as the "first return."  The taxpayer could declare any value of capital stock for its first taxable year, but the declared value for the first year was a controlling factor for the computation of excess profits tax for later years.  The statute provided that the declaration once made could not be amended.

On a timely filed return, Haggar mistakenly reported the par value, as distinguished from actual value, of its issued capital stock.  Before the due date, it filed a superseding return declaring the actual value.  The Commissioner, refusing to accept the value of the capital stock declared in the superseding return, gave notice of a deficiency in excess profits tax calculated upon what was declared in the first return.  Noting that the government was not prejudiced, that the purpose of the statute was not thwarted, and that there was a longstanding administrative practice of accepting superseding returns in other contexts, the Court observed:

> "First return" thus means a return for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year.  A timely amended return is as much a "first return" for the purpose of fixing the capital stock value in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year.

*Haggar*, 308 U.S. at 395–96.

Over the years, *Haggar* has come to stand for the proposition that a superseding return, whether filed on extension or not, is effective for most purposes.  For example, courts have held that many elections required to be made on a timely return can be made or changed on a superseding return.  *See, e.g., National Lead Co. v. Commissioner*, 336 F.2d 134 (2d Cir. 1964) (inventory accounting relief provision); *Charles Leich & Co. v. United States*, 329 F.2d 649 (Ct. Cl. 1964) (excess profits tax election); *Wilson v. United States*, 267 F. Supp. 89 (E.D. Mo. 1967) (partnership tax year); *Cf. J.E. Riley Investment Co. v. Comm'r*, 311 U.S. 55 (1940) ("[*Haggar*] would compel the conclusion that had the amended return been filed within the period allowed for filing the original return, it would have been a first return [for purposes of determining percentage depletion election] . . . .") (citations omitted).

In addition, the Service has applied *Haggar* in the penalty context.  *See, e.g.*, Rev. Rul. 78-256, 1978-1 C.B. 438 (holding that the "tax shown on the return" refers to the amount shown on a superseding return, not the original return, for purposes of calculating the estimated tax underpayment penalty in section 6655); Rev. Rul. 83-36,

POSTF-123485-19                                7

1983-1 C.B. 358 (applying *Haggar* to the estimated tax underpayment penalty for individual taxpayers in section 6654).

Nonetheless, *Haggar* does not compel a conclusion that a superseding return is "the return" for purposes of the statute of limitations.  It has never been applied in that context; nor should it be because the purpose of the statute of limitations is distinct from the purpose of the statute in *Haggar* and from the purposes of the statutes covering elections and penalties to which *Haggar* has been applied.  While *Haggar* has been applied to statutes aimed at determining what substantively is included in the return, the statute of limitations is a mechanical rule with the purpose of cutting off rights, as discussed above.  Furthermore, *Haggar* does not conflict with *Zellerbach*.  A superseding return modifies or supersedes an original return under *Haggar* and still relates back to the date of the original return for timing purposes under *Zellerbach*. *Zellerbach* recognizes that a second return, although it does not restart the limitation period, is still "an amendment or supplement to a return already upon the files, and . . . [is] effective by relation." *Zellerbach*, 293 U.S. at 180; *see also Wilson*, 267 F. Supp. at 91 (suggesting that the question *Haggar* addresses is "whether or not an amendment is *part of* a first return") (emphasis added); *Barber v. Comm'r*, 64 T.C. 314, 317 (1975) (noting that if the amended return had been timely filed, then under *Haggar*, "[the amended] return might then be treated *as part of* the original return").

III.    Statute of Limitations for Claims for Refund under Section 6511

*Zellerbach* and *National Paper* also support the conclusion that the original return, not the superseding return, starts the period of limitations for claims for refund under section 6511.  For example, *Zellerbach* has been applied to cases involving issues of whether *amended* returns restart the period of limitations for claims for refunds.  *See, e.g., Kaltreider Construction, Inc. v. United States*, 303 F.2d 366, 368 (3d Cir.), *cert. den.*, 371 U.S. 877 (1962) (rejecting taxpayer's argument that the statute in section 6511 began at the time the "amended return" was filed because "[t]he language of the Supreme Court in [*Zellerbach*] is directly in point."); Rev. Rul. 72-311, 1972-1 C.B. 398 (citing *Kaltreider* in holding that the "return" referred to in section 6511 is the original return and not an amended return); *see also Adams v. I.R.S.*, No. 2:13-CV-04525-CAS, 2014 WL 457915, at \*3 (C.D. Cal. 2014); *Chaney v. United States*, 45 Fed. Cl. 309, 314–15 (1999); *Mertens v. United States*, 12 Cl. Ct. 678, 679 (1987); *but see Greene v. United States*, 191 F.3d 1341, 1343–44 (Fed. Cir. 1999) (holding the statute of limitations for seeking refund began to run upon filing of an amended return; distinguishable because the tax liability at issue was not required to be shown on the original return and could not be known until at least two years after the taxable year ended)

Similar to the 6501 context, *Zellerbach* also applies when the second return filed is a *superseding* return filed on extension.  The opinions that apply *Zellerbach* as support for holding that an amended return does not restart the limitations period under 6511 discuss the general principle that all statutes of limitations involve hardship and it is not the court's role to alleviate that hardship.  *See Kaltreider*, 303 F.2d at 368–69

POSTF-123485-19                                   8

("Statutes of limitation frequently involve some hardship, but alleviation of that hardship is matter of policy for Congress."); *Chaney*, 45 Fed. Cl. at 317 ("Statutes of limitations are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary.") (citations omitted).

The hardship faced by taxpayers in the section 6511 refund limitation period context is the same regardless of whether the second return is an amended return or a superseding return.  In both instances, the statute begins running with the original return.  The Service faces the same hardship, as discussed above, in the context of the assessment statute of limitations under 6501.  Enacting these sections at the same time, Congress created time periods that run concurrently, and treating superseding returns differently under each section would thwart these concurrent periods by starting the periods at different times.  Thus, a court considering this issue under section 6511 would likely find that *Zellerbach* requires the statute of limitations for claims for refund to start when the original return is filed, not when the superseding return is filed.

*Haggar* can again be distinguished in the same ways discussed above in the context of section 6501.  A superseding return can be effective in modifying the original return by relating back to and becoming part of the original return, under *Haggar*, without tolling the period of limitations for claims for refund, in line with *Zellerbach*. Moreover, the purpose of the statute of limitations supports interpreting the ambiguous term, "the return," in section 6511 to mean the original return.

CONCLUSION

For tax year        , the statute under 6511(a) for filing a claim for refund began when the original return was filed on                          .  Thus, the statute expired on                  , and the claim for refund filed on                        , is barred because it was late.

For tax year        , the Service should use the filing date of the original return,              , as the beginning of the statutory period for assessment under section 6501(a).

This writing may contain privileged information.  Any unauthorized disclosure of this writing may undermine our ability to protect the privileged information.  If disclosure is determined to be necessary, please contact this office for our views.

Please call (202) 317-5428 if you have any further questions.