IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 25-1984 T
(Judge Richard A. Hertling)

---

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES

Plaintiff,

v.

THE UNITED STATES,

Defendant,

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

JUAN F. VASQUEZ JR.
PETER LOWY
TANIA P. ALBUJA
Nelson Mullins Riley & Scarborough LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002

BRANDON BIGELOW
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111

*Counsel of Record to Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

SUMMARY OF THE ARGUMENT.................................................................................. 1

ARGUMENT...................................................................................................................... 5

    I.    Background........................................................................................................5

    II.    BMW's 2019 Refund Claim was filed timely because its superseding return is "the return" that started to run the period of limitations for purposes of IRC § 6511. ........... 8

    III.    Defendant's authorities do not address the superseding return question under IRC § 6511. ............................................................................................................... 14

        A.    The cases construing IRC § 6511 involve only post-deadline amended returns and reject only restart theories not presented here..................................................... 15

        B.    The Supreme Court cases on which Defendant relies construe IRC § 6501's assessment regime and do not involve IRC § 6511 or superseding returns.............. 19

    IV.    Alternatively, BMW's claim is timely because the limitations period was tolled by COVID-19-related emergency relief legislation..........................................................24

        A.    BMW is a qualified taxpayer that was affected by a declared federal disaster for purposes of IRC § 7508A...........................................................................................25

        B.    The period of limitations to file BMW's 2019 Refund Claim was tolled from January 20, 2020 to July 13, 2023, pursuant to IRC § 7508A. ................................27

CONCLUSION .................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Badaracco v. Comm'r*, 464 U.S. 386 (1984) ................................................................ 19, 21

*Chaney v. United States*, 45 Fed. Cl. 309, 316 (1999) ....................................................... 17

*Charles Leich & Co. v. United States*, 165 Ct. Cl. 127 (1964) .................................... 10, 11

*George E. Warren Corp. v. United States*, 141 F. Supp. 935, 940, 135 Ct. Cl. 305 (Ct. Cl.

    1956). ..................................................................................................................................7

*Glaze v. United States*, 641 F.2d 339, 343 (5th Cir. 1981) .................................................14

*Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999) ............................................... 8, 21

*Haggar Co. v. Helvering*, 308 U.S. 389 (1940) ............................................................... 9, 11

*Hampton v. United States*, 513 F.2d 1234, 1246 (Ct. Cl. 1975) ....................................... 28

*Hartman v. United States*, 99 Fed. Cl. 168, 179 (2011), *aff'd*, 694 F.3d 96 (Fed. Cir.

    2012) ....................................................................................................................................7

*Iglinski v. United States*, No. 25-C-895, 2025 LX 586473 (E.D. Wis. Nov. 24, 2025)

    (pending) ............................................................................................................................16

*Intersport Fashions W., Inc. v. United States*, 103 Fed. Cl. 396 (2012) .......................... 11

*Ivelia v. Dep't of Revenue*, No. TC-MD 180054R, 2018 Ore. Tax LEXIS 128 (T.C. Dec.

    18, 2018) ............................................................................................................................ 11

*J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55 (1940) ...................................... 11

*Kaltreider Constr., Inc. v. United States,* 303 F.2d 366 (3rd Cir. 1962) ............................15

*King's Ct. Mobile Home Park, Inc. v. Comm'r*, 98 T.C. 511, 518 (1992) ......................... 11

*Kwong v. United States*, 179 Fed. Cl. 382 (2025)(pending).................................................27

*Malonek v. United States*, 923 F. Supp. 1462, 1465 (D. Wyo. 1996)...............................17

*Mertens v. United States*, 12 Cl. Ct. 678, 679–80 (1987)..................................................17

*Munoz v. Commissioner*, T.C. Memo. 2000-18, 79 T.C.M. (CCH) 1366, 1367...............28

*Nat'l Paper Prod. v. Helvering*, 293 U.S. 183 (1934)..................................................19, 21

*Raimo v. United States*, 26 Cl. Ct. 226, 228-29 (1992) ......................................................14

*Scaife Co. v. Commissioner*, 314 U.S. 459, 62 (1941) ........................................................11

*Stone v. Commissioner*, 73 T.C. 617, 620-21 (1980)...........................................................28

*W. Fruit Exp. Co. v. United States*, 90 Ct. Cl. 434 (1940)..................................................11

*William B. Scaife & Sons Co. v. Commissioner*, 41 B.T.A. 278 (1940) .............................11

*Wilson v. United States*, 267 F. Supp. 89 (E.D. Mo. 1967) ................................................11

*Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934)............................................19, 21

**Statutes**

26 U.S.C § 6654 ...................................................................................................................12

26 U.S.C. § 250 .....................................................................................................................7

26 U.S.C. § 6501 ......................................................................................................15, 21, 22

26 U.S.C. § 6511(a) ............................................................................8, 9, 14, 16, 21, 23

26 U.S.C. § 6511(b) .............................................................................................................18

26 U.S.C. § 6655 ..................................................................................................................12

26 U.S.C. § 7422...................................................................................................................7

26 U.S.C. § 7508(a)(1)(E) ..................................................................................................25

26 U.S.C. § 7508A(a) ................................................................24, 25, 26, 27, 29

26 U.S.C. §168(k) ................................................................................................ 5

42 U.S.C. § 5121-5207 ......................................................................................26

Pub. L. 116-94 Sec. 205(a) ...............................................................................25

Section 437(b)(1) of the Excess Profits Tax Act of 1950 ..................................10

**Other Authorities**

FEMA Declaration 3451 (March 13, 2020) ........................................................26

Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease

2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and

Emergency Assistance Act, 20-20 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020) .........26

Presidential Proclamation 9994 (March 13, 2020) ............................................26

**Treatises**

10 Mertens, Federal Income Taxation, § 57.15 ................................................. 16

10 Mertens, Federal Income Taxation, § 57.16. .............................................. 17

4.03 FORMAL REQUIREMENTS OF A RETURN, IRS Prac. & Proc. ℙ 4.03 (Oct. 2025) .......... 6

**Regulations**

26 C.F.R. § 301.6402-3 ........................................................................................7

26 C.F.R. § 601.601(d)(2)(i)(a) .........................................................................12

**Administrative Guidance**

CCA 200645019 ..................................................................................................12

CCA 202026002 ................................................................................................. 12

IRS Topic No. 308, Amended Returns......................................................... 6, 20

Rev. Rul. 78-256, 1978-1 C.B. 436 ................................................................ 12

Rev. Rul. 83-36, 1983-1 C.B. 358 ................................................................. 12

**Internal Revenue Manual**

I.R.M. 21.7.9.3.4 (03-07-2024) .................................................................6, 19

I.R.M. 3.11.6.5.5.2 (02-03-2025) ..............................................................6, 19

## SUMMARY OF THE ARGUMENT

BMW's superseding return—filed before the extended statutory due date for its 2019 federal income tax return—constitutes "the return" from which the three-year limitations period for filing a refund claim under 26 U.S.C. § 6511(a) is measured.

