IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————————

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

———————————

**REPLY TO PLAINTIFF'S RESPONSE TO THE
UNITED STATES' MOTION TO DISMISS**

———————————

**TABLE OF CONTENTS**

**Content(s)**                                                                              **Page(s)**

I.     There Is No Difference Between A "Superseding" And An "Amended" Return
       For The Purposes Of Determining Jurisdiction Here. ...........................................1

       a. BMW Misrepresents the Federal Circuit's *Greene* Decision. ...............................2

       b. Given *Greene*'s Inapplicability, the Court Should Follow the
          Near-Century of Precedent Holding that the First-Filed Return Determines
          Jurisdiction.................................................................................4

II.    The Due Date For BMW's Refund Claim Was Not Tolled For Three Years. ...................9

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abdo v. Comm'r of Internal Revenue*
    162 T.C. 148, 165-6 (2024) ................................................................................. 13

*Artis v. District of Columbia*,
    83 U.S. 71, (2018) ............................................................................................. 14

*Chaney v. United States*,
    45 Fed. Cl. 309, (1999) ....................................................................................... 7

*Dixon v. United States*,
    67 F.4th 1156, (Fed. Cir. 2023) ......................................................................... 9

*Eaglehawk Carbon, Inc. v. United States*,
    122 Fed. Cl. 209(2015). .................................................................................. 8, 9

*First Charter Financial Corp. v. United States*,
    669 F.2d 1342 (9th Cir. 1982) ........................................................................... 8

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012) .......................................................................................... 16

*Greene v. United States*,
    191 F.3d 1341(Fed. Cir. 1999) ................................................................. 2, 3, 4

*Hampton v. United States*,
    513 F.2d 1234 (Ct. Cl. 1975) ........................................................................... 13

*Kaltreider Const., Inc. v. United States*,
    303 F.2d 366 (3d Cir. 1962) ............................................................................... 6

*King v. Burwell*,
    576 U.S. 473 (2015) .......................................................................................... 16

*Kwong v. United States*,
    179 Fed. Cl. 382 (2025) ...............................................................................10, 11

*Mitchell v. Comm'r of Internal Revenue*,
    103 T.C. 520 (1994) ............................................................................................ 8

*Monsalvo Velazquez v. Bondi*,
    604 U.S. 712 (2025) .................................................................................... 12, 13

*Munoz v. Comm'r of Internal Revenue*, T.C. Memo 2000-18,
  2000 WL 31847................................................................................................... 13

*Nat'l Paper Prods. Co. v. Helvering*,
  293 U.S. 183 (1934) ............................................................................................ 7

*Pace Oil Co. Inc. v. Comm'r of Internal Revenue*,
  73 T.C. 249 (1979)............................................................................................... 8

*Stone v. Comm'r of Internal Revenue*,
  73 T.C. 617 (1980) ............................................................................................ 13

*Thor Power Tool Co. v. Comm'r of Internal Revenue*,
  439 U.S. 522 (1979)........................................................................................... 14

*United States v. Brockamp*,
  519 U.S. 347 (1997)...................................................................................... 14, 15

*Wood v. Comm'r of Internal Revenue*, T.C. Memo 2021-103,
  2021 WL 3662399............................................................................................. 13

*Zellerbach Paper Co. v. Helvering*,
  293 U.S. 172 (1934) ............................................................................................ 7

**Statutes**                                                                     **Page(s)**

I.R.C § 6501................................................................................................... 7, 8

I.R.C § 6511............................................................................................... 2, 7, 8

I.R.C § 7508................................................................................................ 9, 13, 14

I.R.C § 7508A ......................................................................................... *passim*

28 U.S.C. § 2415............................................................................................. 14

28 U.S.C. § 1367............................................................................................. 14

Infrastructure Investment and Jobs Act § 80501,
P.L. 117-58, 135 Stat 429, 1335 (November 15, 2021) ................................. 10

**Regulations**                                                                  **Page(s)**

26 C.F.R. § 301.7508A-1 ............................................................................... 12

**Other Authorities**                                                                    **Page(s)**

I.R.M. 25.15.9.6.2, 2007 WL 9848429 .................................................................... 12

I.R.M. 4.23.9.9, 2007 WL 10142258 ..................................................................... 12

IRS CCA 202026002, 2020 WL 3481726 (June 26, 2020) ..................................... 9

