# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 25-1984 T
(Judge Richard A. Hertling)


BMW (US) HOLDING CORPORATION AND SUBSIDIARIES

Plaintiff,

v.

THE UNITED STATES,

Defendant,

———————————————————————————————————

## PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

———————————————————————————————————


JUAN F. VASQUEZ JR.
PETER LOWY
TANIA P. ALBUJA
Nelson Mullins Riley & Scarborough LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Tel: (346) 646-5506
Fax: (346) 241-3758

BRANDON BIGELOW
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Tel: (617) 217-4660
Fax: (617) 217-4710

*Counsel of Record to Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

SUMMARY OF THE ARGUMENT.................................................................................... 1

ARGUMENT......................................................................................................................... 4

    I.    *Greene* rejects the government's categorical first-filed-return rule. ........................ 4

    II.   Repackaging the government's dual-clock theory as a *Greene* requirement does not cure it. ...................................................................................................................6

    III.  *Haggar* confirms that a timely second filing during the open filing period replaces the earlier return. .................................................................................................... 7

    IV.  The government's amended return and assessment cases do not address BMW's timely superseding return........................................................................................ 10

      A.   The amended return cases are inapposite. .......................................................... 11

      B.   The 26 U.S.C. § 6501 cases are inapposite........................................................ 12

    V.   Independently, BMW's refund claim is timely under 26 U.S.C. § 7508A's mandatory disaster-relief period. .................................................................................. 16

      A.   Counting the disaster period days conflicts with 26 U.S.C. § 7508A's plain language and express directive to "disregard" them.................................................. 16

      B.   26 U.S.C § 7508 precedent supports that "disregard" means just that— disregard—and thus operates by excluding time from the count. ............................ 18

      C.   Neither the Title nor Agency Guidance Overrides 26 U.S.C. § 7508A(d)'s Mandate. ..............................................................................................................21

      D.   26 U.S.C. 7508A prevents erosion of Congress's prescribed timeframes—a result the Government's postponement theory would produce..................................23

# TABLE OF AUTHORITIES

**Cases**

*Asgrow Seed Co. v. Winterboer*, 513 U.S. 179 (1995) ----------------------------------------- 18

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519 (1947) -------------------- 22

*Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999) ---------------------------------5, 7, 9

*Haggar Co. v. Helvering*, 308 U.S. 389 (1940) -------------------------------------------------8

*Hampton v. United States*, 513 F.2d 1234 (Ct. Cl. 1975) ------------------------------------- 19

*Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962) -------------- 13

*Kwong v. United States*, 179 Fed. Cl. 382 (2025) ---------------------------------------------- 25

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004). ------------------------------------------------- 19, 23

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ------------------------------------- 24

*Nat'l Paper Prod. v. Helvering*, 293 U.S. 183 (1934)--------------------------------------13, 14

*Sebelius v. Cloer*, 569 U.S. 369 (2013) ------------------------------------------------------- 18

*Wood v Commissioner*, T.C. Memo. 2021-103-------------------------------------------------- 20

*Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) ----------------------------------- 13

**Statutes**

26 U.S.C. § 6081 ----------------------------------------------------------------------------------------6

26 U.S.C. § 6501 ----------------------------------------------------------------------------------13, 14

26 U.S.C. § 6511(a)------------------------------------------------5, 6, 7, 9, 10, 11, 13, 15, 16, 25

26 U.S.C. § 7508 ------------------------------------------------------------------------------ 17, 19, 20

26 U.S.C. § 7508A------------------------------------------------------------17, 18, 19, 21, 23, 25

5 U.S.C. § 706 -------------------------------------------------------------------------------- 24

**Treatises**

10 Mertens Federal Income Taxation §§ 57.15 and 57.16----------------------------------- 13

**Regulations**

26 C.F.R. § 301.7508A-1 ------------------------------------------------------------------23, 24

**Administrative Guidance**

IRS Topic No. 308 ------------------------------------------------------------------------------8

Rev. Rul. 76-425, 1976-2 C.B. 447------------------------------------------------------------ 20

**Internal Revenue Manual**

I.R.M. 21.7.9.3.4 (03-07-2024) --------------------------------------------------------------9

## SUMMARY OF THE ARGUMENT

The government's Motion to Dismiss contends this Court lacks jurisdiction because BMW's refund claim was filed one month late, if measured from the date of BMW's first-filed tax return for tax year 2019, rather than from its superseding return. In its reply, the government retreats from the dual-clock theory it advanced in its motion to support that result. The government now concedes—correctly—that § 6511(a) does not create multiple, item-specific limitations periods. That concession eliminates a significant premise of its motion and reduces the case to a single, dispositive question: does a superseding return filed before the extended return due date constitute "the return" for purposes of § 6511(a)?

On that question, the government doubles down on a central—and flawed— premise: a categorical "first-filed return" rule that the Federal Circuit has already rejected. Its effort to impose such a rule fails for at least four independent reasons.

- First, the rule conflicts with Federal Circuit precedent in *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999). There, the government advanced the same premise it advances here—that "the return" in § 6511(a) invariably refers to the original, first filing, and not a later return. The Federal Circuit rejected that argument and instead focused on which return was operative for the year. The reply attempts, unconvincingly, to sidestep the Federal Circuit's interpretation.

