IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**SUR-SUR-REPLY IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

The United States submits the following sur-sur-reply in support of its motion to dismiss

for lack of subject-matter jurisdiction in response to plaintiff's sur-reply opposing that motion,

per the Court's Order of April 15, 2026. *See* Dkt. 23.

Dated: June 16, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

LINDSAY L. CLAYTON
Assistant Director

ALEX SCHULMAN
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice

# TABLE OF CONTENTS

**Content(s)**                                                                                          **Page(s)**

I. BMW Continues to Misrepresent the *Greene* case ................................................................. 2

II. The United States Has Never Stated a 'Dual Clock' Theory and Needs No Such Theory to Win Here ........................................................................................................................... 4

III. BMW Continues to Ignore the Jurisdictional Import of the Disputed Statutes ........................ 5

IV. BMW's September 15, 2023 Filing Deadline Was Not Altered By COVID-19 ..................... 7

V. Conclusion ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Case(s)**                                                                                              **Page(s)**

*Almendarez-Torres v. United States*,
    523 U.S. 224, 234 (1998) .................................................................................... 8, 10, 11

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*,
    331 U.S. 519 (1947) ..................................................................................................... 10

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012) ..................................................................................................... 12

*Greene v. United States*,
    191 F.3d 1341 (Fed. Cir. 1999) ............................................................................ *passim*

*Haggar v. Helvering*,
    308 U.S. 389 (1940) ....................................................................................................... 5

*King v. Burwell*,
    576 U.S. 473, (2015) .................................................................................................... 12

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ..................................................................................................... 10

*Monsalvo Velazquez v. Bondi*,
    604 U.S. 712 (2025) .................................................................................................. 8, 10

*Nat'l Paper Prods. Co. v. Helvering*,
    293 U.S. 183 (1934) ..................................................................................................... 5, 6

*Northshore Min. Co. v. Sec'y of Lab.*,
    709 F.3d 706, 710 (8th Cir. 2013) ............................................................................... 10

*Zellerbach Paper Co. v. Helvering,*
    293 U.S. 172 (1934) ........................................................................... 5, 6

**Federal Statute(s)**                                                     **Page(s)**

26 U.S.C. § 1 *et seq.* ......................................................................................... 3

26 U.S.C. § 250 .................................................................................................. 5

26 U.S.C. § 6501 ........................................................................................... 7, 12

26 U.S.C. § 6511 ..................................................................................... *passim*

26 U.S.C. § 7422 ........................................................................................... 1, 6

26 U.S.C. § 7508 ................................................................................................ 12

26 U.S.C. § 7508A .................................................................................. *passim*

**Procedural Rules**                                                       **Page(s)**

RCFC 5.4(b)(2).....………....................................…….............................. 1

**Regulation(s)**                                                            **Page(s)**

26 C.F.R. § 1.0-1 *et seq.*..................................................................................... 3

**Other Authorities**                                                    **Page(s)**

88 FR 8884-01, 8884 (February 10, 2023)......................................................... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 25-1984 T
(Judge Richard A. Hertling)

BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

The United States has moved to dismiss plaintiff BMW (US) Holding Corporation and

Subsidiaries' ("BMW") complaint for lack of subject matter jurisdiction because BMW's

administrative refund claim was filed more than three years after the relevant tax return, making

that administrative claim untimely under § 6511(a) and this suit barred under § 7422(a). *See* Dkt.

13; Dkt. 26 at 1-9. BMW opposes by insisting on a jurisdictionally irrelevant distinction between

"superseding" returns and other "amended" returns that finds no basis in the relevant statutes or

case law. BMW's sur-reply (Dkt. 30) almost entirely rehashes, at excessive length,[1] this

misbegotten argument from its response (Dkt. 22). With respect to this argument, the United

States responds to the only three aspects of BMW's sur-reply that could conceivably be said to

offer something new: (1) its striking expansion of its already strained reading of *Greene v.