The Federal Circuit in *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999), interpreted the term "the return" in § 6511(a) and determined it was the last timely filed return for the tax period. The court considered § 6511(a) in the context of a statutory regime applicable to insurance companies that required the filing of a second return. Although the second return in *Greene* was filed years after the original return's due date, the Federal Circuit held that the later return—filed before any applicable due date for that return—constituted "the return" for purposes of § 6511(a). According to the court, the plain meaning of "the return" in § 6511(a) is not invariably the first-filed return, and based on the facts of *Greene,* it was the last filed timely return. That reasoning applies with even greater force here, where BMW's second return, its superseding return, was submitted within the statutory filing period for BMW's original 2019 return.

The Supreme Court's decision in *Haggar Co. v. Helvering*, 308 U.S. 389 (1940), which recognized that a superseding return, i.e., a return filed before the statutory filing deadline, supplants the initially filed return, further supports the Federal Circuit's interpretation of the statutory term "the return" and BMW's proposed application of such interpretation to its facts. It also aligns with a broad and consistent body of authority—and

1

the IRS's own published guidance—recognizing that a timely filed superseding return replaces the initially filed return across multiple statutory contexts.

Defendant claims that, except for *Greene v. United States*, "every court to examine" what constitutes "the return" for purposes of § 6511 has concluded that the term "refers to the first-filed return," and does not refer to "any allegedly supplemental or superseding return". Dkt. 13 at 4. BMW's second return was not only *allegedly* a superseding return, it *was* a superseding return under the well-settled distinction between amended returns filed *after* an original return's due date and superseding returns filed *before* the original return's statutory due date. More importantly, none of the cases on which Defendant relies holds that a superseding return filed prior to the original return's extended statutory due date is not "the return" to which § 6511(a) refers.

Defendant's cases instead fall into two categories: cases rejecting attempts to restart the refund period through post-deadline amended returns (not superseding returns), and cases construing the materially different assessment statute in 26 U.S.C. § 6501. Neither line of authority answers the question presented here—whether, when a taxpayer files a single timely superseding return that supplants an earlier filing *before* the extended statutory due date, that superseding return is "the return" from which § 6511(a)'s three-year statute of limitations period runs.

To be sure, the few § 6511 cases Defendant cites—epitomized by *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962), and its progeny—stand only for the unremarkable proposition that a taxpayer may not restart the refund limitations period by filing an amended return *after* the original statutory due date. Those decisions,

2

issued by courts that do not bind this one, have no application where, as here, the taxpayer filed a superseding return on or before the original return's statutory due date.

Defendant also relies on *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172 (1934) and related Supreme Court cases that arise in a different statutory setting and do not involve superseding returns or § 6511 at all. Those cases concern amended returns filed *after* the statutory due date (or no second return at all) and address the assessment statute in 26 U.S.C. § 6501—not second returns filed before the return's statutory due date and their relevance to the refund statute in § 6511. The Federal Circuit in *Greene* has already decided that *Zellerbach*'s assessment statute rule should not be imported into § 6511. Defendant nonetheless asks this Court to contravene Federal Circuit precedent.

Defendant also suggests that BMW's refund claim is untimely because it reflects changes from the initially filed return rather than from the timely superseding return. Dkt. 13 at 6–7. The premise implicit in that contention is that items first reported on an initial return are subject to an earlier statute of limitations than items reflected on a superseding return, even though both filings concern the same taxable year. Section 6511 does not permit that result. It speaks in singularity, with the refund limitations period measured from "the time the return was filed." The Court should decline Defendant's invitation to add an extra-statutory, item-specific limitations framework that would require tracking item-by-item filing histories to determine jurisdiction, with different components of a single refund claim becoming timely or untimely on different dates. Nothing in § 6511 supports such construction, and it would be unmanageable given the dynamic nature of tax computations.

In short, none of Defendant's authorities addresses the issue presented, and its dual-clock theory relies on adding a concept Congress never adopted. Consistent with *Haggar* and *Greene*, the Court should conclude that a timely filed superseding return constitutes "the return" within the meaning of § 6511(a) and supplants the earlier tax return filing. Once the superseding return assumes that role, it becomes the reference point for statutory refund filing deadlines and affords the taxpayer three years from that filing to claim a refund for items reported on timely filed returns.

In the alternative, BMW's refund claim was timely even if measured from the initially filed return, because the limitations period under § 6511(a) was tolled pursuant to 26 U.S.C. § 7508A. That provision disregarded covered deadlines during the federally declared disaster period from January 20, 2020, through July 10, 2023. *Kwong v. United States*, 179 Fed. Cl. 382 (2025) (pending). Covered deadlines include refund claims under § 6511. *See* 26 U.S.C. § 7508(a)(1)(E). Accordingly, for the 2019 tax year, BMW's § 6511(a) refund window will expire on or about July 9, 2026. BMW's claim was filed on October 13, 2023, and was thus filed with ample time remaining on the statute.

Therefore, based on either analysis, BMW's refund claim is timely, and thus, this Court should find it has jurisdiction in this case and deny the Motion to Dismiss.

4

## ARGUMENT

Plaintiff BMW (US) Holding Corporation and Subsidiaries ("BMW"), for itself and its subsidiaries, opposes the motion of Defendant to dismiss the Complaint.

### I.    Background

Plaintiff in this Action is a U.S. corporation that serves as the U.S. parent for the BMW operating companies in the United States and files a consolidated U.S. Federal income tax return. *See* Dkt. 1 at ¶¶ 5, 21; Dkt. 13 at 3.

After receiving an extension of the due date for its 2019 federal income tax return to October 15, 2020, BMW electronically filed its initial 2019 federal income tax return on September 15, 2020. Dkt. 1 at ¶ 10; Dkt. 13-1 at 1 (first page of BMW's initial Form 1120, U.S. Corporation Income Tax Return, for tax year 2019). On September 21, 2020, the IRS issued new regulations relating to 26 U.S.C. §168(k)(relating to depreciation issues), which impacted BMW's 2019 tax return and necessitated a second return to perfect an election pursuant to the newly issued regulations. Thereto, BMW electronically filed a superseding return on October 14, 2020. Dkt. 1 ¶ 12; Dkt. 13-2 at 1 (first page of BMW's Form 1120, U.S. Corporation Income Tax Return with box checked that designates the return as a "Superseded Return").