Notice 2008-100, 2008 WL 4060021 (Hurricane Gustav)....................................... 12

Notice 2008-107, 2008 WL 4253626 (Hurricane Ike)............................................. 12

Notice 2017-20, 2017 WL 4466851 (Hurricane Harvey and Hurricane Irma)............ 12

Update to Notice 2020-18, Additional Relief for Taxpayers Affected by Ongoing Coronavirus
Disease 2019 Pandemic, 2020-18 I.R.B. 742 (2020)........................................11

Rev. Rul. 76-425, 1976-2 C.B. 447 (1976);.............................................................. 13

**Treatises**                                                                             **Page(s)**

10 Mertens Federal Income Taxation,
§ 57.15 and 57.16..................................................................................................6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————————

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

———————————

**REPLY TO PLAINTIFF'S RESPONSE TO THE
UNITED STATES' MOTION TO DISMISS**

———————————

The United States has moved to dismiss this case for lack of subject matter jurisdiction, arguing that plaintiff's ("BWM") administrative refund claim was untimely because it was submitted more than three years after the relevant tax return. *See* Dkt. 13. BMW makes two arguments in response. First, BMW says pre-deadline "superseding" returns such as the one it claims to have filed in October 2020 are carved out from the rule that amending a tax return does not restart the three-year clock on submitting a timely administrative refund claim. *See, e.g.*, Dkt. 22 at 3, 9. Second, BMW says the limitations period for BMW to file an administrative refund claim was tolled for the entirety of the federally declared COVID-19 disaster, more than three years. *Id.* at 24-29. Both arguments lack merit and should be rejected.

**I.      There is No Difference Between a "Superseding" and an "Amended" Return for the Purposes of Determining Jurisdiction Here.**

BMW's response brief makes much of the argument that whereas cases cited by the United States involve "amended" returns filed after the original returns' due dates, BMW's

1

situation involves a "superseding" return filed prior to it. While there may be areas of tax law in which this distinction matters, § 6511(a)'s[1] jurisdictional rule is not among them.

### a. BMW Misrepresents the Federal Circuit's *Greene* Decision.

BMW says *Greene* held that "'the return' in § 6511(a)" means "the last timely filed return for the tax period." Dkt. 22 at 3. BMW then posits that the "reasoning" of *Greene* "did not turn on formal labels or the mere fact that an earlier return had already been filed" but instead on "whether the later filing was a return the Code permitted the taxpayer to submit and whether it was filed before it was due." *Id.* at 9.

But *Greene* plainly was not decided on that basis. The taxpayer in *Greene* argued that the second-filed return was the jurisdictionally relevant one under § 6511(a) because it "was the first return in which the facts necessary to establish … liability had been established*." Greene v. United States*, 191 F.3d 1341, 1343 (Fed. Cir. 1999). The United States countered "that the 'return' of § 6511(a) refers to the original return for a given year, not to returns which amend or supplement that return." *Id.* The Federal Circuit's decision turned wholly on the taxpayer's "necessary to establish liability" argument: "In this case, where the events giving rise to the tax necessarily took place after the taxable year, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income." *Id.*

Nothing in *Greene* even discusses, let alone can be construed as constituting a holding on, pre-deadline "superseding" versus post-deadline "amended" returns. The word "superseding" does not appear in the decision, and the government's argument was about second-filed returns generally ("amend or supplement"). The Federal Circuit did not reject the government's argument by holding that "superseding" returns automatically reset the § 6511 clock as long as

---

[1] Unless otherwise indicated all statutory references are to Title 26 of the United States Code.

they are filed before the tax year deadline, which is BMW's theory here. Indeed, the Federal Circuit **could not** have so held in *Greene*: the second return there was filed nearly six years after the first one. 191 F.3d at 1343. *Greene*'s language of "events giving rise to the tax [that] necessarily took place after the taxable year" shows it could not be a holding on the pre-deadline "superseding" returns BMW believes are subject to a unique jurisdictional regime. *Id. Greene* indeed explicitly refers to the taxpayer's second return as an "amended return," not a "superseding return." *Id.*[2]