- Second, the rule disregards Supreme Court precedent in *Haggar Co. v. Helvering*, 308 U.S. 389 (1940), which answers the question the government avoids: when more than one return is filed for the same year within the still-open filing period, which filing is "the return" for that year? *Haggar* concluded a timely second filing made within that period replaces the earlier filing and becomes "the return for the year." The reply contends that the superseding primary principle in *Haggar,* while applicable when applying certain Internal Revenue Code provisions, does not extend to § 6511(a). The reply, however, fails to cite any authority that so limits *Haggar*, and as such, the Court should follow *Haggar*.

1

- Third, the rule is not supported by the § 6511(a) cases the reply cites—including *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962).  These cases involve refund claims filed on amended returns after the tax return filing deadline and ask whether such filings can restart § 6511(a)'s three-year limitations period. The cases hold that, in that setting, the amended return is itself the refund claim—not "the return" under § 6511(a). They do not address the antecedent question presented here: which of multiple timely returns filed before the return filing due date is "the return" for purposes of § 6511(a)?

- Fourth, the § 6501 cases the government cites—including *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *Nat'l Paper Prod. v. Helvering*, 293 U.S. 183 (1934)—do not justify adopting a "first-filed return" rule. The Federal Circuit in *Greene* squarely held that those cases do not bear on which of multiple returns trigger the limitations period under § 6511(a) because they address a different statute and a different question. The reply offers no basis to revisit that holding.

  In any event, those cases are distinguishable. *National Paper* involved a unique retroactive law requiring a supplemental return after the original due date and which was limited to new matters not covered in the original return. On those facts, the Court found the supplemental return was not the operative return for measuring the period to assess items reported on the original return. *Zellerbach* did not involve a second return filed before the due date at all and therefore does not implicate which of multiple filings is the operative return.

At bottom, none of the government's authorities answers the question presented here: when a taxpayer files a superseding return before the due date, does such superseding return constitute "the return" that triggers § 6511(a)? None of the cases relied upon by the government involves a timely filed superseding return.

The government attempts to salvage its position by collapsing the concept of a superseding return into the concept of a post-return-filing-deadline amended return used as a refund claim. The position is flawed.  Superseding returns and amended return refund claims differ in function and timing. A return filed before the due date of the taxpayer's tax return, including extensions, remains part of the return-filing process and may become the

operative return for the year; a filing made after that date does not and instead functions only as an amendment or refund claim.

BMW's October 14, 2020 filing was the former, not the latter. It therefore makes no sense to treat BMW's timely superseding return as the same thing as a post-return-filing-deadline amended return serving as a refund claim. Superseding returns and amended returns arise at different times, serve different functions, and are governed by different rules. They are even reported to the IRS on different tax forms, as BMW's superseding return was filed on October 14, 2020 and reported on Form 1120 (entitled "U.S. Corporation Income Tax Return"), and its amended return was filed on October 13, 2023 and reported using Form 1120-X (entitled "Amended U.S. Corporation Income Tax Return"). Treating them as interchangeable does not resolve the question presented by § 6511(a); it obscures it.

Once that distinction between superseding and amended returns is recognized, the analysis is straightforward. Where, as here, the taxpayer filed a timely superseding return within the still-open filing period, that filing is "the return" for the taxable year. The limitations period runs from that return, and BMW's claim is timely.

BMW's claim is also timely for an entirely separate and alternative reason. Namely, § 7508A independently requires that the disaster period "shall be disregarded" in computing the limitations period, as this Court recently confirmed in *Kwong v. United States*, 179 Fed. Cl. 382 (2025) (on appeal). The government would have this Court count those days anyway, despite the statutory mandate to "disregard" them. That reading contradicts the ordinary meaning of the statute's text and undermines Congress's purpose—

to ensure that a once-in-a-generation pandemic that shut down large segments of the economy did not diminish the time taxpayers had to investigate and pursue their rights. Properly applied, § 7508A preserves the full limitations period and confirms the timeliness of BMW's claim.

## ARGUMENT

### I.     *Greene* rejects the government's categorical first-filed-return rule.

*Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999) resolves the same statutory question presented here: what does "the return" in 26 U.S.C. § 6511(a) ("§ 6511" or "Section 6511") mean when more than one timely return exists for the same taxable year? The competing candidates in *Greene* were the taxpayer's first-filed original return, filed within the normal return-filing period, and a second return filed several years later, after subsequent events triggered a return-filing obligation under the special rules governing life insurance companies. The government argued there—as it argues here—that "the return" in § 6511(a) means the original, first-filed return for the year, not a later filing. *Greene*, 191 F.3d at 1343. The Federal Circuit rejected that categorical first-filed-return rule. It did not treat the filing sequence as dispositive. It asked which filing was the legally operative return for the taxable year. On the facts before it, the court held that the second-filed return—not the first-filed return—was "the return" for purposes of § 6511(a).