United States*, 191 F.3d 1341 (Fed. Cir. 1999), whereby the case now means the opposite of what

it said; (2) its baseless accusation that the United States changed its argument between its motion

and its reply; and (3) its belated acknowledgement (there was none in its response brief) of the

_____

[1] BMW's brief exceeds the page limit set for reply briefs set by RCFC 5.4(b)(2).

1

United States's argument about waivers of sovereign immunity being construed narrowly, to which it fails to provide any adequate answer.

If the superseding return argument fails—as it must—BMW's response also sought an alternative path to jurisdiction based on the idea that a federal disaster declaration at the beginning of the COVID-19 pandemic in March 2020 gave BMW extra time to file a refund claim originally due on September 15, 2023, which is not only well over three years after the disaster was declared but also four months after it ended.[2] BMW seeks this incongruous result from § 7508A(d),[3] which added a "[m]andatory 60-day extension" to an existing statutory scheme whereby the IRS has discretion to "specify a period of up to 1 year that may be disregarded in determining" whether various tax-related "acts" were timely performed. § 7508A(a). But as the United States argued in its reply brief, *see* Dkt. 26 at 9-16, and expands upon below, the argument that Congress meant § 7508A(d) to affect taxpayers whose relevant deadlines did not fall during disaster declaration periods fails as a matter of statutory interpretation and creates absurd results from a public policy perspective.

## I.      BMW Continues to Misrepresent the *Greene* case.

The Court may treat a simple comparison as indicative here: how much did each party quote the actual language of *Greene* in its briefing? The United States' reply (Dkt. 26 at 2-4) highlighted the following:

*Greene*'s taxpayer argued its second-filed return was the jurisdictionally relevant one under § 6511(a) because it "was the first return in which the facts necessary to establish …

---

[2] On May 11, 2023, FEMA officially declared the "incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration" to have "close[d]." 88 FR 8884-01, 8884 (February 10, 2023).

[3] All references are to the version in effect between December 20, 2019, and November 14, 2021.

liability had been established." 191 F.3d at 1343. The United States' contrasting position was that "the 'return' of § 6511(a) refers to the original return for a given year, not to returns which amend or supplement that return." *Id*. The Federal Circuit decided the conflict thus: "In this case, where the events giving rise to the tax necessarily took place after the taxable year, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income." *Id*.

The equivalent in BMW's sur-reply is an empty set. With no textual support, BMW proposes instead that the crux of *Greene* is that the Federal Circuit "asked which filing was the legally operative return for the taxable year." Dkt. 30 at 4. If that is *Greene*'s holding it is an unusually well-hidden one. The term "legally operative return" appears nowhere in the decision. Nor does BMW tell us what else in the decision could be glossed as establishing that otherwise made-up concept, or even how one is to determine what is a "legally operative return" and what is not. BMW suggests that the Tax Code "recognizes" which returns are "operative," but neither the Code nor any Treasury Regulations ever uses the term "operative return." *See* 26 U.S.C. § 1 *et seq.*; 26 C.F.R. § 1.0-1 *et seq.*

Worse, BMW goes on to effectively deny what the Federal Circuit did say. BMW proposes, "[i]f § 6511(a) contained a first-filed-return rule subject only to a narrow post-year-events exception, the Federal Circuit would have said so. It did not." *Id*. at 5. But, to reiterate, that is quite close to what the Federal Circuit said: "**In this case, where the events giving rise to the tax necessarily took place after the taxable year**, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income." 191 F.3d at 1343 (emphasis added). This language strongly suggests the Federal Circuit was articulating a fact-specific exception limited to the circumstances before it, where it was impossible for the tax

to have been imposed at the time the original return was filed. The Federal Circuit tied its analysis directly to the language of 26 U.S.C. § 6511(a) providing that "claim for ... refund of an overpayment of any tax **in respect of which tax that taxpayer is required to file a return** shall be filed by the taxpayer within three years from the time **the return was filed**...." (emphasis as in *Greene*). Unlike the taxpayer in *Greene*, BMW makes no argument that it seeks a refund of an amount that could **only** have been reported on its latter return, nor can it since that return changed nothing relevant to its claim. Surely, then, it is not "the government [who] must convince the Court to disregard *Greene*" for its argument to work. Dkt. 30 at 10.