The Internal Revenue Service ("IRS") accepted BMW's second Form 1120 filed on October 14, 2020, as a superseding return, as shown in the IRS-generated version of BMW's superseding return from the IRS e-filing system, attached as an exhibit to Defendant's Motion to Dismiss ("Motion"). *See* Dkt. 13-2 at 1. This exhibit shows that the

e-filing system version that the IRS-generated superimposes on the Form 1120 a checked box labeled "Superseded Return." *Id*. This is consistent with the IRS's filing instructions to corporate taxpayers: "A superseding return is a return filed subsequent to the originally-filed return and filed within the filing period (including extensions)."[1] *Compare*, IRS Topic No. 308, Amended Returns (instructing individuals regarding filing superseding returns and confirming that a second return filed prior to the due date of the original return "will replace or supersede the original return.").[2]

Consistent with the IRS's return processing instructions and the general understanding in the tax field,[3] Plaintiff herein refers to any return filed after an initial return but before the original return's due date as a "superseding return," even though the nomenclature used in court cases may vary.

On October 13, 2023, within three years after it filed the Form 1120 superseding return, BMW filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for the 2019 tax year ("2019 Refund Claim"), to claim a refund in the amount of $38,436,201. Dkt. 1 ⁋ 13. The IRS prescribed this Form 1120X, Amended U.S. Corporation Income Tax

---

[1] This guidance may be found at https://www.irs.gov/businesses/corporations/amended-and-superseding-corporate-returns (last updated June 14, 2025).

[2] This guidance may be found at https://www.irs.gov/taxtopics/tc308 (last updated September 12, 2025).

[3] In addition to the filing instructions quoted in the text, *see* Internal Revenue Manual ("I.R.M.") 3.11.6.5.5.2 (02-03-2025) (a second return "[f]iled on or before the due date or the extended due date is a superseding return"); I.R.M. 21.7.9.3.4 (03-07-2024) ("A superseding return is defined as a second (or subsequent) return filed on or before the due date for filing, including extensions. The second return is deemed to replace or supersede the original return"); 4.03 FORMAL REQUIREMENTS OF A RETURN, IRS Prac. & Proc. ⁋ 4.03 (Oct. 2025) ("The Service considers an amended return filed on or before the due date of a return, including extensions, to be the taxpayer's return for the period. This return is generally referred to as a superseding return, and will take the place of any other return the taxpayer has filed during the period for filing the return.").

6

Return, for refund claims. 26 C.F.R. § 301.6402-3. BMW's superseding return, in contrast, was filed on IRS Form 1120, U.S. Corporation Income Tax Return. Dkt. 13-2 at 1 (first page of BMW's Form 1120 with box checked that designates the return as a "Superseded Return" as processed by the IRS).

The 2019 Refund Claim related to changes to BMW's Foreign-Derived Intangible Income ("FDII") deduction under 26 U.S.C. § 250 and some other informational changes. Dkt. 1 ¶ 28. The 2019 Refund Claim reflected an increased FDII deduction in the amount of $242,644,454, which decreased BMW's taxable income by $183,029,529 and resulted in the refund amount at issue. *Id.*

On November 21, 2023, the IRS disallowed the 2019 Refund Claim on the sole ground that it was filed approximately a month late under a three-year statute of limitations measured from BMW's initial 2019 tax return. Dkt. 1 ¶¶ 3, 14. Plaintiff timely filed this action to challenge the disallowance. This is an original action under 26 U.S.C. § 7422, which the Court reviews *de novo*. *Hartman v. United States*, 99 Fed. Cl. 168, 179 (2011), *aff'd*, 694 F.3d 96 (Fed. Cir. 2012); *George E. Warren Corp. v. United States*, 141 F. Supp. 935, 940, 135 Ct. Cl. 305 (Ct. Cl. 1956).

**II.        BMW's 2019 Refund Claim was filed timely because its superseding return is "the return" that started to run the period of limitations for purposes of IRC § 6511.**

Whether BMW's 2019 Refund Claim was timely filed depends on whether BMW's superseding return constitutes "the return" that commenced the three-year limitations period under § 6511(a).[4]

§ 6511(a) provides, in relevant part:

> A claim for . . . refund of an overpayment of any tax in respect of which the taxpayer is required to file a return shall be filed by the taxpayer within three years from the time *the return* was filed or two years from the time the tax was paid, whichever of such periods expires the later . . .

IRC § 6511(a) (emphasis added). Neither § 6511 nor the regulations thereunder define the term "the return." The Federal Circuit, however, has addressed its meaning.

In *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999), the Federal Circuit construed "the return" in § 6511(a) to mean not necessarily the initially filed return, but the last timely filed return for the tax period. There, the taxpayer filed an initial 1983 return on September 17, 1984, when it was classified as a life insurance company. *Greene*, 191 F.3d at 1342. Under a separate statutory framework applicable upon cessation of that status, the taxpayer was required to file a second return for the same tax year. *Id*. at 1341-42. The

---

[4] Section 6511 of the Internal Revenue Code was originally enacted on August 16, 1954, as part of the Internal Revenue Code of 1954, signed into law as Public Law 591, 83rd Congress, Chapter 736, 68A Stat. 808, and became effective on January 1, 1955. The predecessor to § 6511 of the Internal Revenue Code of 1954 was § 322(b) of the Internal Revenue Code of 1939. Section 322(b) of the 1939 Code governed the statute of limitations on claims for credit or refund of taxes, establishing a basic framework with a three-year period from the time a return was filed or a two-year period from the time the tax was paid. Section 6511 carried forward the core elements of this framework in the 1954 recodification, with modifications including the addition of language specifying "whichever of such periods expires the later."

court identified a gap in the then-existing filing framework for life insurance companies: although a second return was required after the original filing deadline, no deadline existed for filing that second return. *Id.* at 1343. The taxpayer filed the second return on July 9, 1990, before any due date. *Id.* at 1342. The parties did not dispute the timeliness of that filing, which the court therefore treated as a timely filed return—functionally equivalent to a superseding return for the 1983 tax year. *Id.* at 1344.

Relying on the plain language of § 6511(a), the Federal Circuit held that the later-filed 1990 return constituted "the return" that commenced the three-year statute of limitations for filing a refund claim. *Id.* Because the refund claim was filed within three years of that second return, it was timely. *Id.* The court's reasoning did not turn on formal labels or the mere fact that an earlier return had already been filed. Rather, it focused on whether the later filing was a return the Code permitted the taxpayer to submit and whether it was filed before it was due. *Greene* thus confirms that, for purposes of § 6511(a), "the return" is not invariably the first-filed return. Where the Code permits or requires a later timely filing for the same tax year, the three-year window to claim a refund under § 6511(a) is measured from that later filing.