BMW's erroneous reading of *Greene* causes BMW to misunderstand the United States' point about the relationship between the content of BMW's first-filed and second-filed 2019 returns and its later administrative refund claim. BMW says the United States "suggests that BMW's refund claim is untimely because it reflects changes from the initially filed return rather than from the timely superseding return." Dkt. 22 at 3. BMW then asserts that "implicit in that contention is that items first reported on an initial return are subject to an earlier statute of limitations than items reflected on a superseding return." *Id.*

No: the refund claim was presumptively untimely for the simple (and undisputed) reason that it was filed over three years after BMW's original 2019 tax return. "Presumptively" because *Greene* provides the **only** carve-out for measuring from a subsequent return instead—and, as

---

[2] A footnote in *Greene* noted that although there was a potential argument the taxpayer had been "dilatory" in filing the second return, neither party raised its timeliness. 191 F.3d at 1342 n.3. Relegation of this issue to a footnote shows how little it figured in the decision. BMW's description of *Greene* as covering any return that "the Code permitted [and that was] filed before it was due" is therefore perplexing and untethered to the actual decision. Dkt. 22 at 9. Even allowing *arguendo* that BMW's distinction between pre-deadline "superseding" returns and post-deadline "amended" returns has legal import, nothing in that distinction makes the amended return "untimely" or not "permitted." There is not really such thing as an "untimely" amended return anyway: nothing prevents a taxpayer from amending any return at any time, although for the typical practical purposes of claiming a refund or avoiding a penalty the IRS imposes a three-year deadline.

described above, the **entire** inquiry into whether that carve-out applies is whether "the events giving rise to the tax necessarily took place after the taxable year." 191 F.3d at 1343. That is why the "changes" BMW refers to, or the lack thereof, are relevant. It is not because supplementing or amending a tax return creates multiple item-by-item statutes of limitations, which is how BMW describes the allegedly slippery slope leading down from the United States' argument. *See* Dkt. 22 at 3 (describing "an extra-statutory, item-specific limitations framework" that "would be unmanageable"). Comparison matters solely because of the inquiry demanded by *Greene*: did the refund claim arise from "events giving rise to the tax [that] necessarily took place after the taxable year," 191 F.3d at 1343, or not? BMW incorrectly construes *Greene* as declaring a bright-line rule that would make that inquiry irrelevant. It is therefore BMW and not the United States that would "contravene Federal Circuit precedent." Dkt. 22 at 3.

> **b.  Given *Greene*'s Inapplicability, the Court Should Follow the Near-Century of Precedent Holding that the First-Filed Return Determines Jurisdiction.**

The rule to which *Greene* is the sole (and here inapplicable) exception comes from case law on jurisdiction the United States cited in its opening brief. *See* Dkt. 13 at 4-5, 10-13. BMW's argument against these precedents is that they are distinguishable, either because they involve assessments instead of refunds, *see* Dkt. 22 at 19-24, or because they involve "post-deadline amended returns" rather than pre-deadline "superseding" returns, *see id.* at 15-18. So they do— but BMW cannot explain why these cases should be of no consequence despite BMW's inability to cite a **single case** where a Court held a "superseding" return automatically reset a jurisdictional clock because (and only because) it was filed pre-deadline. As explained above, *Greene* is certainly not such a case.

Given this precedential void on BMW's side, its attempts to downplay the significance of the cases cited by the United States ring hollow. BMW is left arguing at some length that non-

4

jurisdictional decisions like *Haggar v. Helvering*, 308 U.S. 389 (1940), and its progeny are more relevant than jurisdictional case law on both the refund and the assessment process. *See* Dkt. 22 at 9-12 & n.5. But *Haggar* was specific to the substantive tax regime at issue: a code section requiring the corporation to declare a taxable capital stock value on the "first return" filed after the section's enactment. 308 U.S. at 391. The taxpayer was "free to declare any value of capital stock … but since the declared value for the first year is a controlling factor for the computation of taxes for later years, the statute provides that the declaration once made cannot be amended." *Id.* at 392. The question was what to do with a corporation that filed an original return declaring a capital stock value of $120,000 and then an amended return for the same year declaring a capital stock value of $250,000.