To avoid the *Greene* Court's rejection of the first-filed return rule, the government tries to recast *Greene* as turning "wholly" on post-tax-year events. Dkt. 26 at 2-3. But that characterization confuses the facts that made the later return operative with the Federal

4

Circuit's interpretation that "the return" means the operative return and not necessarily the first-filed return. The Court in *Greene* looked to later events to evaluate which return was the operative return because, before those events occurred, the taxpayer had no obligation—or authorization—to file the return that later became operative for the year. Those facts explained why the second return displaced the first as "the return" under § 6511(a). They did not create a rule limiting *Greene*'s interpretation to one where the first-filed return is not necessarily "the return" only in the case of life-insurance-company cases or post-year-event cases. The import of *Greene* is broader and simpler: § 6511(a) does not mechanically attach to the first return filed. Rather, it attaches to the return filed before the tax return deadline (with applicable extensions) that the Code recognizes as the operative return for the taxable year. Applying that rule, the Federal Circuit identified the later filed return as "the return" and used that return as the measuring point for § 6511(a)'s limitations period.[1]

If § 6511(a) contained a first-filed-return rule subject only to a narrow post-year-events exception, the Federal Circuit would have said so. It did not. Instead, it rejected the very premise the government advances here: that the first return filed for a taxable year

---

[1] The reply argues, based on a footnote in *Greene*, that there was no claim that the second-filed return was dilatory, that the timeliness of a return had no bearing on the court's decision. Dkt. 26, fn.2 ("[r]elegation of this issue to a footnote shows how little it figured in the decision."). That reading is backwards. There would be no reason for the court to flag the issue and clarify the government did not raise it if the court had not viewed the issue as potentially relevant to whether the later return could function as "the return."  BMW's case presents that issue far more cleanly than *Greene*. There is no suggestion here of a "dilatory" filing. BMW's later return was filed before the extended due date authorized by 26 U.S.C. § 6081 and was processed by the IRS as a superseding return. *See* Dkt. 13-2.

enjoys categorical priority under § 6511(a). That rejection undercuts the government's central premise.

## II. Repackaging the government's dual-clock theory as a *Greene* requirement does not cure it.

The government has flip-flopped in its position—it is plainly making a different argument in its reply than it made in its motion.

In its motion, the government argued that BMW's refund claim was untimely because the refund position appeared on BMW's first-filed return and did not change on the superseding return. That argument necessarily depends on an item-by-item limitations theory: positions carried forward from the first return are tied to one limitations period, while positions first appearing on a later return may be tied to another. Section 6511(a) contains no such rule and/or scheme, which the government now acknowledges. The statute provides one limitations period, measured from "the time the return was filed." 26 U.S.C. § 6511(a). Once the Court identifies "the return," the statute supplies a single clock for the taxable year—not separate clocks for separate items, deductions, or computations.

The reply now changes its theory on why it matters when the items on which the refund claim is based were first reported. The government now says the comparison between BMW's returns matters because *Greene* permits a later return to control only when the refund claim arises from post-tax-year events. Dkt. 26 at 4. The government's position would create uncertainty about which filing is "the return" and, in turn, when the statute of limitations begins. It would require an item-by-item analysis to determine whether any entry reflects a post-year event—an inherently unclear standard. Where that standard is

debatable, the resulting uncertainty only compounds. More importantly, it is not the rule *Greene* announced. *Greene*'s post-tax-year events carried weight because they explained why the later return was the operative return in that case. *Greene*, 191 F.3d at 1343. Thus, the *Greene* court then applied to its interpretation of § 6511(a) that "the return" is not necessarily the first-filed return but is instead the operative return for the tax year.

That distinction is dispositive here. BMW's October 14, 2020 Form 1120 return was filed before the extended due date, within the still-open filing period, and was processed by the IRS as a superseding return. Discussed below, when the correct question is asked— which of multiple returns filed within the open-period for filing an original return is the operative return for the year—the superseding return is the answer.

**III.    *Haggar* confirms that a timely second filing during the open filing period replaces the earlier return.**

The reply attempts to distinguish *Haggar Co. v. Helvering*, 308 U.S. 389 (1940) on the ground that it involved a substantive tax provision rather than a jurisdictional limitation and that recognizing the later return there did not "harm" the government. Dkt. 26 at.2-4. Neither argument undermines *Haggar*'s holding or its application to this case.

*Haggar* squarely announced: when tax law asks what counts as the return for a year, a second filing made while the filing period remains open may be treated as that return. In *Haggar*, the Court rejected a literal first-paper-filed rule and held that the statutory phrase "first return" included a timely second return filed within the filing period, explaining that such a filing is "commonly known as the return for the year" and must be treated as such. *Haggar*, 308 U.S. at 395-96.

That is the relevant lesson here. Absent contrary statutory text, tax law treats multiple timely filings made before the filing window closes as part of a single return-filing process, within which the later timely filing may displace the earlier one as the return for the year. The same rule is reflected in IRS administrative guidance. IRS Topic No. 308 explains that a second return filed before the due date "will replace or supersede the original return." The Internal Revenue Manual ("I.R.M") likewise provides that a second return filed on or before the due date, including extensions, is a superseding return, and that "[t]he second return is deemed to replace or supersede the original return." I.R.M. 21.7.9.3.4 (03-07-2024). BMW's opposition also cited revenue rulings applying the same understanding in analogous contexts, concluding that a taxpayer's timely superseding return is "the return" at least for the purposes addressed in those rulings.