This Court should apply the *Greene* that actually exists, not the one BMW wishes existed. And the one that exists does not salvage jurisdiction for BMW. The factual aspect of BMW's case that BMW elsewhere highlights over and over—that its "superseding" return for 2020 was filed before the ultimate due date for that tax year—is the opposite of *Greene*, which, as shown above, clearly explains that the "case" it is rendering judgment upon is one "where the events giving rise to the tax necessarily took place after the taxable year."

## II.     The United States Has Never Stated A 'Dual Clock' Theory and Needs No Such Theory to Win Here.

BMW in its sur-reply continues to insist that the United States' position depends on a "dual-clock theory" whereby "BMW's refund claim was untimely because the refund position appeared on BMW's first-filed return and did not change on the superseding return." Dkt. 30 at 6. Rather, as the United States explained in its motion to dismiss and again in its reply, *see* Dkt. 13 at 5-7; Dkt. 26 at 2-4, and above, the issue of comparing between the returns was meant to show why the only possibly colorable argument BMW could make based on *Greene* is unavailable here.

BMW might have said, based on *Greene*'s language of "the events giving rise to the tax" and "took place after," that jurisdiction should be saved here because BMW had only been required, or that it only would have been possible, to report the tax item relevant to the later refund claim—here, foreign-derived intangible income under I.R.C. § 250—on its October 2020 and not its September 2020 return. But since that is not the case (nor has BMW ever so proposed, with its briefing now finished), such an argument is foreclosed.

To be sure, there would still be the "after the taxable year" language in *Greene* suggesting it should not apply to BMW's case, period. But if BMW's situation vis-à-vis being taxed on foreign-derived intangible income had changed between its original and "superseding" return, it would at least be arguable that there was some limited analogy between BMW and the *Greene* taxpayer. The United States was simply showing the Court that even that limited analogy is not available to BMW in this case. BMW agrees.

## III.    BMW Continues to Ignore the Jurisdictional Import of the Disputed Statutes.

BMW says the "relevant lesson" of *Haggar v. Helvering*, 308 U.S. 389 (1940), and various allegedly relevant administrative practices, is that "[a]bsent contrary statutory text, tax law treats multiple timely filings made before the filing window closes as part of a single return-filing process, within which the later timely filing may displace the earlier one as the return for the year." Dkt. 30 at 8. As the United States has already pointed out, *see* Dkt. 13 at 10-13; Dkt. 26 at 7-8, that can only be true if the near-century-old Supreme Court precedents *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934) and *Nat'l Paper Prods. Co. v. Helvering*, 293 U.S. 183 (1934) are considered not to be "tax law." The latter case's summation as to tax assessment was: "the period of limitation [begins] to run on the filing of the first return, and … an

amendment or supplement  [do] not toll the statute." *Nat'l Paper Prods.*, 293 U.S. at 186. So that

is either no longer "law," or BMW is incorrect about how "tax law treats" multiple filings.[4]

Even accepting BMW's "relevant lesson" *arguendo*, moreover, it still tells us nothing

about the parameters of the interlocking jurisdictional statutes §§ 6511(a) and 7422(a). BMW's

lament is that the United States would create "a special jurisdictional exception to th[e] ordinary

rule." Dkt. 30 at 8. But jurisdiction is exceptional. Certainly, it is so in tax refund litigation,

where the ability to sue the government for a refund is based on a waiver of sovereign immunity

that must be strictly construed in the government's favor. *See* Dkt. 13 at 8-9; Dkt. 26 at 5-9.