The U.S. Supreme Court's decision in *Haggar Co. v. Helvering*, 308 U.S. 389 (1940), further supports this interpretation. There, the Court held that a superseding tax return operates as the taxpayer's original return when a second return is filed before the original return's filing deadline. *Haggar*, 308 U.S. at 395-96. In *Haggar*, the taxpayer was required to declare its capital stock value on its first tax return under the then newly enacted Section 215. *Id.* at 391. The statute directed that the value be "declared by the corporation

9

in its first return under this section (which declaration of value cannot be amended)." *Id.* (citing § 215(f)). The taxpayer, within the extended time the IRS allowed for filing the original return, initially filed a return reporting one value. *Id*. at 392. Before the extended filing deadline expired, the taxpayer filed a second return reporting a more favorable capital stock value. *Id*. The government argued that the "first return" meant "the first paper filed as a return." *Id*. at 393. The U.S. Supreme Court disagreed, holding instead that a second return filed before the statutory due date is "commonly known as *the return* for the year, and must be treated as such." *Id*. at 395–96 (emphasis added).

*Haggar* thus concluded, on statutory language more restrictive than IRC § 6511, that when a second return is filed before the statutory deadline and displaces the earlier submission, it is "the return" – indeed the first return – for the year. *Id*. That a superseding return constitutes "the first return" in *Haggar* supports that such a return fits IRC § 6511's broader statutory language that refers to "the return."

Courts, often applying *Haggar*, have confirmed in analogous contexts that superseding returns, filed before the original return's statutory deadline, supplant initially filed returns and constitute the operative return for a variety of purposes.

For example, in *Charles Leich & Co. v. United States*, 165 Ct. Cl. 127 (1964), at issue was the interpretation of the phrase "its return for the taxable year" in Section 437(b)(1) of the Excess Profits Tax Act of 1950, a provision that gives taxpayers an election in computing the amount of invested capital. Section 437(b)(1) states in relevant part that "the invested capital for any taxable year shall be the adjusted invested capital determined under paragraph (2), except that if the taxpayer elects in its return for such taxable year to

10

compute its invested capital under the provisions of section 458, the invested capital for such year shall be the historical invested capital determined under section 458." *Charles Leich*, 165 Ct. Cl. at 139.

Relying on *Haggar*, the U.S. Court of Claims in *Charles Leich & Co.* held that the taxpayer, by filing a timely additional return, could shift from one method to the other "at any time up to the expiration of the period of limitations (for filing) for the years involved." *Id*. at 140. In rejecting the government's argument that the word "return" means the taxpayer's "first return" (thus arguing that an election cannot be effectuated by a timely second return), the court stated "[n]either the statute nor the regulation speak in terms of 'first return.'" *Id*. Indeed, the court observed that a timely filed second return has been held to be a "first return" under a statute requiring a taxpayer to make an election in its first return. *Id.* (citing *Haggar Co. v. Helvering*, 308 U.S. 389, 395 (1940)).[5]

---

[5] *See also J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55 (1940) (holding that a second return would have constituted the "first return" under § 114(b)(4) of the Revenue Act of 1934 if filed within the period allowed for the original return); *Scaife Co. v. Commissioner*, 314 U.S. 459, 62 (1941) (same for fixing capital stock value); *W. Fruit Exp. Co. v. United States*, 90 Ct. Cl. 434 (1940) (concluding that a second return filed before expiration of the statutory filing period counted as the "first return" under § 215 of the National Industrial Recovery Act); *Intersport Fashions W., Inc. v. United States*, 103 Fed. Cl. 396 (2012) (recognizing under *Haggar* that the "first return" includes a timely filed second return, but ultimately finding the plaintiff's amended return untimely); *King's Ct. Mobile Home Park, Inc. v. Comm'r*, 98 T.C. 511, 518 (1992) (holding that a second return filed before the original due date was the operative return for computing additions to tax for fraud under § 6653); *William B. Scaife & Sons Co. v. Commissioner*, 41 B.T.A. 278 (1940) (stating that a timely second return filed before the original due date is the "first return" for purposes of fixing capital stock value); *Wilson v. United States*, 267 F. Supp. 89 (E.D. Mo. 1967) (holding that a second return "filed within the statutory period for filing the original return" constituted a timely election on the taxpayer's "first return" under Treas. Reg. § 1.441-1(b)(3)); *Ivelia v. Dep't of Revenue*, No. TC-MD 180054R, 2018 Ore. Tax LEXIS 128 (T.C. Dec. 18, 2018) (interpreting the term "original return" in ORS 316.043(5) to include a superseding return filed before the due date, based on federal case law).

The IRS has applied the same understanding from *Haggar* in analogous contexts, concluding that when a timely superseding return is filed, "the return" for purposes of computing additions to tax is the superseding return rather than the initial return filing. *See* Rev. Rul. 78-256, 1978-1 C.B. 436 (citing *Haggar*, taxpayer's superseding return is "the return" within the meaning of 26 U.S.C. § 6655's "the tax shown on *the return* for the taxable year.") (emphasis added); Rev. Rul. 83-36, 1983-1 C.B. 358 (following Rev. Rul. 78-256 for penalties under 26 U.S.C. § 6654).[6]

Finally, Defendant attempts to assign significance to the fact that BMW's refund claim reflects a change from the initially filed return rather than from the superseding return. Dkt. 13 at 6-7. The implication appears to be that items first incorporated into an initial return should be governed by an earlier statute of limitations than items reflected on a superseding return, even though both filings relate to the same taxable year. Defendant cites no authority for carving a single taxable year into multiple § 6511 limitations periods keyed to different components of the same return.

Defendant's implied dual-clock theory conflicts with the text of § 6511 which measures the limitations period by reference to "the return," implying a single point at which the statute of limitations starts, not varying trigger points depending upon when a

---

[6] Revenue Rulings do not bind this Court but are "official interpretation[s] by the Service" published in the Internal Revenue Bulletin. 26 C.F.R. § 601.601(d)(2)(i)(a). Defendant cites two Chief Counsel Advice, which are unpublished internal IRS guidance; this includes CCA 200645019 which ruled a superseding return was "the return of the taxpayer and starts the statute of limitations on assessment under section 6501." This reflected the position of the IRS for at least 14 years until the IRS reversed its position in CCA 202026002. The unpublished internal IRS advice should not carry any authoritative weight.

particular item first appeared on a filing. IRC § 6511(a). Nothing in § 6511 authorizes Defendant's purported bifurcated regime. Defendant cites no authority permitting courts to carve a single taxable year into multiple, parallel limitations periods keyed to different components of the same return. Doing so would require courts and the IRS to track item-by-item filing histories to determine timeliness, with different components of a single refund claim becoming timely or untimely on different dates.