In holding for the taxpayer, the Court noted that the IRS "concedes that the amount of the declared value of capital fixed for the first year is a matter of indifference to the Government," because "for any reduction in capital stock tax effected by the declaration of a low value of the capital stock there is an accompanying increase in excess profits taxes." *Id.* at 393. Thus, the Court interpreted the statute's reference to "first return" in light of its "unmistakable" purpose: corporations fixing self-imposed valuations from which subsequent years' taxes would be computed. This purpose would not be served and would indeed be thwarted by rejecting the petitioner's amended return. *Id.* at 394-6. "A timely amended return," the Court held, "is as much a 'first return' **for the purpose of fixing the capital stock value** in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year." *Id.* at 395 (emphasis added). The key—as with *Greene*—was the circumstances of the multiple filings. But in BMW's case, unlike in *Haggar*, there is a clear harm to the government's interests by allowing a "superseding" return to be "the return" under § 6511(a). In the jurisdictional realm

5

this amounts to an expansion-by-implication of Congress' waiver of sovereign immunity, but such waiver by contrast to the election in *Haggar* is supposed to be strictly construed in the government's favor. *See* Dkt. 13 at 8 (citing cases).

It therefore makes little sense for the Court to import holdings on multiple-return situations from the substantive law of tax computation into the realm of jurisdiction, especially when there is already a near-century of precedent holding that statutes of limitations both for the government to assess tax and for taxpayers to claim refunds are tied to the first-filed return. For example, BMW says that *Kaltreider Const., Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962), is a "narrow" decision holding that "a taxpayer may not revive an already expired refund period by filing an amended return after the statutory deadline." Dkt. 22 at 16. As evidence of this BMW asserts that *Kaltreider* "partly relied on" a treatise section on the jurisdictional implications of filing "[a]mended returns," and then notes that the same treatise in a separate section described a pre-deadline "superseding return" as being "generally treated as the taxpayer's return that starts the limitation period." *Id.* (quoting 10 Mertens Federal Income Taxation, §§ 57.15 and 57.16). BMW therefore concludes that *Kaltreider*'s treatise citation "confirms" that it supports BMW's and not the United States' reading. *Id.* at 16-17.

But to whatever extent *Kaltreider*'s treatise citation is relevant, surely what is important is that it did **not** cite the "superseding returns" section. There is no reference anywhere in the decision to a pre- versus post-deadline distinction; the court simply held "that the date of the original return governs" because "the statute prescribes the period of limitation." 303 F.2d at 368. If *Kaltreider* had meant to codify the treatise distinction it could have done so, but it did not. Nor did the other cases cited by the United States suggest that the problem with an "amended" return for jurisdictional purposes was that it was filed after rather than before the

original deadline. *See Chaney v. United States*, 45 Fed. Cl. 309, 316-17 (1999) (plain meaning of § 6511(a) is that first return starts jurisdictional clock); *Mertens v. United States*, 12 Cl. Ct. 678, 679 (1987) (same).

As to assessment, BMW all but acknowledges that its argument would abrogate the longstanding Supreme Court precedent of *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *Nat'l Paper Prods. Co. v. Helvering*, 293 U.S. 183 (1934). BMW argues that the assessment and refund statutes "need not operate in lockstep." Dkt. 22 at 22. No, but absent something specific about a refund claim or an assessment that caused Congress to impose a special rule, that is what they do. *Compare* § 6501(a) ("the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed…") *with* § 6511(a) (refund claim "shall be filed by the taxpayer within 3 years from the time the return was filed…"). There are asymmetries owing to BMW's truism (*see* Dkt. 22 at 21-22) that a taxpayer and the Treasury Department are, of course, different entities in different situations. Government establishment of taxpayer fraud has no refund mirror-image; ability to seek a refund two years from payment instead of three years from filing has no assessment mirror-image. But these deviations are Congressionally specified, not judicial glosses on otherwise parallel statutory language.