The government's own filings acknowledge much of that background. The reply states that there "may be areas of tax law" in which the distinction between a superseding and an amended return is legally relevant, and the motion and reply both recognize that the IRS uses "superseding return" nomenclature to distinguish such filings from later amended returns. The government's position, then, is not that tax law never treats a timely superseding return as replacing an earlier filing, or that, conceptually, superseding returns are no different from amended returns. Its position is only that § 6511(a) creates a special jurisdictional exception to that ordinary rule. Dkt. 26 at 1-2. But the government cites no case holding that a timely superseding return filed before the due date must be ignored for purposes of § 6511(a).

8

Section 6511(a) contains no text requiring that special carveout. It runs from "the return," singular—not from the first filing, not from the first appearance of a particular item, and not from the earliest piece of paper associated with the year. 26 U.S.C. § 6511(a). And *Greene* already rejected the government's broader position that "the return" in § 6511(a) invariably means the first-filed return for the year. *Greene*, 191 F.3d at 1343-44. Once that categorical first-filed return concept is properly discarded, *Haggar* supplies the governing background principle: a timely second filing made during the open filing period should be treated as the return for the year.

That principle fits BMW's facts and circumstances exactly. Under 26 U.S.C. §§ 6072 and 6081, BMW's 2019 Form 1120 return was due on October 15, 2020, and BMW filed its Form 1120 superseding return on October 14, 2020, while the statutory filing period remained open. Dkt. 25 at 13. BMW's opposition explains that the superseding return was filed on Form 1120, not on Form 1120-X, and that the IRS accepted and processed that filing as a "Superseded Return". Dkt. 22 at 5-6. A filing made within that open window remains part of the return-filing process itself; it is the operative timely return for the year, not a later amendment offered after the return has become fixed.

Nor does the government's "harm" argument justify disregarding BMW's timely filed Form 1120 superseding return. The reply contends that treating BMW's October 14, 2020 Form 1120 superseding return as "the return" under § 6511 would impermissibly expand Congress's waiver of sovereign immunity. Dkt. 26 at 5-6. Such an argument assumes the very point in dispute. Section 6511(a) measures timeliness from "the return," and the statutory question is which filing qualifies as that return when more than one timely

9

filing exists for the same year. If, as *Greene* holds, "the return" in § 6511(a) is not invariably the original first Form 1120 tax return filing, and if, as *Haggar* confirms, a timely second Form 1120 filing made during the open filing period may be treated as the return for the year, then measuring BMW's refund claim period from its timely filed Form 1120 superseding tax return applies the statute as written and does not enlarge it.

By contrast, the government's assertion that BMW is seeking to expand the government's sovereign immunity waiver by implication is circular and would create a distortion the statute's text does not support. Under the government's theory, a taxpayer who files only once on the extended due date receives the full three years Congress provided to identify and present a refund claim, while a taxpayer who files earlier and then perfects its return before the still-open deadline receives less time (at least for the changed items on the second-filed return) solely because it complied sooner. Nothing in § 6511(a) suggests that Congress intended to penalize prompt filing in that way. The better reading is the one reflected in *Haggar*: during the open filing period, a timely second filing may displace the earlier one as the return for the year. As such, because BMW's 2019 Form 1120 return was due October 15, 2020, and BMW filed its Form 1120 superseding return on October 14, 2020, that filing remained within the return-filing process itself and is properly treated as "the return" for purposes of § 6511(a).

## IV.    The government's amended return and assessment cases do not address BMW's timely superseding return.

For its cases to have relevance, the government must convince the Court to disregard *Greene* and collapse two distinct concepts: Form 1120 superseding returns filed during the

open filing period and refund claims made on post-return-filing deadline Form 1120-X amended returns.

### A. The amended return cases are inapposite.

The § 6511(a) cases the government cites involve post-deadline amended returns used as refund claims. Those cases, therefore, do not answer the controlling question here: whether BMW's timely Form 1120 superseding return, filed while the return-filing period remained open, is "the return" for purposes of § 6511(a).

The government tries to avoid that problem by asserting that "there is no difference between a 'superseding' and an 'amended' return" for jurisdictional purposes. Dkt. 26 at 1, 6-7. But the government cites no statute or decision adopting that rule, and the distinction is not semantic. Timing changes the legal character of the filing. A superseding return filed before the due date, including extensions, remains part of the return-filing process and may replace the earlier return for that year. An amended return filing made after the due date serves a different function—typically as an amendment to a previously filed return or as an administrative refund claim. The distinction between a superseding and amended return is clearly denoted by the IRS by the use of different tax forms. BMW's superseding return was filed on October 14, 2020 and reported on Form 1120 (entitled "U.S. Corporation Income Tax Return"), and its amended return was filed on October 13, 2023 and reported using Form 1120-X (entitled "Amended U.S. Corporation Income Tax Return").[2] Dkt. 25

---

[2] The government's reply is noticeably silent about the importance of the IRS's own system reflecting and accepting BMW's October 14, 2020 Form 1120, U.S. Corporation Income Tax Return, filing with its check box marked as a "Superseding Return."