BMW's non-response to the United States' sovereign-immunity-waiver argument is that

it "assumes the very point in dispute" and "is circular." Dkt. 30 at 9-10. BMW does not explain

how or why this is so. BMW merely states, "[s]ection 6511(a) measures timeliness from 'the

return,' and the statutory question is which filing qualifies as that return when more than one

timely filing exists for the same year." *Id.* But to the extent BMW is proposing that the term "the

return" in § 6511(a) is ambiguous, either generally or as applied to the present facts, then the

canon of interpretation under which waivers of sovereign immunity are to be strictly construed in

the government's favor is precisely what should resolve such an ambiguity. *See* Dkt. 13 at 8

(citing cases); Dkt. 26 at 11-12. Unquestionably, unless *Nat'l Paper Prods.* is taken to not

actually have meant what it said when it said that the statute of limitations on assessment kicks in

---

[4] BMW tries to get around this problem by narrowing *Zellerbach* and *Nat'l Paper Prods.* until
they effectively disappear: "[these] holding[s] addressed which filing controlled for assessment
purposes in a retroactive statute setting where the later document merely computed additional tax
created after the original return had been filed." Dkt. 30 at 14. This is quite different than
BMW's approach to *Greene*, *see supra* at 2-3, wherein BMW completely ignores the Federal
Circuit's focus on the specific context of the tax filing. But *Greene* was clear that it was
distinguishing *Zellerbach* (it did not discuss *Nat'l Paper Prods.*) based on "the circumstances
present here," not declaring a general rule that assessment timeliness has no relationship to
refund-claim timeliness. 191 F.3d at 1344.

"on the filing of the first return, and … an amendment or supplement [do] not toll the statute," 293 U.S. at 186, then BMW's purported "ordinary rule" means that when a taxpayer files a "superseding" return that taxpayer gets extra time to file a claim for refund under § 6511(a) but the government gets no such extra time to assess under § 6501(a). In other words, it construes a waiver of sovereign immunity liberally in the taxpayer's favor while construing the ability for the United States to assess tax strictly against the government. That is the opposite of the law.

## IV.     BMW's September 15, 2023 Filing Deadline Was Not Altered By COVID-19.

BMW accuses the United States of improperly reading § 7508A, a statute entitled "Authority to **postpone certain deadlines** by reason of Federally declared disaster, significant fire, or terroristic or military actions" (emphasis added), to state a "postponement" rather than a "tolling" rule. Dkt. 30 at 16. But BMW's ostensibly textualist counterargument rests on a series of non sequiturs and misreadings. It should be rejected.

Indeed, one such flaw in BMW's position is evident in the very first sentence of its argument, which inaccurately describes § 7508A as requiring that the applicable period be disregarded "in computing the time allowed to perform covered acts." Dkt. 30 at 16. That is not what the statute says. The statute says instead that the period shall be disregarded "in determining . . . whether [covered] acts . . . were performed within the time prescribed therefor." § 7508A(a)(1); *see also* § 7508A(d) (providing that the period specified under subsection (d) "shall be disregarded in the same manner as a period specified under subsection (a)"). And in the context of determining whether an act was timely performed, the applicable period is no less "disregarded" by treating deadlines falling within the period as extended to the end of the period (*i.e.,* postponement) than by recomputing the deadline as if the days in the period do not count (*i.e.*, tolling).

How, then, to resolve this ambiguity in the meaning of "disregarded"? By looking to the clear answer stated in the statute's title ("Authority to **postpone** certain deadlines") and in the heading of subsection (d) ("Mandatory 60-day **extension**"), both of which manifest Congress's intention that "disregarded," in the context of § 7805A, be understood as referring to postponement, not tolling. *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("'[T]he title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."). Also providing important context is the IRS's longstanding implementation of the statute as providing for postponement, which Congress tacitly endorsed when it enacted subsection (d) without requiring the IRS to change that approach. *See Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 725 (2025) ("When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' this Court generally presumes the new provision should be understood to work in harmony with what has come before.").