Such an approach is particularly unmanageable given the dynamic nature of tax computations. A change to one item on a tax return often affects other, seemingly unrelated items through mechanical interactions embedded in the Code. When multiple changes are involved—as is common with complex corporate returns—it becomes impracticable to disentangle which specific change should be deemed responsible for a particular downstream or correlative impact. Attempting to do so would require speculation about causal primacy among interdependent computations rather than application of a clear statutory rule. That reality underscores why courts should not depart from the single limitations clock that Congress enacted rather than an item-by-item framework. Defendant's theory thus adds a concept that Congress never enacted, courts have never accepted, and that would be unduly burdensome – if even possible – to administer.

In short, § 6511 speaks in singular terms and contemplates one operative return and one limitations clock. BMW's reading fits the statutory text and structure; Defendant's does not. BMW's reading also preserves Congress' directive that taxpayers be given three full years to identify and amend their filing positions. Starting the clock from the date of an earlier initial return filing would truncate the three-year period, contrary to the timeframe

13

Congress afforded taxpayers to identify and present a refund claim. *See* IRC § 6511(a). Courts have rightly resisted constructions that unnecessarily shorten the refund period Congress provided. *See Glaze v. United States*, 641 F.2d 339, 343 (5th Cir. 1981); *Raimo v. United States*, 26 Cl. Ct. 226, 228-29 (1992).[7]

Accordingly, consistent with *Greene* and *Haggar*, the Court should conclude that a timely filed superseding return constitutes "the return" within the meaning of § 6511 and supplants the earlier filing. Once the superseding return assumes that role, it serves as the reference point for the statutory refund filing deadlines in § 6511 and affords the taxpayer a full three years in which to identify and file for a refund of any items reported on timely filed returns.

### III.    Defendant's authorities do not address the superseding return question under IRC § 6511.

The United States claims that, except for *Greene v. United States*, *supra,* "every court to examine" what constitutes "the return" for purposes of § 6511 has concluded that

---

[7] Measuring § 6511's limitations period from an initial return (subsequently superseded) would discourage taxpayers from filing promptly and instead reward strategic delay until the end of the extension period. Congress enacted § 6511 to provide taxpayers with a full and predictable period to identify and claim overpayments tied to October 15, not to penalize early compliance. The issue in this case was caused by the Treasury Department issuing guidance regarding a tax election that impacted BMW, which was addressed in BMW's superseding return. Nothing in the statute suggests that taxpayers like BMW should forfeit part of the early compliance period simply because they filed ahead of the extended tax return October 15 deadline. Courts should avoid constructions that deter timely filing and undermine orderly tax administration.

the term "refers to the first-filed return" and, impliedly, does not refer to a superseding return filed prior to the return's filing deadline. Dkt. 13 at 4.

However, none of the authorities Defendant cites involved a timely superseding return filed on or before the statutory due date, including extensions, and none holds that such a return is irrelevant for purposes of IRC § 6511. Defendant's cases instead fall into two categories: cases rejecting attempts to restart the refund period through post-deadline amended returns, and cases construing the materially different assessment statute in 26 U.S.C. § 6501. Neither line of authority answers the question presented here—whether, when a taxpayer files a single timely superseding return that supplants an earlier filing *before* the extended statutory due date, that superseding return is "the return" from which § 6511(a)'s three-year statute of limitations period runs.

**A.     The cases construing IRC § 6511 involve only post-deadline amended returns and reject only restart theories not presented here.**

The principle case on which Defendant relies is *Kaltreider Constr., Inc. v. United States,* 303 F.2d 366 (3ʳᵈ Cir. 1962). There, a corporate taxpayer filed its 1952 income tax return in March 1953 and filed an amended return in March 1956 in which it paid additional tax. *Kaltreider*, 303 F.2d at 367. In May 1958, in a case in which the owners of the corporate taxpayer in *Kaltreider* were parties, the court entered judgment against the taxpayers for past due taxes. *Id*. In *Kaltreider*, the corporate taxpayer argued that it had already paid the same taxes and thereupon filed for a refund on grounds that it had erroneously paid the liability of its stockholders. *Id*. There is no indication in the opinion that the corporation

had filed a protective claim contingent on the outcome of the stockholders' litigation; instead, the corporation argued that the March 1956 amended return restarted the clock to claim a refund under § 322 of the Internal Revenue Code of 1939 (predecessor of § 6511). *Id*. at 368. The Third Circuit disagreed and found the claim untimely. *Id*.

The point of *Kaltreider* is therefore narrow: a taxpayer may not revive an already expired refund period by filing an amended return after the statutory deadline and then measuring a new three-year period from that later filing. *Id*. at 367–68; IRC § 6511(a).[8] In reaching this holding, the *Kaltreider* partly relied on Section 57.15 of The Mertens Law of Federal Income Taxation treatise, which provides in relevant part:

> Amended Returns. When the return required by law has been filed and thereafter an amended return is filed, the statute of limitations begins to run from the date the original return was filed, and the filing of the amended return does not operate to extend the statute.

10 Mertens, Federal Income Taxation, § 57.15. The same treatise contains an adjacent discussion entitled "Superseding Returns," which contains the following guidance:

> A return filed prior to the due date and changing the data reported on the original return is commonly referred to as a "superseding return." A superseding return is generally treated as the taxpayer's return that starts the limitations period, and corrections provided in the superseding return are incorporated into . . . and supersede the original return.

---

[8] Recently, in *Iglinski v. United States*, a federal district court criticized *Kaltreider* and emphasized that Section 6511(a)'s reference to "the return" is not necessarily taxpayer's first-filed return, holding instead that a later-filed return can start the limitations period for refund claims. *Iglinski v. United States*, No. 25-C-895, 2025 LX 586473 (E.D. Wis. Nov. 24, 2025) (pending). The decision is unpublished and the case still pending; it is cited to illustrate that courts may disagree with *Kaltreider* and accept a broader definition of "the return" than BMW needs to prevail and is seeking in this case.

16

10 Mertens, Federal Income Taxation, § 57.16. The fact that the *Kaltreider* court relied on Section 57.15 (regarding amended returns) and not Section 57.16 (regarding superseding returns) of Mertens, further confirms that *Kaltreider* addresses the amended return and not the superseding return context.