There is nothing about filing a "superseding" return that justifies an interpretation whereby "3 years after the return was filed" means one thing in Section 6501 but "3 years from the time the return was filed" means something different in Section 6511. And *Zellerbach Paper* and *Nat'l Paper Prods. Co.* unequivocally hold that as to government assessments "the period of limitation [begins] to run on the filing of the first return, and … an amendment or supplement [do] not toll the statute." *Nat'l Paper Prods.*, 293 U.S. at 186. So, BMW's theory can only be reconciled with that longstanding Supreme Court precedent if filing a "superseding" return gets

7

the taxpayer extra time under § 6511(a) that the government does not get under § 6501(a). That is the opposite of the well-established canon of interpretation whereby statutes of limitation in tax matters are construed strictly in the government's favor both when they bar government action and when, as with refund suits, they waive sovereign immunity and allow the government to be sued. *See* Dkt. 13 at 8 (citing cases).

BMW's theory also gels poorly with the rule that a return filed during an extension period but before the extended due date is considered filed when received. *See Mitchell v. Comm'r*, 103 T.C. 520, 522 (1994); *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1346 (9th Cir. 1982); *Pace Oil Co. Inc. v. Comm'r*, 73 T.C. 249, 255 (1979). As the United States pointed out in its opening brief, the instant dispute only exists because BMW filed its returns on extension; the "deemed filing date" rules concerning non-extension returns render pre-deadline superseding returns in such circumstances jurisdictionally irrelevant. *See* Dkt. 13 at 2, 9 n.3. But on BMW's theory here, filing during an extension period prior to the extended due date would create jurisdictional limbo: neither the IRS nor the taxpayer would know if the assessment period or refund-claim period had started to run, because any "superseding" return would reset them. That is why BMW's plea that the administrative "concern" about amended returns "is wholly absent in the superseding return context" is misplaced. Dkt. 22 at 17. True, a holding that **any** subsequent return restarts the clock would have **worse** consequences than would a holding that **only** a subsequent return on BMW's facts restarts the clock. Still, the latter, like the former, upsets administrative certainty in addition to contravening precedent.

Finally, BMW's attempt to give weight to IRS guidance or forms that use the "superseding return" nomenclature, like the Internal Revenue Manual ("IRM"), is misguided. Dkt. 22 at 19-20. The IRM "does not have the force of law" and it "binds neither the IRS nor the

courts." *Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209, 221 (2015). The IRS, naturally, needs administrative procedures with which to deal with the circumstances in which a taxpayer files multiple returns. That is not a decision on how §§ 6511(a) and 7422(a) together limit viable tax refund suits to taxpayers who properly exhausted administrative remedies.[3] "Superseding return" is not a statutory concept; the term does not appear in the Tax Code. The IRS is free to accept filings that nothing in the Tax Code bars, but agency practice cannot expand the waiver of sovereign immunity that only Congress may enact and that must be strictly construed in the government's favor. *See Dixon v. United States*, 67 F.4th 1156, 1161 (Fed. Cir. 2023) (Section 6511(a)'s timing rules are jurisdictional).

## II.    The Due Date for BMW's Refund Claim Was Not Tolled for Three Years.

Section 7508A(a) gives the Secretary of the Treasury discretion in the case of any "taxpayer determined … to be affected by a federally declared disaster" to

> specify a period of up to 1 year that may be disregarded in determining … (1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor … (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and (3) the amount of any credit or refund.

The referenced "acts described," which appear in a statute about postponing tax deadlines for servicepeople in combat, include "[f]iling a claim for credit or refund of any tax." § 7508(a)(1)(E). Congress amended § 7508A in 2019 to include, in addition to the above discretionary postponement, a "[m]andatory 60-day extension" as follows:

> In the case of any qualified taxpayer, the period—(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to … relates, and (B) ending on the date which is 60 days after the latest incident date

---

[3] And indeed, the IRS has clarified that the timeliness of assessments and refund claims is an area where the filing of subsequent returns is **not** relevant. *See* IRS CCA 202026002, 2020 WL 3481726 (June 26, 2020). BMW does not explain why this "should not carry any authoritative weight," Dkt. 22 at 12 n.6, whereas the IRM provisions it cites should.

so specified, shall be disregarded in the same manner as a period specified under subsection (a).