11

¶¶ 13, 14. The superseding and amended return distinction is reflected in the IRS guidance and authorities BMW cited in the prior section: a superseding return is filed within the filing period and replaces the first filed return, while a post-deadline amended return does not.

The government's § 6511(a) cases fall on the amended-return side of that line. *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir. 1962) and the government's other § 6511(a) cases address post-return-filing-deadline submissions that operated as refund claims and therefore could not restart § 6511(a)'s three-year period to file a refund claim; the submissions themselves were the refund claims. Those cases do not decide which filing is "the return" when the taxpayer files a complete second return before the return-filing deadline expires. BMW's October 14, 2020 Form 1120 was filed before the extended due date, while the statutory filing period remained open, and was processed by the IRS as a superseding return. Treating that filing as "the return" does not restart § 6511(a) with a later Form 1120-X refund claim. Instead, it identifies the operative return for the year from which § 6511(a)'s single limitations period runs.[3]

## B. The 26 U.S.C. § 6501 cases are inapposite.

The government also argues that "given *Greene*'s inapplicability," the Court should rely on the 26 U.S.C. § 6501 cases cited in the reply— *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *Nat'l Paper Prod. v. Helvering*, 293 U.S. 183 (1934). Dkt. 26 at

---

[3] The reply claims *Kaltreider*'s citation of the amended return portion of a treatise rather than an adjacent portion on superseding returns confirms that *Kaltreider* spoke to amended returns, not superseding returns. Dkt. 26 at 6 (citing 10 Mertens Federal Income Taxation §§ 57.15 and 57.16). We agree. *Kaltreider* has no relevance to cases involving superseding returns.

4-6. But *Greene* itself rejected that move. *Greene* explained that *Zellerbach* addressed "only the statute of limitations governing assessments by the government, not refund requests by a taxpayer." *Greene*, 191 F.3d at 1344. *Greene* therefore declined to apply assessment limitations cases to the refund claim limitations period. *National Paper* likewise arose in the assessment context. *Greene*'s refusal to import § 6501 assessment cases into § 6511 is dispositive that *Zellerbach* and *National Paper* do not apply.

The § 6501 cases are inapposite for an additional reason: they did not address which of multiple complete returns filed during the open period for filing the original return becomes the operative return for the year. *Zellerbach*, in fact, did not involve a second return at all. The question there was whether the taxpayer's first filing was a "nullity" and therefore failed to start the assessment period.

In *National Paper*, the taxpayer filed its original return under the Revenue Act of 1924. *National Paper Products Co.*, 293 U.S. at 184-85. Congress later enacted the Revenue Act of 1926, retroactive to January 1, 1925, which increased the applicable tax rate for part of the taxpayer's fiscal year. The IRS then required an additional filing to report the tax produced by that retroactive change. For *National Paper*, that later filing "changed the tax rate and nothing else." *Id*. at 184. It "did not repeat what had been stated in the return" filed during the original filing period; "[a]ll it did was to refer to the net income as previously reported, and then apply the new rate." *Id*. at 185.

The government argued that the later filing required to implement the retroactive rate change reopened the entire return to a fresh three-year assessment period. On those specific facts, the Court held that it did not. *Id*. at 186. If the rule had been otherwise, the

13

IRS could unilaterally extend its assessment statute by requiring taxpayers to make a second filing for a tax year. *National Paper*'s holding addressed which filing controlled for assessment purposes in a retroactive statute setting where the later document merely computed additional tax created after the original return had been filed. It did not construe "the return" in § 6511(a). And it did not address the materially different question here: whether a complete second return filed before the return statutory deadline supersedes an earlier filing for the same tax year.

In addition to the government's overbroad reading of the holdings in *Zellerbach* and *National Paper*, the government's relabeling of *Zellerbach* and *National Paper* as "supplemental return" cases does not change what those cases decided. Dkt. 26 at 7. They involved assessment limitations, retroactive statutes, and later filings made in procedural settings unlike this one. They did not involve a timely superseding return filed before the return deadline. *Zellerbach*, in fact, did not involve a second filing at all. Nor did they hold that a complete second return filed during the open filing period must be treated as a mere amended return or refund claim for § 6511(a) purposes. Because the government's cases address different filings, different statutes, and different limitations periods, they do not answer the question presented here.

The point is straightforward. A post-deadline amended return used as a refund claim cannot restart the § 6511(a) statute of limitations. A timely superseding return filed before the return deadline is different: it replaces the earlier filing and becomes the operative return for the year. BMW's October 14, 2020 Form 1120 was timely filed within the extended filing period and processed by the IRS as a superseding return. It was therefore

"the return" from which § 6511(a)'s three-year period runs. The government needs a rule that disregards that timely superseding return. The government cites no authority that supplies such rule.

**II.    The text and structure of 26 U.S.C. § 6511(a) confirm that BMW's superseding return is the proper trigger.**

The best reading of § 6511(a) remains the simplest one. Congress gave taxpayers three years from "the time the return was filed" to submit refund claims. 26 U.S.C. § 6511(a). Where a taxpayer files a timely Form 1120 superseding return before the due date, including extensions, that filing remains part of the return-filing process and becomes the operative return for the taxable year. It is the return the IRS processed as superseding. It is the return tax administration commonly recognizes as replacing the earlier filing. And it is the filing that gives effect to Congress's choice to provide a full three-year window keyed to the operative return for the year. BMW's October 14, 2020 Form 1120 superseding return meets that description. BMW's October 13, 2023 Form 1120-X amended return refund claim was therefore timely.