BMW homes in on the statutory term "disregarded" in § 7508A(a)(1), and, quoting Webster's, concludes:

> Here, the mandate to "disregard" the disaster period plainly on its face means that such period should not be counted. In further support, Merriam-Webster defines "disregard" as "to pay no attention to." Congress embedded that term in a computational command: the disaster period must be disregarded "in determining" timeliness. Because timeliness is determined by counting time, a period that must receive no attention in that calculation cannot be counted against the taxpayer.

*Id.* at 17. But nothing about "pay no attention to" compels the conclusion that Congress's instruction was for the IRS to suspend any limitations period overlapping the disregarded period regardless of when the limitations period started or ended. BMW says we must assume it means this because "timeliness is determined by counting time." But that truism tells us nothing about

how the specified period is to be "disregarded." Although BMW's preferred approach disregards the period, so too does the IRS's longstanding approach of determining timeliness by treating deadlines that fall within the "disregarded" period as postponed.

The IRS's reading is, in fact, the only reasonable way to read the 2019 version of the statute whose subsection (d) contained the "[m]andatory 60-day extension" provision on which BMW relies. Congress explicitly tied that provision to the existing discretionary-relief provision in subsection (a): "the period—(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to … relates, and (B) ending on the date which is 60 days after the latest incident date so specified, **shall be disregarded in the same manner** as a period specified under subsection (a)." § 7508A(d) (emphasis added).

Instead of giving any indication that the IRS had been implementing the discretionary § 7508A(a) incorrectly the many years it had been in effect, Congress in 2019 affirmatively linked the mandatory extension section to the preexisting discretionary relief regime. It is not disputable that the IRS had long implemented § 7508A(a) by postponing deadlines falling within a disaster period, not by tolling all overlapping limitations period irrespective of deadline. *See* Dkt. 26 at 11-12. And because § 7508A(a) was and is discretionary, it makes little sense to argue that when the IRS implemented it that way the IRS was somehow contravening the law. If "the Secretary may specify a period of up to 1 year that may be disregarded in determining" whether Form X is timely filed, and the IRS implements this by saying, "all Forms X that were due between January 1 and January 30 are now due February 1," that is perfectly in line with the statutory language. The "period" of January 1-30 is being "disregarded" because deadlines during that period are ignored and replaced.

If Congress disagreed with the IRS's implementation of § 7508A(a) or intended the new mandatory extension in § 7508A(d) to work differently, it would have said so in 2019. But it did the opposite, tying the mandatory section's operation to the discretionary section that the IRS had long construed and implemented as providing for postponement, not tolling.[5]

BMW dismisses the United States' argument that the statute's titular language—"Authority to postpone certain deadlines"—has any significance, declaring, "a title cannot narrow the operative statutory text," and citing *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519 (1947). Dkt. 30 at 21-22. But that case says a title **can** be persuasive if there is a need to "shed light on some ambiguous word or phrase." *Id.* at 529; *cf. also Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998); *Northshore Min. Co. v. Sec'y of Lab.*, 709 F.3d 706, 710 (8th Cir. 2013). And nothing in BMW's brief or in logic supports the argument that "disregarded" unambiguously directs tolling just because its dictionary meaning is "paid no attention to." *See supra* at 7. In such circumstances, the title's message that this is a statute

---

[5] BMW's argument about the relationship between §§ 7508A(a) and (d) is, more generally, confused and confusing. BMW says the "key [ ] distinction" is that § 7508A(a) says "may specify" whereas § 7508A(d) says "shall be disregarded," and asserts there is therefore no connection between "how the IRS generally administers discretionary postponement relief" and "Congress's mandatory period-disregard rule." Dkt. 30 at 21. This is spurious: each section says "be disregarded" and § 7508A(d)(1) in fact says its "be disregarded" is (other than being mandatory) the same as the "be disregarded" in § 7508A(a). The proper contrast to "may specify" in (a) is not "shall be disregarded" in (d) but rather (d)'s incident date(s) plus 60 days period specification. BMW also speciously raises the Administrative Procedures Act and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *see* Dkt. 30 at 23, but the United States never argued that the Court should defer to an IRS interpretation of any statutory term. *Loper Bright* did not alter the presumption that "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction," the Court "generally presumes the new provision should be understood to work in harmony with what has come before." *Monsalvo Velazquez*, 604 U.S. at 725. That presumption should carry extra weight here where Congress first gave the IRS discretion in implementation and then directed a later provision to work "in the same manner."