Other decisions Defendant invokes merely echo the same rule that post-due-date amended returns do not reset § 6511(a)'s statute of limitations clock: *Chaney v. United States*, 45 Fed. Cl. 309, 316 (1999) (pro se taxpayer's amended return filed after the original return due date did not restart the statute of limitations to claim a refund); *Mertens v. United States*, 12 Cl. Ct. 678, 679–80 (1987) (similar); *Malonek v. United States*, 923 F. Supp. 1462, 1465 (D. Wyo. 1996) (similar). These cases do not involve timely superseding returns filed *before* the statutory due date for the return, only amended returns filed *after* the original return's statutory due date.

The foregoing rule is arguably sensible: if a post-deadline amended return did restart § 6511(a)'s three-year statute of limitations clock, taxpayers could extend the refund period indefinitely through serial amended filings. A taxpayer could file an amended return within the three-year period, gain an additional three years, and then file yet another amended return before that period expired—restarting the statute again. This cycle could continue indefinitely. That concern is wholly absent in the superseding return context because a return qualifies as superseding only if the return is filed on or before the original due date, including extensions. In BMW's case, this specific fixed outer boundary is October 15, 2020, the extended due date of BMW's 2019 return, foreclosing perpetual extensions of the refund statute.

17

In short, the limited rule applied in the amended return cases do not resolve which filing constitutes "the return" for purposes of § 6511 when a taxpayer submits a single, timely superseding return that, under longstanding doctrine and agency practice, replaces the earlier filing. Defendant identifies no case holding that a timely superseding return is irrelevant in defining § 6511(a)'s refund window.

Moreover, treating the last-filed superseding return as the proper measuring point for the three-year period fits comfortably within § 6511's structure, including the look-back rule in 26 U.S.C. § 6511(b). That provision coordinates the refund limitations period with amounts paid or deemed paid on the original due date and thus presupposes that timely filed refund claims will often be measured from the due date as extended. *See* IRC § 6511(b). Section 6511(b) permits refunds of amounts paid or deemed paid on or before the original filing deadline, so long as the refund claim is filed within three years of the extended due date, reflecting Congress's judgment that using the extended due date as the starting point does not produce stale claims. Adopting the superseding return as the start of the three-year period is therefore fully consistent with § 6511's purpose of protecting the government against stale refund demands because, at most, the limitations period would still expire three years after the extended and still timely statutory due date—the very timeframe Congress contemplated would often govern timely refund claims. *See* IRC § 6511(b).

**B.      The Supreme Court cases on which Defendant relies construe IRC § 6501's assessment regime and do not involve IRC § 6511 or superseding returns.**

Defendant relies on a trio of Supreme Court cases: *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934); *Nat'l Paper Prod. v. Helvering*, 293 U.S. 183 (1934); and *Badaracco v. Comm'r*, 464 U.S. 386 (1984).   The reliance is misplaced for several independent reasons.

First, none of those decisions involved a timely superseding return filed on IRS Form 1120, U.S. Corporation Income Tax Return, filed on or *before* the due date. *National Paper* and *Badaracco* involved amended returns filed *after* the original return's due date.[9] *Nat'l Paper*, 293 U.S. at 184–86; *Badaracco*, 464 U.S. at 393–402. *Zellerbach* did not involve any second return – neither an amended nor a superseding return.[10] *Zellerbach*, 293 U.S. at 177–78.

As previously discussed, the IRS recognizes the distinction between superseding and amended returns and treats them differently. *E.g.* I.R.M. 3.11.6.5.5.2 (02-03-2025) (a second return "[f]iled on or before the due date or the extended due date is a superseding return"); I.R.M. 21.7.9.3.4 (03-07-2024) ("A superseding return is defined as a second (or

---

[9] The United States describes that the amended return at issue in *Badaracco* was a "superseding return," Dkt. at 11, however, the return had been filed after the filing deadline (after the taxpayers were under investigation by a federal grand jury in New Jersey) and thus was not actually a superseding return. *Badaracco* is also specific to the fraudulent return context, which has no application here.

[10] The issue in *Zellerbach* was whether the original return that the taxpayer filed started the statute of limitations for the IRS to assess tax. The government argued that the original return was nullified by a change in law and thus did not count as a filed return that starts the time for the IRS to assess tax. In *obiter dicta*, the Court commented on amended returns; it did not comment, even if *dicta*, about superseding returns.

subsequent) return filed on or before the due date for filing, including extensions. The second return is deemed to replace or supersede the original return"). It promulgated different forms for superseding returns as compared to amended returns. *Compare* Dkt. 13-2 at 1-3 (BMW's superseding tax return on IRS Form 1120, U.S. Corporation Income Tax Return) with Dkt. 6-1 at 2-95 (BMW's amended return on IRS prescribed Form 1120X, Amended U.S. Corporation Income Tax Return). It provided distinct filing instructions for superseding returns. *E.g.*, IRS Instructions - Amended and superseding corporate returns[11] ("A superseding return is a return filed subsequent to the originally-filed return and filed within the filing period (including extensions)"); IRS Topic No. 308, Amended Returns[12] (instructing individuals regarding filing superseding returns and confirming that a second return filed prior to the due date of the original return "will replace or supersede the original return."). Moreover, as previously discussed, allowing amended returns to restart the statute of limitations on refund claims could allow taxpayers to "stack" successive amended returns to potentially extend the limitations period indefinitely—an abuse that is categorically unavailable with superseding returns. The trio of Supreme Court cases, because they involve amended, not superseding, returns, are inapposite.

Second, *Zellerbach*, *National Paper,* and *Badaracco* are inapplicable to the instant case because they were decided in the context of IRC § 6501's statute of limitations

---

[11] This guidance may be found at https://www.irs.gov/businesses/corporations/amended-and-superseding-corporate-returns (last updated June 14, 2025).

[12] This guidance may be found at https://www.irs.gov/taxtopics/tc308 (last updated September 12, 2025). *See also* I.R.M. 3.11.6.5.5.2 (02-03-2025) (a second return "[f]iled on or before the due date or the extended due date is a superseding return").

governing assessments by the government, a significantly different statute than the statute of limitations for refunds of IRC § 6511 at issue here. *See Zellerbach Paper Co.*, 293 U.S. at 177-78 (interpreting IRC § 250d, the predecessor of IRC § 6501(a)); *Nat'l Paper Prod. v. Helvering*, 293 U.S. at 186 (holding that an *amended return* did not restart the period of limitations on *assessments*); *Badaracco*, 464 U.S. at 396 (holding that IRC § 6501(c)(1) permitted the government to *assess* tax at any time for a year in which the taxpayers filed false or fraudulent tax returns).