§ 7508A(d) (version in effect between December 20, 2019, and November 15, 2021). In 2021 Congress amended then-subsection (d) to replace "the latest incident date so specified" with "the later of such earliest incident date described in subparagraph (A) or the date such declaration was issued" and said the amendment "shall apply to federally declared disasters declared after the date of enactment of this Act." Infrastructure Investment and Jobs Act § 80501, P.L. 117-58, 135 Stat 429, 1335 (November 15, 2021).[4]

BMW argues that under the 2019 version of the statute, as recently interpreted by the Court of Federal Claims in *Kwong v. United States*, 179 Fed. Cl. 382 (2025), "[t]he period of limitations to file BMW's 2019 Refund Claim was tolled from January 20, 2020 to July 13, 2023," that is, from the incident date specified in the declaration of emergency concerning COVID-19 until 60 days after the disaster officially ended. Dkt. 22 at 27. BMW therefore concludes that under § 7508A(d), a refund claim originally due in September 2023 was not in fact due until July 2026. *Id.* at 29.

BMW is wrong. Section 7508A provides for deadline postponements, not generalized tolling of any jurisdictional time period that overlaps the period of a federal disaster declaration—which is an issue the court in *Kwong* expressly declined to decide, 179 Fed. Cl. at 389. The issue in *Kwong* was whether the "[m]andatory 60-day extension" under the 2019 version of § 7508A(d) ended 60 days after January 20, 2020 (the "incident date" specified in the disaster declaration), as the government contended, or 60 days after May 11, 2023 (the date on

---

[4] This subsection has since been amended again to specify 120 instead of 60 days and is now § 7508A(e). Unless otherwise noted, all references are to the version of the statute in effect between December 2019 and November 2021.

which the disaster was later determined to have ended), as the court ultimately held. But here, the original due date for BMW's refund claim was September 15, 2023. *See* Dkt. 13 at 2-3. That date is outside the period of § 7508A's "[m]andatory 60-day extension" even under *Kwong*'s expansive reading of the statute.[5] BMW's deadline thus was not even postponed, much less tolled.

That the statute provides for postponement rather than tolling is in its title: "Authority to postpone certain deadlines by reason of Presidentially declared disaster or terroristic or military actions." The "deadlines" are those that fall during the specified postponement period, not **any** deadline related to a statute of limitations running for **any** portion of that period. The IRS relief declarations issued during the pandemic under § 7508A(a)'s discretionary authority were thus explicitly styled as postponements, *i.e.*, "Specified Federal tax filings and payments due on or after April 1, 2020, and before July 15, 2020, are postponed to July 15, 2020. Specified time-sensitive actions due to be performed on or after April 1, 2020, and before July 15, 2020, are also postponed to July 15, 2020." *Update to Notice 2020-18, Additional Relief for Taxpayers Affected by Ongoing Coronavirus Disease 2019 Pandemic*, 2020-18 I.R.B. 742 (2020).

That is in line with longstanding agency interpretation, prior to Congress's 2019 amendment, of the IRS's discretionary role under § 7508A(a). The regulations interpreting the original statute specified:

---

[5] The United States has appealed *Kwong* to the Federal Circuit (No. 26-1843), but this Court need not decide whether *Kwong*'s reading of the statute was correct because it is not relevant here. Since BMW's refund claim was less than 60 days late per the United States' argument in Section I, *infra*, but the deadline for that claim was outside the extension period even under *Kwong*, BMW's position that its refund claim was timely turns entirely on its erroneous argument that § 7508A provides for tolling rather than postponement. This Court should reject that argument because § 7508A only provides for postponement of deadlines that fall *within* the extension period, and BMW's deadline did not, even on *Kwong*'s expansive reading.

11

> If any tax-related deadline is postponed under section 7508A and this section, the IRS will publish a revenue ruling, revenue procedure, notice, announcement, news release, or other guidance… describing the acts postponed, the number of days disregarded with respect to each act, the time period to which the postponement applies, and the location of the covered disaster area.