That reading also fits with the structure of § 6511. As BMW's opposition notes, § 6511(b)'s look-back rule presupposes that timely claims may be measured from the extended due date and still remain within the statutory framework Congress chose. Recognizing a timely superseding return as "the return" therefore does not create stale claims or undermine orderly administration; at most, it measures the three-year period from a filing made within the same statutorily authorized filing period. By contrast, the government's rule would truncate the statute for taxpayers who comply early and later

15

perfect their return within the still-open filing period. That result is hard to reconcile with the text Congress wrote and even harder to justify as a matter of statutory design.

## V.     Independently, BMW's refund claim is timely under 26 U.S.C. § 7508A's mandatory disaster-relief period.

### A.     Counting the disaster period days conflicts with 26 U.S.C. § 7508A's plain language and express directive to "disregard" them.

In 26 U.S.C. § 7508A, Congress directed that, for qualified taxpayers, the applicable disaster "period . . . shall be disregarded" in computing the time allowed to perform covered acts that the section encompasses. A refund claim is expressly one of those covered acts because § 7508A incorporates the acts listed in 26 U.S.C. § 7508(a)(1), including "[f]iling a claim for credit or refund of any tax." 26 U.S.C. §§ 7508A (a)(1), 7508(a)(1)(E).

The government treats § 7508A(d) as setting a fixed, one-size-fits-all deadline. Dkt. 26 at 10-12. The clock keeps running during the disaster, and the taxpayer receives only a 60-day period at the end. This is postponement—the deadline moves, but the clock never stops. For example, A taxpayer has 90 days to file a Tax Court petition. Ten days in, a disaster begins and lasts six months. Under the government's approach, the clock continues running and expires during the disaster. When the disaster ends, the taxpayer gets 60 days to file. The 60-day period replaces the 80 days that remained.

BMW reads § 7508A(d) as stopping the clock during the disaster and restarting it afterward. The disaster days are not counted, and the taxpayer keeps whatever time remains. This is tolling—the clock pauses, then resumes. In the above example, the clock pauses after day 10; when the § 7508A(d) relief period ends, the taxpayer still has the full 80 days remaining to file.

16

The government's fixed, one-size-fits-all deadline rewrites the statute and defies Congressional intent. Section 7508A(d) does not say that disaster time continues to count against limitations periods that were already running when the disaster period began. Congress chose broader time-computation language: the disaster period itself "shall be disregarded" in determining timeliness. 26 U.S.C. § 7508A(d) (2019). The Court should not, as the government would have it, count those days anyway.

The ordinary meaning of "disregard" supports that § 7508A(d) excludes the disaster period from the timeliness computation. When a statute leaves a term undefined, courts apply its ordinary meaning. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). Here, the mandate to "disregard" the disaster period plainly on its face means that such period should not be counted. In further support, Merriam-Webster defines "disregard" as "to pay no attention to."[4] Congress embedded that term in a computational command: the disaster period must be disregarded "in determining" timeliness. Because timeliness is determined by counting time, a period that must receive no attention in that calculation cannot be counted against the taxpayer. Counting those days anyway does not interpret the statutory text; it inverts it.

The government's reading rewrites "shall be disregarded" as a rule that merely resets a deadline—transforming a command about how to count time into a rule about when a due date falls. Under that approach, the limitations clock runs during the very period Congress directed courts to ignore, collapsing the remaining time into a short post-disaster

---

[4] *Disregard*, Merriam-Webster Dictionary.com, https://www.merriam-webster.com/dictionary/disregard (last visited Jun. 9, 2026).

window. Section 7508A(d) adopts no such rule. It directs that the disaster period itself "shall be disregarded" in determining timeliness, and that command must be applied as written. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004).

**B.      26 U.S.C § 7508 precedent supports that "disregard" means just that—disregard—and thus operates by excluding time from the count.**

Section 7508A was enacted against the backdrop of 26 U.S.C. § 7508 and uses terminology drawn from it. 26 U.S.C. §§ 7508, 7508A. That relationship is relevant because § 7508 employs the same "shall be disregarded" formulation in the combat-zone context, and § 7508A incorporates the same categories of covered acts by cross-reference. 26 U.S.C. § 7508(a); 26 U.S.C. § 7508A (a)(1). Accordingly, interpretations of how § 7508 applies the "disregarded" concept inform the meaning of the same term as used in § 7508A. 26 U.S.C. §§ 7508(a), 7508A(d) (2019).

Courts applying § 7508 compute timeliness by excluding protected periods from the count, i.e., by tolling the period, not merely postponing the deadline.