10

concerned with "postpon[ing ] deadlines" is highly relevant. *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. at 234.

BMW also all but ignores the United States' identification of the bizarre consequences that would follow from BMW's reading. The United States posed, for example, the hypothetical of a taxpayer who experiences a one-week declared disaster in January 2027. Under BMW's reading, § 7508A(d) does not mean that that taxpayer gets a week plus sixty days relief from any relevant deadlines that fell during the disaster declaration period. It means that that taxpayer automatically gets 67 extra days to file a tax return due in April 2027. BMW here relegates its response to a footnote, calling this a "straw-man hypothetical." Dkt. 30 at 20 n.5. But clearly it is not, raising instead a natural result of BMW's proposed reading. If anything, our relatively simple hypothetical describes a less absurd result than what BMW is non-hypothetically asserting here: that § 7508A(d) means a disaster declaration from early 2020 should push a filing deadline that fell in late 2023, after the disaster had ended, all the way to 2026.

BMW suggests that the government's interpretation would impermissibly "compress" taxpayers' time to act and force them into a post-disaster "sprint." But BMW neglects two things. First, this is how the statute has always worked. Indeed, the discretionary relief provided in § 7508A simply ends whenever the Secretary says, with no additional buffer, and cannot be longer than a year. By that measure, the relief provided in § 7508A(d) is generous in mandating a 60-day cushion. Rather than being "in tension with the structure and purpose of the statutory framework," the government's proposed reading hews to the structure Congress established and strikes a balance between the need for extensions in disaster circumstances and the imperative that extensions be limited and predictable. Second, as should be obvious, the law does not dictate that taxpayers cannot work on their tax matters during the postponement period. BMW itself

11

filed not just one but two tax returns in the fall of 2020. Time does not literally vanish, so in no way does the government's interpretation "compress" the time to act.

Finally, BMW has no answer for the United States' argument that BMW's purportedly textualist reading would turn § 7508A(d) into as much a punishment as a relief measure. *See* Dkt. 26 at 15-16. BMW nowhere disputes that § 7508(a), whose relationship with § 7508A BMW relies upon to make its tolling argument, contains among its enumerated "acts" instances of government actions against taxpayers. So consider how, if the statute really mandates not only tolling but tolling irrespective of whether the relevant deadline is within or outside the disaster declaration, the United States' above-stated hypothetical would work for a taxpayer that the government determines underpaid its 2023 taxes. Assuming a timely original return, § 6501(a) would normally give the IRS until April 2027 to assess any underpayment (which the IRS must do before it can pursue administrative collection processes). But under BMW's theory, **because** that taxpayer had the misfortune to live in a disaster area for one week in January 2027, the IRS now has until late June to assess. This, on BMW's reading, is the only reasonable construal of a statutory subsection obviously meant to **help** disaster-affected taxpayers. That cannot be right. *Cf. Freeman v. Quicken Loans, Inc*., 566 U.S. 624, 632 (2012) (rejecting interpretation that could turn statute's intended beneficiaries into its potential targets); *King v. Burwell*, 576 U.S. 473, 489-92 (2015) (rejecting interpretation that would cause opposite result of statutory purpose).

## V.     Conclusion

Neither a jurisdictionally irrelevant "superseding return" nor a declaration from early 2020 concerning the COVID-19 disaster absolve BMW of § 6511(a)'s directive that a valid administrative refund claim for its 2019 tax year must have been filed by September 15, 2023. Because it was not so filed, this case must be dismissed for lack of subject matter jurisdiction.

12

Dated: June 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Assistant Director

*/s/ Alex Schulman*
ALEX SCHULMAN
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Telephone: (202) 514-0456
Alexander.Schulman@usdoj.gov

*Attorneys for Defendant*