The Federal Circuit in *Greene,* highlighting the difference in statutory designs, distinguished *Zellerbach* on grounds that it involved the IRC § 6501 statute of limitations on assessment, not the IRC § 6511 statute of limitations on refunds. *Zellerbach*,191 F.3d at 1344. The Federal Circuit cabined *Zellerbach* to the IRC § 6501 context, opining that *Zellerbach* addressed "only the statute of limitations governing assessments by the government, not refund requests by a taxpayer" and "did not announce a general rule applicable in all circumstances, but rather a rule specific to the circumstances before it." *Id.* The United States seeks a decision from this Court that conflicts with the Federal Circuit's binding precedent and decision in *Greene v. United States*, which already declined to extend *Zellerbach* to the assessment context and export its rule to IRC § 6511.

In further disregard of *Greene*, the United States glosses over important differences in the assessment and refund statutory schemes which the Federal Circuit recognized. In broad strokes, differences between the assessment and refund statutes include: (1) the parties affected—§ 6511(a) limits taxpayer actions while IRC § 6501(a) limits IRS actions; (2) timing triggers—§ 6511(a) uses either return filing dates or tax payment dates, while

21

IRC § 6501(a) primarily uses return filing dates; (3) procedural purposes—§ 6511(a) protects the government from stale refund claims while IRC § 6501(a) protects taxpayers from indefinite IRS audit and assessment exposure; and (4) operational mechanics—§ 6511(a) allows taxpayers to choose the more favorable of two limitation periods, while IRC § 6501(a) provides a single three-year period with specific exceptions.

And contrary to Defendant's suggestion, the two statutes need not operate in lockstep. Dkt. 13 at 10, 13 ("the limitation on the IRS' ability to assess mirrors the limitation on the taxpayer's ability to request a credit or refund"; "Generally . . . the limitations periods for assessments and refund claims match."). While both provisions contain a general three-year prescription period, their paths mostly diverge from there. Section 6511 contains a look-back period that constricts its general three-year period. IRC § 6511(b). The three-year prescription period also is only one of a list of limitation periods in § 6511. It also contains a two-year limitation period tied to the payment date, a seven-year period for bad debts, and other timeframes for net operating loss carrybacks, capital loss carrybacks, foreign tax credits, and other circumstances that deviate from the three-year statutory period in which refund claims may be filed. IRC § 6501, in contrast, contains a completely different set of deviations from its three-year rule: no statute of limitations when a false or fraudulent return is filed and other departures that differ from those contained in § 6511.[13]

---

[13] Even when the IRS and a taxpayer agree to extend the statute of limitations on assessment under IRC § 6501(c)(4), while there is a corresponding extension of the period to file a refund claim, under § 6511(c) the period extends 6 months further than the assessment statute.  Congress's

22

In short, Congress chose different triggers, different exceptions, and different mechanics for assessment periods and refund periods, a number of which result in different assessment and refund deadline dates, and courts should respect those differences rather than collapse them into a supposed parity rule found nowhere in the Code. The Federal Circuit recognized these distinctions in *Greene* and rejected the government's attempt to transplant assessment cases into § 6511. Defendant's arguments to the contrary run directly into controlling Federal Circuit precedent and authority distinguishing those statutory regimes and rejecting the notion that *Zellerbach* announced a trans-substantive rule governing all tax limitations provisions. *See id*. at 1344–45.[14]

Accordingly, this Court should not find it "hard to see how holding that there is jurisdiction here would not call [the Supreme Court cases on which Defendant relies] into question" as Defendant's motion posits. Dkt. 13 at 13. None of the cases that Defendant relies on interpret § 6511 or involve superseding returns. In contrast, the Federal Circuit in *Greene* established that "the return" in § 6511(a) is not invariably the first-filed return; where a later return is timely and operative for the tax year, the limitations period runs from that tax return filing. A superseding return filed by the extended due date stands in the same procedural posture as *Greene*'s later, timely filing; it supplants the initial return and

_____

deliberate mismatch between the two timeframes thus refutes the alleged lockstep notion between assessment and refund statutes of limitation that Defendant advances.

[14] In any event, to the extent that there should be parity between the statutes of limitation on assessment and refunds, the assessment statute may also be measured from the filing of a superseding return, achieving the parity Defendant argues for in its motion. Defendant has not cited any court case or published IRS guidance directly on point that would preclude the assessment statute from commencing upon the filing of a timely superseding return.

operates as "the return" for the tax year. This also accords with the Supreme Court's edict

in *Haggar* that a second pre-deadline filing is "commonly known as the return for the year

and must be treated as such."  On BMW's facts, this confirms that the refund claim that

BMW filed within three years of its superseding return is timely.

**IV.        Alternatively, BMW's claim is timely because the limitations period was tolled by COVID-19-related emergency relief legislation.**

26 U.S.C. § 7508A(a) ("IRC § 7508A" or "Section 7508A") was enacted to delay

or toll tax return due dates, tax payments, claims for refund and credits, and appeal

deadlines because of disasters such as hurricanes, floods, or fires. It provides as a general

rule:

> (a) In general.—In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A)) or a terroristic or military action (as defined in section 692(c)(2)), the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—
>
> > (1) *whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor* (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),
> >
> > (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and
> >
> > (3) the amount of any credit or refund.

IRC § 7508A(a) (2019) (emphasis added).

Importantly, in December 2019, in light of the COVID-19 pandemic, Congress amended IRC § 7508A by including a mandatory, self-executing suspension period, which, as in effect during the period at issue, provides as follows:

(d) Mandatory 60-day extension. —

(1) In general. —In the case of any *qualified taxpayer*, the period—

(A) *beginning on the earliest incident date specified in the declaration* to which the disaster area referred to in paragraph (2) relates, and

(B) *ending on the date which is 60 days after the latest incident date so specified*,

*shall be disregarded* in the same manner as a period specified under subsection (a).

IRC § 7508A(d) (2019) (emphasis added). [15] Accordingly, under IRC § 7508A(d), the period between the declaration of a natural disaster and 60 days after the date of the latest incident (when the natural disaster is declared over) *shall be disregarded* in determining certain filing deadlines for qualified taxpayers. Under 26 U.S.C. § 7508(a)(1)(E), such deadlines include the deadline to file a claim for credit or refund.

### A.    BMW is a qualified taxpayer that was affected by a declared federal disaster for purposes of IRC § 7508A.

Pursuant to IRC §§ 7508A(a) and (d), the mandatory 60-day extension period is available to any "qualified taxpayer" who was affected by a federally declared disaster. A

---

[15] Pub. L. 116-94 Sec. 205(a), amended by adding subsection (d). In 2019, Congress amended Section 7508A to add a 60-day postponement period. On November 15, 2021, Congress updated Section 7508A(d) to clarify the acts to which the 60-day postponement apply. Congress also clarified that the 60-day period begins on the incident date specified in the disaster declaration and ends on the later of 60 days after the incident date or the date of the disaster declaration. *Id.*

"qualified taxpayer" means any taxpayer if the taxpayer's principal place of business (other than the business of performing services as an employee) is located in a federally declared disaster area. IRC §§ 7508A(d)(2), (3).