65 FR 78409-01, at *78411 (December 15, 2000). In 2009 the regulation was amended (*inter alia*) to confirm that "[w]hen an affected taxpayer is required to perform a tax-related act by **a due date that falls within the postponement period**, the affected taxpayer is eligible for postponement of time to perform the act until the last day of the period," and although the regulation has since been further amended that language remains. 26 C.F.R. § 301.7508A-1(b)(2) (emphasis added). Similarly, a 2016 Internal Revenue Manual (I.R.M.) guideline discussing interest suspension says it applies to "returns having an original return due date that falls within the disaster period." I.R.M. 25.15.9.6.2, 2007 WL 9848429, at *3; *see also* I.R.M. 5.5.8.20(1), 2007 WL 9771978, at *1 (May 2019 entry specifying 7508A(a)'s authority limited to where "the original or extended due date falls within the disaster relief period"); I.R.M. 4.23.9.9, 2007 WL 10142258, at * 1 (2008 entry referring to "deadline extensions"). Duly, IRS discretionary relief for federally declared disasters prior to COVID-19 involved specific deadline postponements, not generalized tolling of any overlapping limitations period. *See, e.g.* Notice 2017-20, 2017 WL 4466851 (Hurricane Harvey and Hurricane Irma); Notice 2008-107, 2008 WL 4253626 (Hurricane Ike); Notice 2008-100, 2008 WL 4060021 (Hurricane Gustav).

When Congress amended § 7508A in 2019 to include a mandatory relief period it directed that the mandatory relief was to work "in the same manner as … under subsection (a)." § 7508A(d). Congress thus explicitly attached § 7508A(d) to the existing framework and practice of discretionary IRS relief. It is furthermore a well-recognized canon of statutory construction that "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative

12

construction," the Court "generally presumes the new provision should be understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 725 (2025) (quotation marks and citations omitted). Here Congress legislated against a backdrop of the IRS implementing § 7508A by postponing deadlines falling during the periods specified in the statute. Congress, then, having directed the mandatory-relief subsection to operate "in the same manner" as the discretionary-relief subsection, should not be presumed to have simultaneously made the mandatory-relief subsection require tolling rather than postponement. Section 7508A must be understood as a deadline-postponement rule affecting due dates falling within specified periods triggered by disaster declarations, not a tolling provision for any merely overlapping limitations period. *Accord Abdo v. Comm'r*, 162 T.C. 148, 165-6 (2024).

BMW argues that § 7508 (not § 7508A) has been understood as a tolling statute. Dkt. 22 at 28-29. But the cases BMW cites here are not holdings about § 7508; they either hold it inapplicable on the facts or merely discuss it in construing the meanings of other statutes. *See Munoz v. Comm'r*, T.C. Memo 2000-18, 2000 WL 31847, at *2 (inapplicable); *Stone v. Comm'r*, 73 T.C. 617, 619 (1980) (different statute); *Hampton v. United States*, 513 F.2d 1234, 1237-8 (Ct. Cl. 1975) (different statutes). None of these cases hold that § 7508 tolls any statutory period based on combat-zone service irrespective of when the relevant deadline falls.[6] Also, BMW's cases are the same three cited by the Tax Court in *Abdo*, 162 T.C. at 166 (2024), the only case to construe § 7508A prior to *Kwong*. Tellingly, though, despite *Abdo*'s description of § 7508A(d) as

---

[6] And in *Hampton*, the only one of these cases to construe § 7508 or consider its application to a taxpayer at any length, the court highlighted the fact that the relevant deadline occurred during the combat deployment. Similarly, while there is agency guidance and one other case interpreting § 7508 as requiring a type of tolling, *see* Rev. Rul. 76-425, 1976-2 C.B. 447 (1976); *Wood v. Comm'r*, T.C. Memo 2021-103, 2021 WL 3662399, at *9, those too are directed to the situation where a due date falls during the combat period and are thus no help to BMW.

a "near mirror image of Section 7508(a)," *id.*, there is no suggestion in *Abdo* that § 7508A(d) tolls all statutes of limitation overlapping the specified period rather than postponing deadlines falling within it.

Congress furthermore knows how to write a statutory tolling provision: by specifying, for example, that "[t]he period of limitations … shall be tolled" during the relevant process, as with 28 U.S.C. § 1367(d)'s rule concerning what happens to state causes of action in federal court via supplemental jurisdiction when the federal claim is dismissed. *Artis v. D.C.*, 583 U.S. 71, 74, 80-82 (2018) (highlighting Congress's choice of language in construing 28 U.S.C. § 1367(d)); *see also* § 6511(h) (specifying that the "running" of the statute of limitations period "shall be suspended during any period … that such individual is financially disabled"). Other statutory exceptions to time bars, by contrast, work by describing a set postponement period: for example, a litigant who failed to bring a case whose deadline fell during a disability period gets a set amount of time to act from when the disability period ends. *Artis*, 583 U.S. at 82 (citing 28 U.S.C. § 2415).