For example, in *Hampton v. United States*, 513 F.2d 1234 (Ct. Cl. 1975), the taxpayer's 1964 return was filed on April 15, 1965, triggering a three-year refund period that would ordinarily have expired on April 15, 1968. The taxpayer entered a combat zone on November 3, 1967, at which point approximately 5½ months remained on the limitations period. The taxpayer's estate filed its refund claim on January 2, 1970. The court computed the three-year refund period deadline by applying a tolling framework, not postponement. It determined how much time remained when combat service began (5½

18

months), excluded the entire protected period (combat service plus 180 days), and then allowed the remaining portion of the original limitations period to run afterward. In other words, the statute paused the clock and resumed it with the unused time. The claim failed only because the estate did not act within that preserved remainder, confirming that § 7508 operates by tolling, not by resetting the deadline.

A similar example—but one in which the filing was timely under a tolling framework—is *Wood v Commissioner*, T.C. Memo. 2021-103, 2021 WL 3662399. There, the taxpayer's 2015 return was due April 18, 2016. She was in a combat zone from January 1 through April 19, 2016. Under § 7508, the Tax Court did not treat that relief as a simple postponement to a fixed date. Instead, it excluded the relevant days from the timeliness calculation: 109 days of combat-zone service before the deadline, plus the statutory 180-day relief period, for a total of 289 days disregarded. Applying that exclusion, the court moved the filing deadline to February 2, 2017. But the analysis did not stop there. Before that date, the taxpayer returned to the combat zone on December 24, 2016, triggering a further suspension under § 7508. Because that additional protected period was likewise disregarded, the court held that her October 26, 2017, filing was timely. That result is only consistent with a tolling framework. The court repeatedly stopped the clock during each covered period and resumed it afterward, excluding those days from the computation. This result cannot be reconciled with a single, fixed postponed deadline—which would have expired well before the taxpayer filed her return.

The government acknowledges that *Wood*, (as well as the IRS's position in Rev. Rul. 76-425, 1976-2 C.B. 447), reflects tolling rather than mere postponement. Dkt 26., fn.6. It

19

attempts to distinguish them on the ground that the relevant deadlines fell during the combat period. But that distinction misses the point. Those authorities are relevant to the postpone-versus-tolling issue not because of when the deadlines fell, but because of how timeliness is computed—by disregarding the protected period. That method correctly reflects the meaning of "disregard" in this context: excluding the period from the count, not shifting a fixed deadline.

The government may be implying a different alleged limitation: that § 7508 relief applies only if the original deadline falls within the combat-period window. That limitation finds no support in the statutory text, and the government cites none.[5] It would also produce arbitrary results. Two otherwise identical service members could receive materially different relief based solely on when a nominal deadline happens to fall—one receiving full relief and the other receiving less or no relief despite continuous service during the same period. Section 7508 does not draw that line. It contains no condition tying relief to the placement of a deadline within the combat-period window.

The same defect carries over to § 7508A. Under the government's approach, relief would depend on whether a refund claim deadline happens to fall within the disaster period, producing the same arbitrary distinctions among similarly situated taxpayers. A taxpayer whose deadline falls just before the disaster period ends would receive relief, while a

---

[5] The government presents only a straw-man hypothetical: taxpayers in Montana receive a 67-day extension to file their taxes due April 2027 on the grounds that there was a 7-day disaster period in January 2027. Dkt. at 15. This is different than BMW's situation where almost the entire three-year window in which the refund claim must be filed is within the disaster period.

taxpayer whose limitations period spans the same disaster but expires shortly after would receive none. Nothing in § 7508A suggests Congress intended relief to hinge on such timing accidents.

### C.    Neither the Title nor Agency Guidance Overrides 26 U.S.C. § 7508A(d)'s Mandate.

The government focuses on a word in § 7508A's title and a regulation under § 7508A to attempt to overcome the plain meaning of § 7508A's text. Dkt. 26 at 11-13.

To preface (explained further below), these arguments ignore a key statutory distinction: § 7508A contains both discretionary and mandatory relief provisions, and this case concerns the mandatory provision. Subsection (a) authorizes discretionary relief: the Secretary "may specify" the acts and period for disaster-related relief. 26 U.S.C. § 7508A(a) (2019). Subsection (d) is different. For qualified taxpayers, Congress itself commanded that the applicable disaster period "shall be disregarded" in determining whether covered acts were timely performed. 26 U.S.C. § 7508A(d) (2019). One covered act is "[f]iling a claim for credit or refund of any tax." 26 U.S.C. §§ 7508A(a)(1), 7508(a)(1)(E). The question, then, is not how the IRS generally administers discretionary postponement relief under subsection (a), but how to apply Congress's mandatory period-disregard rule under subsection (d).

The government leans on § 7508A's title, which refers to "authority to postpone." Dkt. 26 at 11. But a title cannot narrow the operative statutory text. *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947). The title also proves less than the government suggests. The word "postpone" naturally describes one way the Secretary may

21

implement discretionary relief under subsection (a): by moving selected due dates for selected acts during a specified disaster period. 26 U.S.C. § 7508A(a). It does not silently rewrite subsection (d), where Congress used different, mandatory language: the disaster period "shall be disregarded." 26 U.S.C. § 7508A(d) (2019). The word "postpone" is also in the title to § 7508, and as discussed previously, that statute has been applied as a tolling provision, not a traditional postponement mechanism; thus, § 7508 further supports that reliance on the word "postpone" in the title of § 7508A is misplaced.