On March 13, 2020, the President of the United States declared a nationwide emergency under § 501(b) of the Robert Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. § 5121-5207, as a result of the COVID 19 pandemic. *See* Presidential Proclamation 9994 (March 13, 2020). The President also approved major disaster declarations for each of the 50 states pursuant to § 401 of the Stafford Act. *See* Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 20-20 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020). On March 13, 2020, the administrator of the Federal Emergency Management Agency (FEMA) declared New Jersey a major disaster area. *See* FEMA Declaration 3451 (March 13, 2020). As with other state disaster declarations, the New Jersey disaster declaration identified the pandemic incident period as "beginning on January 20, 2020, and continuing." *Id.*

BMW's principal place of business in 2020 was in Woodcliff Lake, New Jersey, a federally declared disaster area under the FEMA Declaration 3451 of March 2020. *See* Dkt. 1 ¶ 5. Because BMW was located in a federally declared disaster during the period at issue, it is a "qualified taxpayer" for purposes of IRC § 7508A. Therefore, the mandatory 60-day

26

extension period applies for purposes of determining the deadline to file BMW's 2019 Refund Claim.

> **B.**     **The period of limitations to file BMW's 2019 Refund Claim was tolled from January 20, 2020 to July 13, 2023, pursuant to IRC § 7508A.**

Section §7508A provides that a mandatory 60-day extension "beginning on *the earliest incident date specified in the declaration"* to which the disaster area relates, and "*ending on the date which is 60 days after the latest incident date* so specified," shall be disregarded in determining whether any of the acts in IRC §7508(a), which includes the filing of a claim for refund, were performed within the time prescribed. The language of this provision was recently interpreted by this Court in *Kwong v. United States*, 179 Fed. Cl. 382 (2025)(pending).

In *Kwong*, a taxpayer filed in 2020 refund and abatement claims for tax years 2007, 2010, and 2011. *Kwong*, 179 Fed. Cl. at 384. The IRS disallowed the claims in October 2020. *Id*. In February 2023, more than two years after the disallowance of the claims, the taxpayer filed a refund lawsuit with the Court of Federal Claims. *Id*. At issue in *Kwong* was whether the taxpayer was entitled to additional time under IRC § 7508A (and under the same COVID-19 pandemic emergency relief proclamations at issue here) to file his lawsuit beyond the normal two-year period to recover the penalties from the earlier tax years. *Id*. at 385.

In determining the beginning and end of the automatic extension period provided in the 2019 version of IRC § 7508A(d), the *Kwong* court reviewed the relevant FEMA declarations, which, like the FEMA declarations applicable to New Jersey, identified the

27

pandemic incident period as "beginning on January 20, 2020, and continuing." *Id*. at 387. The court then noted that the pandemic emergency declaration was later amended to end on May 11, 2023, which led the court to conclude that "the automatic extension lasted until after the end of the disaster declaration, or, in the case of the COVID-19 disaster, until July 10, 2023 (60 days after its end date of May 11, 2023)." *Id*. at 388. Based on the language of IRC § 7508A(d) and the COVID-19 pandemic emergency relief declarations, the *Kwong* court thus held that the automatic extension period began on January 20, 2020, and ended on July 10, 2023. *Id*. at 389.

Although, based on the facts in *Kwong*, the court did not need to determine whether the "shall be disregarded" language in IRC §7508A provides for a tolling or a postponement period, other courts have interpreted that language, in the context of IRC §7508(a) in which a taxpayer is in a combat zone, to mean that the entire incident period should be removed from the computation of the applicable limitation periods. *See e.g., Stone v. Commissioner*, 73 T.C. 617, 620-21 (1980) ("Section 7508(a)(1)(C) *excludes the period* during which a member of the Armed Forces is present in a 'combat zone' in determining the time allowable for the filing of a petition with the Tax Court for a redetermination of a deficiency."); *Munoz v. Commissioner*, T.C. Memo. 2000-18, 79 T.C.M. (CCH) 1366, 1367 ("Section 7508(a)(1)(C) serves to extend the normal 90-day . . . period within which a petition must generally be filed *by disregarding the time* when a member of the Armed Forces is present in a combat zone. . . . "); *see also Hampton v. United States*, 513 F.2d 1234, 1246 (Ct. Cl. 1975) ("A Serviceman in combat is also given an automatic extension of time to perform certain acts under the revenue laws by virtue of

section 7508 of the Code. . . . The postponement authorized under section 7508 generally applies to the filing of returns, the payment of any tax, the assessment of any tax, and the commencement of any suit."). Accordingly, the phrase "shall be disregarded" in the context of IRC §7508A should be interpreted in the same way by allowing the tolling of the applicable statute of limitations during the incident period. In this case, the tolling of the statute of limitations at issue means that the entire COVID-19 disaster incident period (from January 20, 2020, until July 10, 2023) should be removed, i.e., disregarded, tolled, suspended, or subtracted, from the computation of the period of limitations.

Based on the express language of the 2019 version of IRC §7508A(d), the applicable COVID-19 pandemic relief proclamations, and the *Kwong* case, the period beginning on January 20, 2020, until July 10, 2023, shall be disregarded or tolled in determining the timeliness of BMW's 2019 Refund Claim. This means that, regardless of which return – BMW's initial or superseding Form 1120 tax return – this Court decides started the period of limitations to file the 2019 Refund Claim, the period of limitations did not begin to run until July 10, 2023, because both BMW's initial and superseding Form 1120 tax returns were filed during the automatic extension period beginning on January 20, 2020 and ending July 10, 2023. Accordingly, the deadline to file the 2019 Refund Claim was effectively extended until at least July 10, 2026. BMW filed its 2019 Refund Claim on October 13, 2023, well in advance of the July 10, 2026, deadline, making the claim for refund timely.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny

Defendant's Motion to Dismiss.


Dated: April 10, 2026

JUAN F. VASQUEZ JR.
juan.vasquez@nelsonmullins.com
PETER LOWY
peter.lowy@nelsonmullins.com
TANIA P. ALBUJA
tania.albuja@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Tel: (346) 646-5506
Fax: (346) 241-3758

BRANDON BIGELOW
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Tel: (617) 217-4660
Fax: (617) 217-4710
Brandon.bigelow@nelsonmullins.com

*Attorneys for Plaintiff*

30