Here, we would expect explicit tolling language in § 7508A had Congress so intended. The challenge to orderly tax administration and protection of the public fisc would be exponentially more severe if a federal disaster declaration shifted deadlines in any statute of limitations merely overlapping the extension period and not just deadlines falling within that period. *Cf. Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 542 (1979) (Tax Code must be interpreted under presumption that its "primary goal … is the equitable collection of revenue" and "to protect the public fisc."); *United States v. Brockamp*, 519 U.S. 347, 352-3 (1997) (declining to read equitable tolling into then-section 6511 due in part to "[t]he nature of the

14

underlying subject matter—tax collection" and the related "nature and potential magnitude of the administrative problem").

In the tax system BMW's reading implies a particularly dramatic result that would not be limited to, e.g., the timeliness of refund claims or the running of limitations periods. The § 7508(a)(1) "acts" cross-referenced in § 7508A(a)(1) include "[f]iling any return of income, estate, gift, employment, or excise tax" and "[p]ayment of any income, estate, gift, employment, or excise tax or any installment thereof or of any other liability to the United States in respect thereof." § 7508(a)(1)(A)-(B). Suppose a blizzard causes a disaster declaration for the state of Montana that lasts for one week in January 2027, and the IRS does not make any announcement under § 7508A(a). Do all Montana taxpayers get an extra 67 days to file their 2026 tax returns, even though the filing deadline does not even occur until April 2027, more than 67 days after the disaster declaration? What about looking forward to unexpired deadlines in 2027 or, indeed, 2037 or any other year? There is no limiting principle once the statute is untethered from its proper interpretation: it applies solely to postpone deadlines that fall within the specified period triggered by the disaster declaration.

Worse, BMW's reading would have severe taxpayer-**punitive** implications, because § 7508(a)(1) includes government acts: assessing, collecting, noticing deficiency, bringing erroneous refund suits. This was not necessarily an issue under the pre-2019 discretionary regime, where the IRS could choose what "acts" to disregard vis-à-vis afflicted taxpayers. But under § 7508A(d), in the above scenario, does the government have an extra 67 days, potentially years after the disaster, to go after Montana taxpayers for unpaid taxes (but no such extra time for taxpayers outside the disaster area)? It strains credulity that Congress enacted that result via

15

an amendment obviously directed to taxpayer relief.[7] *Cf. Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 632 (2012) (rejecting interpretation that could turn statute's intended beneficiaries into its potential targets); *King v. Burwell*, 576 U.S. 473, 489-92 (2015) (rejecting interpretation that would cause opposite result of statutory purpose).

Congress enacted § 7508A(d) and instructed it would operate "in the same manner" as § 7508A(a) when the IRS had already, and correctly, construed the statute to be limited to due dates falling within the specified period. The Court should hold that because BMW's relevant deadline fell outside the COVID-19 disaster-declaration period, BMW does not get the benefit of whatever time extension § 7508A(d) mandates.

---

[7] Admittedly, there is an arguably perverse pro-government element to any type of mandatory § 7508A(d) extension, unless § 7508A(a)'s reference to "any of the acts described in paragraph (1) of section 7508(a)" is read against its plain language such that it actually means "any of the [taxpayer] acts …" But it at least makes some sense that a taxpayer-relief provision would postpone government deadlines falling during the disaster period too. If a deadline for the government to, say, notice a deficiency fell while a taxpayer was experiencing a natural disaster, the government would face the unattractive choice of either letting the statute of limitations lapse or adding to the citizen's distress. It seems wholly incongruous, however, that Congress would write a relief statute that could lessen a taxpayer's repose potentially years after the disaster.

16

Respectfully submitted,

Dated: May 26, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Assistant Director

*/s/ Alex Schulman*
ALEX SCHULMAN
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Telephone: (202) 514-0456
Alexander.Schulman@usdoj.gov

*Attorneys for Defendant*

17