In short, the government overplays its hand with the section's title.  A title cannot be used to convert a command to disregard a period into a narrower rule that merely moves deadlines falling inside that period. *Bhd. of R.R. Trainmen*, 331 U.S. at 528–29; *Lamie*, 540 U.S. at 538.

Reliance on the regulation also fails. The government invokes a 2009 amendment to Treasury Regulation § 301.7508A-1(b)(2) (T.D. 9443, 2009-8 I.R.B. 564), which uses the term "postpone" and limits relief to due dates that "fall[] within the postponement period." But that regulatory language predates—and thus should not control—the mandatory regime at § 7508A(d) that Congress enacted in 2019, approximately a decade *after* it promulgated the regulation. The government effectively reads a preexisting regulation governing discretionary relief as if it had already incorporated a different statutory rule Congress had not yet written. Properly construed, the regulation describes one way the administration of discretionary postponement under § 7508A(a) may be implemented.

22

If, however, the regulation is construed as the government urges—as supplanting § 7508A(d)'s period-disregard command with a due-date-only regime the statute does not contain—it cannot stand. The Administrative Procedure Act requires the Court to exercise independent judgment in determining statutory meaning and to set aside agency action that exceeds statutory authority. 5 U.S.C. § 706(2)(A), (C); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92 (2024). Agencies do not receive deference on questions of statutory interpretation; the Court must adopt the statute's best reading. *Id.* at 374, 391-92. Properly read, § 7508A(d) directs that the disaster period "shall be disregarded" in computing timeliness. A regulatory interpretation that instead counts that period—by converting a time-exclusion rule into a mere deadline-shifting mechanism—conflicts with the statute's text and therefore exceeds Treasury's authority. Nor can longevity rescue that interpretation: *Loper Bright* confirms that agency practice cannot override a court's duty to determine the statute's best meaning. *Id.*

Accordingly, § 301.7508A-1(b)(2) should be read, if possible, as implementing discretionary postponement under § 7508A(a)—a reading that harmonizes the regulation with the statute. But if it instead bears the meaning the government assigns it, it exceeds statutory authority and cannot control.

### D.    26 U.S.C. 7508A prevents erosion of Congress's prescribed timeframes—a result the Government's postponement theory would produce.

Congress enacted and expanded § 7508A to ensure that taxpayers were not disadvantaged by the extraordinary disruption of the COVID-19 pandemic—an event that

23

shut down large segments of the economy and impeded ordinary business operations nationwide. Consistent with that purpose, § 7508A required that the COVID-19 disaster period—running from January 20, 2020, through July 10, 2023—be disregarded in computing federal tax deadlines. *Kwong v. United States*, 179 Fed. Cl. 382 (2025) (holding that statutory deadlines were automatically suspended for the entirety of that period).

BMW's 2019 return indisputably fell within that disruption period: its original due date (April 15, 2020) and extended due date (October 15, 2020) both occurred while the COVID-19 pandemic relief rules were in effect. BMW timely filed both its original Form 1120 return and its superseding Form 1120 return within that filing window. Absent § 7508A's mandated disregard of the disaster period, the three-year limitations period under § 6511(a) would have required BMW to file any Form 1120-X amended return refund claim between September 2023 and October 2023, depending on which Form 1120 return controlled.

The government's theory, however, collapses Congress's relief into a post-pandemic sprint. By its logic, BMW would have had only the brief post-COVID-19 interval from July 2023 until mid-September 2023 to investigate, develop, and file its refund claim—effectively compressing § 6511's three-year period into a matter of weeks once the COVID-19 pandemic-driven § 7508A relief period ended. Taxpayers with deadlines closer to July 10, 2023 would be in an even greater time crunch. That result is in tension with the structure and purpose of the statutory framework. Section 6511 provides taxpayers a full three-year period to identify and pursue refund claims; § 7508A ensures that extraordinary disaster conditions do not erode that period by requiring that those conditions be disregarded

24

altogether. Reading § 7508A as the government proposes would do the opposite: it would allow the very disruption Congress sought to neutralize in calculating timeliness to instead cut short the full limitations period Congress provided.

## CONCLUSION

The government asks this Court to adopt a "first-filed return" rule the U.S. Supreme Court and the Federal Circuit have already rejected and to stretch inapposite authorities to a question they do not address. Section 6511, its structure, and controlling precedent compel a single conclusion: BMW's timely filed Form 1120 superseding return is "the return," and its Form 1120-X amended return refund claim is timely. Independently, § 7508A forecloses dismissal by requiring that the disaster period be disregarded, preserving the full limitations period within which BMW filed its refund claim. For either of these reasons, the Court should deny Defendant's Motion to Dismiss.

Dated: June 9, 2026

JUAN F. VASQUEZ JR.
juan.vasquez@nelsonmullins.com
PETER LOWY
peter.lowy@nelsonmullins.com
TANIA P. ALBUJA
tania.albuja@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Tel: (346) 646-5506
Fax: (346) 241-3758

BRANDON BIGELOW
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Tel: (617) 217-4660
Fax: (617) 217-4710
brandon.bigelow@nelsonmullins.com

*Attorneys for Plaintiff*