# In the United States Court of Federal Claims

No. 25-1984T
Filed: August 5, 2026
FOR PUBLICATION

| | |
|---|---|
| **BMW (US) HOLDING CORPORATION AND SUBSIDIARIES,** | |
| *Plaintiff,* | |
| **v.** | |
| **UNITED STATES,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

*Juan F. Vasquez, Jr., Brandon Bigelow, Peter A. Lowy,* and *Tania Albuja*, Nelson Mullins Riley & Scarborough LLP, for the plaintiff.

*Alex Schulman*, U.S. Department of Justice, Washington, DC, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, BMW (US) Holding Corporation and Subsidiaries ("BMW US"), sues the defendant, acting through the Internal Revenue Service ("IRS"), for a refund of taxes. BMW US filed its IRS Form 1120 tax return ("initial 2019 tax return") on September 15, 2020. On October 14, 2020, BMW US filed a superseding IRS Form 1120 tax return ("superseding 2019 tax return"). On October 13, 2023, BMW US filed an IRS Form 1120-X ("2019 refund claim" or "refund claim") seeking a refund of $38,436,000. The IRS disallowed the 2019 refund, finding that it had been filed outside the three-year statute of limitations prescribed in 26 U.S.C. § 6511. BMW US then filed this action seeking the $38,436,000 from its 2019 refund claim.

The defendant has moved to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction. The defendant argues that BMW US filed its 2019 refund claim after the limitations period for filing its refund claim had expired. The plaintiff seeks refuge from the statute of limitations first under *Haggar Co. v. Helvering*, 308 U.S. 389 (1940), and then under *Greene v. United States*, 191 F.3d 1341 (Fed. Cir. 1999). In the alternative, the plaintiff argues that under 26 U.S.C. § 7508A(d), a law providing emergency relief to qualified taxpayers affected by the federally declared disaster for COVID-19, the statute of limitations is tolled.

*Haggar* and *Greene* are inapplicable to this case.  Therefore, the plaintiff's initial 2019 tax return, filed on September 15, 2020, is used to calculate whether the statute of limitations on its refund claim has expired.  Because the 2019 refund claim was filed on October 13, 2023, more than three years after the filing of the initial 2019 tax return, the claim would normally be time-barred.

The provisions of 26 U.S.C. § 7508A(d), however, may toll the plaintiff's claim if the recent decision in *Kwong v. United States*, 179 Fed. Cl. 382 (2025), *appeal filed*, No. 2026-1843 (Fed. Cir. May 20, 2026), is upheld by the Federal Circuit.  *Kwong* held that the period during which a disaster declaration was in effect due to the COVID-19 pandemic was from January 20, 2020, to July 10, 2023.  As BMW US filed its 2019 tax returns during the COVID-19 disaster period, section 7508A(d) may apply to make its refund claim timely, if the decision in *Kwong* is upheld.  Therefore, the defendant's motion to dismiss is granted in part and stayed in part; the motion to dismiss BMW US's claim will be held in abeyance pending the outcome of the *Kwong* appeal.

## I.    FACTUAL BACKGROUND[1]

The plaintiff is an indirect, wholly owned subsidiary of BMW AG ("BMW"), a German manufacturer of automobiles and motorcycles.  (ECF 25 at ¶ 21.)  BWM US is the American parent corporation for a group of companies, including BMW North America and BMW Manufacturing, operating in the United States.  BMW US is the agent authorized to file corporate tax returns on behalf of that group.  (*Id*. at ¶¶ 21-23.)

On March 13, 2020, the President of the United States declared a nationwide emergency under § 501(b) of the Robert Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. § 5121-5207, because of the COVID-19 pandemic.  Proclamation No. 9994, 85 Fed. Reg. 15337 (March 13, 2020).  The President also approved major disaster declarations for each of the 50 states under § 401 of the Stafford Act.  *See* Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020).  BMW US's principal place of business at that time was Woodcliff Lake, New Jersey.  On March 25, 2020, the Federal Emergency Management Agency ("FEMA") declared New Jersey a major disaster area.  *See* New Jersey; Major Disaster and Related Determinations, 85 Fed. Reg. 20700, 20701 (April 14, 2020).  As with other state disaster

---

[1] On a motion to dismiss, the well-pleaded facts in the complaint are taken as true. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true.  *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings.  *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).  The facts recited here drawn from the complaint are assumed to be true in resolving this motion.  This opinion makes no findings of fact.

declarations, the New Jersey disaster declaration identified the pandemic disaster as "beginning on January 20, 2020, and continuing." *Id.*

Tax returns are due on April 15 of the subsequent year following the close of the taxable year. 26 U.S.C. § 6072. For the tax year ending December 31, 2019, tax returns were due on April 15, 2020. The plaintiff, however, obtained an extension from the IRS to file its federal income-tax return by October 15, 2020. (ECF 25 at ¶ 10.) On September 15, 2020, the plaintiff filed its initial 2019 tax return through IRS Form 1120. (*Id.* at ¶ 11.) The return showed an amount due of $1,505,650,015, which BMW US paid in full. (*Id.*)

On September 21, 2020, the IRS issued new regulations implementing 26 U.S.C. § 168, a statute implementing the Accelerated Cost Recovery System to allow businesses and individuals to write off the cost of certain assets more quickly than under the traditional straight-line depreciation model. The statute provides an additional allowance for owners of qualified property during the year that property is put into service. 26 U.S.C. § 168(k). The new regulations affected an election BMW US was eligible to take on its 2019 tax return. On October 14, 2020, the plaintiff filed the superseding 2019 tax return to take advantage of section 168. (ECF 25 at ¶¶ 12-13.)

Unrelated to 26 U.S.C. § 168(k), under 26 U.S.C. § 250, as enacted by the Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054 (Dec. 22, 2017), the plaintiff filed its 2019 refund claim on October 13, 2023, through IRS Form 1120-X. In its refund claim, BMW US sought a refund of $38,436,201. (*Id.* at ¶ 14.) On November 21, 2023, the IRS disallowed the 2019 refund claim because it was filed more than three years after the plaintiff's initial 2019 tax return. (*Id.* at ¶ 15.) On December 19, 2023, the plaintiff requested that the IRS reconsider the disallowance, and on June 3, 2025, the IRS reaffirmed its rejection of the refund claim as untimely.

## II.    PROCEDURAL HISTORY

On November 19, 2025, the plaintiff filed its complaint, alleging that it had filed its 2019 refund claim within the three-year statute of limitations and seeking a refund of $38,436,201. (ECF 1 at 8.) The defendant moved to dismiss under RCFC 12(b)(1) on February 11, 2026. On February 12, 2026, the plaintiff's counsel contacted the defendant and requested that the exhibits be filed under seal. In response, the United States filed an unopposed motion to replace the exhibits, and on February 13, 2026, the defendant was ordered to refile its motion, which the defendant did that same day.

The defendant's motion to dismiss argues that although the plaintiff filed its 2019 refund claim within three years of its superseding 2019 tax return, that refund claim was not filed within three years of its initial 2019 tax return, and the statute of limitations had expired.

On April 10, 2026, the plaintiff responded to the defendant's motion to dismiss, arguing that the statute of limitations on its tax refund claim did not begin to run until the superseding 2019 tax return was filed on October 14, 2020. Thus, according to the plaintiff, its 2019 refund claim is timely. In the alternative, the plaintiff argues that its refund claim is timely because the

limitations period was tolled under 26 U.S.C. § 7508A(d) when a disaster was declared in response to the COVID-19 pandemic.

On April 16, 2026, the plaintiff filed an amended complaint, further alleging that its 2019 refund claim remains timely because the limitations period under 26 U.S.C. § 6511(a) was tolled from January 20, 2020, through July 10, 2023.  (ECF 25 at ¶ 9.)  On May 26, 2026, the defendant filed its reply brief in support of the motion to dismiss.  On June 9, 2026, the plaintiff filed a sur-reply on the defendant's motion to dismiss, and on June 16, 2026, the defendant filed a sur-reply on the motion to dismiss.  Oral argument was held on July 22, 2026.[2]

### III.    JURISDICTION AND STANDARD OF REVIEW

The jurisdiction of the Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act itself does not "create[ ] a substantive right enforceable against the Government by a claim for money damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).  Instead, the Tucker Act limits this court's jurisdiction to causes of action based on separate money-mandating statutes and regulations. *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).

Section 1346(a)(1) of title 28 of the United States Code grants the Court of Federal Claims jurisdiction, concurrent with the district courts, over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected. . . ."

There are statutory preconditions to maintaining jurisdiction over a tax refund suit in a judicial forum.  First, jurisdiction to consider claims for tax refunds is limited by 26 U.S.C. § 7422(a), which provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been

---

[2] In addition to the motion to dismiss, the plaintiff moved to seal the exhibits to its complaint and the exhibits attached to the motion to dismiss; the defendant cross-moved to unseal these exhibits, except to the extent RCFC 5.5 and 9(m) authorize information to be withheld.  These motions are fully briefed and were addressed during oral argument.  The parties were directed to try to resolve the issues of confidentiality informally.  The cross-motions to seal and unseal will be addressed later, if the parties cannot reach agreement.

> erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Second, an administrative refund claim must have been "filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). A return filed before the last day to file is generally deemed filed on that last day, 26 U.S.C. §§ 6501(b)(1), 6513(a), but "[w]hen an extension of time to file is obtained, a return that is delivered to the IRS before the extended due date is considered filed as of the day it is delivered to the IRS." *Mitchell v. Com'r*, 103 T.C. 520, 522 (1994); *see also First Charter Fin. Corp. v. United States*, 669 F.2d 1342 (9th Cir. 1982). Generally, unless the statutory preconditions are met, a refund suit "may not be maintained in any court" and will be dismissed for lack of subject-matter jurisdiction. *United States v. Dalm*, 494 U.S. 596, 602 (1990).

The requirement that an administrative claim be filed goes to jurisdiction; the adequacy of an administrative filing to support a claim goes to whether a claim is meritorious. *Dixon v. United States*, 67 F.4th 1156, 1161 1008, 1011-12 (Fed. Cir. 2023) (citing *Brown v. United States*, 22 F.4th 1008, 1011-12 (Fed. Cir. 2022)). "[T]he adequacy of the filing . . . is different from the fact of filing." *Brown*, 22 F.4th at 1011. While not all "duly filed" requirements are jurisdictional prerequisites to pursuing a claim, the time limitations of 26 U.S.C. § 6511(a) are a jurisdictional "fact of filing" question. *See Dixon*, 67 F.4th at 1161.

In determining whether a court lacks subject-matter jurisdiction pursuant to RCFC 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). As noted in footnote 1, above, when a plaintiff's alleged jurisdictional facts are challenged, only those allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

## IV.    DISCUSSION

In support of its motion to dismiss under RCFC 12(b)(1), the defendant argues that the plaintiff's initial 2019 tax return, filed on September 15, 2020, and not the superseding 2019 tax return filed on October 14, 2020, started the running of the statute of limitations. Thus, the plaintiff's 2019 refund claim, filed on October 13, 2023, was filed after the expiration of the three-year statute of limitations, depriving the court of jurisdiction.

The plaintiff makes two arguments in response. First, the plaintiff contends that a superseding tax return is treated as the original return when a taxpayer files before the filing

deadline, even when the IRS has extended that deadline. Thus, because BMW US had received an extension of the due date for its tax return from April 15 to October 15, 2020, and both its initial 2019 and superseding 2019 tax returns were filed before October 15, 2020, the statute of limitations did not begin until the superseding 2019 tax return was filed on October 14, 2020. According to the plaintiff, because BMW US's 2019 refund claim was filed within three years of its superseding return, it is timely. Second, the plaintiff argues that its claim is timely because the limitations period to file its 2019 refund claim was tolled under 26 U.S.C. § 7508A(d) by COVID-19-related disaster declarations.

The Internal Revenue Code provides that "[a] claim for . . . refund of an overpayment of any tax in respect of which the taxpayer is required to file a return shall be filed by the taxpayer within three years from the time the return was filed." 26 U.S.C. § 6511(a). Although a taxpayer may file multiple returns, only one is considered "the return" for purposes of calculating the three-year limitations. *See, e.g., Badaracco v. Com'r.* 464 U.S. 386, 393 n. 8 (1984). Tax returns fall into three categories: initial returns (the first timely return for a given tax year); superseding returns (filed after the initial return but before the prescribed due date); and amended returns (filed after the initial return and after the due date). 15 Mertens, Law of Fed. Income Tax'n, § 57.16 (May 2026).

Tax returns are due by April 15 of the year following the year for which the tax is due. Any return for a given calendar year filed before the due date of April 15 is treated as having been filed on April 15. *See* 26 U.S.C. §§ 6501(b)(1), 6513(a). Any return filed after April 15 is treated as having been filed on the actual date it is received, even when the taxpayer receives an extension until October 15 to file the return. *See First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1346 (9th Cir. 1982); *see also Mitchell*, 103 T.C. at 522. Thus, initial and superseding returns filed before April 15 are deemed filed on April 15, while those filed after April 15 but before the expiration of an extended deadline are treated as filed on the dates they are received.

This distinction gives rise to the plaintiff's claim. The IRS granted the plaintiff an extension until October 15, 2020, to file its 2019 return. The plaintiff filed its initial return on September 15, 2020, and a superseding return on October 14, 2020. Both returns were filed before the extended deadline and the second was properly marked as a superseding return, not an amended return. Because both were filed after April 15th, each is treated as filed on its actual date, and one of these dates must trigger the statute of limitations under section 6511. The parties have found no directly analogous precedent for determining the operative trigger to start the statute of limitations when the IRS provided a taxpayer with an extension, and both the initial and superseding returns are filed before that extended deadline.

Relying on longstanding Supreme Court precedent, the defendant asserts that the initial return is "the return" for purposes of sections 6501 and 6511 regardless of amendments or supplements that follow. According to the defendant, the rule established by the Supreme Court in two unanimous decisions authored by Justice Cardozo and issued together, *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934), *National Paper Prods. Co. v. Helvering*, 293 U.S. 183 (1934), controls. In those decisions, the Court held that the limitations period for tax cases is measured from the date of the taxpayer's initial return, even when the taxpayer files a second return.

6

In *Zellerbach Paper*, the Supreme Court held that, for purposes of what is now section 6501, a second return acts as an amendment of or supplement to the initial return filed with the IRS. While a second return may substantively change the contents of an initial return, it does not act as a distinct return that starts the limitations period anew. *Zellerbach Paper*, 293 U.S. at 180 ("a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run.") In *National Paper Products*, the Supreme Court reached the same conclusion, holding that "the period of limitation beg[ins] to run on the filing of the first return, and a return for additional taxes, even if filed afterward, was an amendment or supplement which did not toll the statute." 293 U.S. at 186.

Almost 30 years later, the Third Circuit held that the first-filed tax return triggers the running of the statute of limitations for what is now section 6511, even when the taxpayer files a second return. *Kaltreider Const.., Inc. v. United States*, 303 F.2d 366, 368 (3rd Cir.), *cert. denied*, 371 U.S. 877 (1962). The Third Circuit reasoned that "[t]he language of the Supreme Court in [*Zellerbach Paper*] is directly in point." *Id*.

The rule in *Zellerbach Paper* and *Kaltreider* has been adopted in this court as well. In *Chaney v. United States*, 45 Fed. Cl. 309, 317 (1999), following a thorough analysis, Judge Horn found that the Supreme Court's interpretation of the statute in *Zellerbach Paper* was controlling and concluded that "the statute of limitations time periods set out by [section] 6511(a) are three years from the time of the filing of the original return." *Id*. at 316. The same conclusion had been reached in *Mertens v. United States*, 12 Cl. Ct. 678, 679 (1987).

Even though the second returns in *Kaltreider*, *Chaney*, and *Mertens* were amended returns filed after the filing deadline, and not timely superseding returns, they are still instructive on the issue of which return triggers the running of the statute of limitations. The holdings in *Zellerbach Paper*, *National Paper* and their progeny are not limited to amended returns. Indeed, *Zellerbach Paper* does not deal with an amended return at all. Instead, the Supreme Court held that events after the filing of an initial return, including the filing of an amended or supplemented return, do not start anew the statute of limitations. The holdings in *Zellerbach Paper* and *National Paper* suggest that, when a taxpayer files a second return, the limitations period begins upon the filing of the initial return, regardless of later events, and cannot be restarted. Therefore, the distinction between an untimely (*i.e.*, filed after the filing deadline) amended return or a timely superseding return is irrelevant

The plaintiff, on the other hand, argues that the defendant misapplies *Zellerbach Paper* and *National Paper*, because those cases do not address the situation when a taxpayer files both a timely initial return and a timely superseding return. Instead, the plaintiff relies on *Haggar*, 308 U.S. 389, and subsequent decisions, that, according to the plaintiff, establish a rule that the limitations period runs from "the last timely filed return for the tax period." (ECF 22 at 14) (citing *Haggar*, 308 U.S. 389; *Scaife Co. v Com'r*, 314 U.S. 459 (1941); *Charles Leich & Co. v. United States*, 165 Ct. Cl. 127 (1964)). The plaintiff contends this line of precedents supports treating superseding returns as "the return" that triggers the running of the statute of limitations under section 6511.

7

In *Haggar*, the taxpayer, a corporation, was required by the National Industrial Recovery Act of 1933, Pub. L. 73-67, 48 Stat. 195, 207 (June 16, 1933), to declare the value of its stock on what the statute referred to as the "first return."  The taxpayer could declare any value of capital stock for its first taxable year, but the declared value for that year was a controlling factor in the computation of an excess-profits tax for later years.  The statute provided that the declaration once made could not be amended, and the case centered on the substantive accuracy and effect of the return, not the timing or calculation of limitations periods.

On a timely initial return, the taxpayer mistakenly reported the par value, not the actual value, of its capital stock.  Before the due date, it filed a timely superseding return declaring the actual value.  The IRS refused to accept the value of the capital stock declared in the superseding return and found a deficiency in the excess-profits tax, calculated on the par-value amount declared in the initial return.  Noting that the government was not prejudiced, that the statute's purpose was not thwarted, and that there was a longstanding administrative practice of accepting superseding returns in other contexts, the Supreme Court observed:

> "First return" thus means a return for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year. A timely amended return is as much a "first return" for the purpose of fixing the capital stock value in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year.

*Haggar*, 308 U.S. at 395.

Similarly, in *Charles Leich*, 165 Ct. Cl. 127, the Court of Claims had to interpret the phrase "return for the taxable year" in Section 437(b)(1) of the Excess Profits Tax Act of 1950.  Section 437(b)(1) provided in relevant part that "the invested capital for any taxable year shall be the adjusted invested capital determined under paragraph (2), except that if the taxpayer elects in its return for such taxable year to compute its invested capital under the provisions of section 458, the invested capital for such year shall be the historical invested capital determined under section 458."  165 Ct. Cl. at 139.

Relying on *Haggar*, the Court of Claims rejected the government's argument that the word "return" meant the taxpayer's "first return."  Instead, the court noted that "[n]either the statute nor the regulation speak[s] in terms of 'first return.'"  *Id*. at 140.  Citing *Haggar*, the court observed that a timely second return has been held to be a "first return" under a statute allowing the taxpayer to make an election in its first return.  *Id*. (citing *Haggar*).

Cases such as *J.E. Riley Investment Co. v. Com'r*, 311 U.S. 55 (1940), and *Scaife Co. v Com'r*, 314 U.S. 459 (1941) are to similar effect.[3]  In *J.E. Riley*, the Supreme Court held that the

---

[3] The plaintiff cites other cases to support its argument: *W. Fruit Exp. Co. v. United States*, 90 Ct. Cl. 434 (1940); *Intersport Fashions W., Inc. v. United States*, 103 Fed. Cl. 396 (2012); *King's Ct. Mobile Home Park, Inc. v. Comm'r*, 98 T.C. 511, 518 (1992); *William B. Scaife & Sons Co. v. Commissioner*, 41 B.T.A. 278 (1940); and *Wilson v. United States*,

"first return" for purposes of computing the depletion allowance under 26 U.S.C. § 114 for all future tax years is the last timely return of the original tax year.  311 U.S. at 57-58.  In *Scaife*, the Court held that under the relevant statutory provision, the last timely return for the tax year fixes the value of a taxpayer's capital stock.  314 U.S. at 462.

*Haggar* and its progeny stand for the proposition that a second return, whether an untimely amended return or a timely superseding return, is effective for clarifying what is substantively included in the return.  None of the cases suggest that superseding returns should be used for calculating the statute of limitations period under section 6511 or determining which return triggers the running of the statute of limitation.  Indeed, the decisions do not mention either *Zellerbach Paper* or *National Paper*, so they give no hint that their holdings affect the start date of the limitations period.

*Haggar* and its progeny center their holdings around ensuring that tax returns are accurate, especially when the IRS is mandated by statute to use a tax return as a reference point for all the proceeding years the taxpayer files a return.  Statutes of limitations do not affect the accuracy of tax returns but are instead focused on the efficient and timely administration of tax law.  *Cf. Sullivan v. United States*, 46 Fed. Cl. 480, 490 (2000).  In that sense, *Haggar* and its progeny are silent on the jurisdictional implications of determining for purposes of section 6511(a) whether an initial or a superseding return is "the return" that starts the running of the statute of limitation.  *Haggar* and cases relying on it are not contrary to *Zellerbach Paper* and *National Paper* and do not create a superseding-return exception to the statute of limitations rule established by those decisions.

Applying *Haggar* and its progeny to the plaintiff's claim would also create an incongruent tax regime.  The IRS would still be obligated to follow *Zellerbach Paper* and *National Paper* when assessing a penalty under section 6501.  Thus, its three-year limitations period would begin with the filing of the initial return.  The taxpayer, however, would have the ability to file a superseding return and use the date that return was filed to calculate its three-year limitations period.  This outcome would result in different rules under which "3 years after the return was filed" means one thing for assessment and collection under Section 6501 but "3 years from the time the return was filed" means something different for refunds under Section 6511.

There is no need to create this inconsistency in the tax code as *Haggar* and *Zellerbach Paper* can easily be read together.  A superseding return modifies an initial return under *Haggar* for substantive purposes, but the statute of limitations still relates back to the date of the initial return under *Zellerbach Paper* and *National Paper,* which itself recognizes that a superseding return is "an amendment or supplement to a return already upon the files, and . . . [is] effective by relation," 293 U.S. at 180, even if the superseding return does not start anew the running of the statute of limitation.

---

267 F. Supp. 89 (E.D. Mo. 1967).  All these cases deal with iterations similar to *Haggar*: when a statute requires the IRS to make a determination based on a taxpayer's return, any timely return, including a return that is timely due to an extension of time, serves as the valid return on which the tax or refund is calculated.

BMW US also seeks refuge from the holding of *Zellerbach Paper* and *National Paper* in the Federal Circuit's 1999 decision in *Greene*, 191 F.3d 1341. In *Greene*, the Federal Circuit held that "where the events giving rise to the tax necessarily took place after the taxable year, the return that starts the running of the statute is the return in which the taxpayer is required to or does report the income." *Id*. at 1343. The plaintiff in *Greene* was the receiver for a life-insurance company, Great Global Assurance Company ("GGAC"). Under the relevant statutory provision, GGAC was required to report additional income if it ceased to be a life-insurance company for two successive years. GGAC filed a timely 1983 tax return, but after GGAC ceased to operate as a life-insurance company for the next two, successive years (1984 and 1985), the receiver filed an amended 1983 tax return in 1990 to report the required additional income. In 1993, the receiver filed a claim for a refund of the additional reported income; the claim was denied as untimely, and the plaintiff sued. On appeal from the dismissal of the claim in this court as untimely, the Federal Circuit reversed and held that "the return" referenced in section 6511 could not mean the initial tax return because the plaintiff was unable to report the additional tax liability until at least two years later. Therefore, when a taxpayer seeks a refund after filing both an initial and an amended tax return for the same year, the return that triggers the running of the statute of limitations is the amended tax return when the events on which the refund claim is based could only have occurred after the filing of the initial return.

The recent decision in *Iglinski v. United States,* No. 25-C-895, 2025 WL 3268573 (E.D. Wis. Nov. 24, 2025), applied *Greene* to a similar factual situation while rejecting the holding of *Kaltreider Construction*. In *Iglinski*, the plaintiffs sold stock on December 29, 2020. The sale provided for an initial payment at closing and 16 subsequent quarterly installment payments, beginning one year after closing. On the plaintiffs' initial, timely 2020 tax return, filed on April 6, 2021, they reported the sale of the stock and the associated payment received at closing but not the 16 anticipated quarterly payments. Thereafter, the plaintiffs elected to forgo the 16 installment payments for a single lump-sum payment. On March 1, 2022, the plaintiffs filed an amended 2020 return reporting the entire value of the sale, including the initial payment and the lump-sum payment. The plaintiffs later learned that the stock sale qualified for a partial gain exclusion under 26 U.S.C. § 1202 and filed a second amended return on June 7, 2024, seeking a refund. The IRS denied the plaintiffs' refund because the second amended return was untimely.

Citing *Greene*, the district court held that an amended return should toll the statute of limitations under section 6511 for the portion of any additional tax liability reported for the first time on the amended return. *Iglinski*, 2025 WL 3268573, at *5. The district court held that "'an amended return should not toll the period as to the same taxes admitted to be owed in the original return.'" *Id*. (quoting *In re Lamborn*, 204 B.R. 999, 1005 (N.D. Okla. 1997)). Because the plaintiffs had elected to forgo the monthly installments and take a lump-sum payment instead only after they had filed their initial 2020 return, they were required to and did report the different valuation of the stock sale for the first time on their amended 2020 return, filed in 2022. Therefore, to the extent the plaintiffs were seeking a refund related to that additional income first reported on their amended 2020 return, the plaintiffs' claim was timely.

Even under *Greene* and *Iglinski*, however, BMW US's initial return would be the operative return for calculating the statute of limitations under section 6511. BMW US filed an initial return and a superseding return within a month of each other. *Greene* involved a situation in which the taxpayer could not, as a matter of law, have reported and paid the tax due for which

the refund was sought until later, because prerequisite events had not (and could not have) yet occurred.  Similarly, in *Iglinski,* the taxpayers could not report the full value of the stock sale, for which the refund was later sought, when they filed their initial return because at that time they were expecting to receive the full value of the sale in installments.  Only after they had foregone the monthly installments and elected the lump-sum payment could the plaintiffs have amended their 2020 return to reflect the full value of the stock sale.

Here, BMW US sought to file a superseding return due to new regulations implementing 26 U.S.C. § 168(k).  Its refund claim is based, however, on a "detailed study" BMW US conducted after filing its superseding return.  In that "study," BMW US determined it could amend the amount it could deduct under 26 U.S.C. § 250.  (ECF 5-1 at 3.)  Although a regulatory change may have prompted BMW US to file an amended return (ECF 25 at ¶¶ 12-13), it was an internal study conducted by BMW that prompted it to seek a refund.  The plaintiff's refund suit is based on an item present in the original return and unchanged between the original and supplemental returns.  In its 2019 tax return, BMW US had reported $59,614,925 in section 29b of the return.  (ECF 13-1 at 1.)  In its superseding 2019 tax return, BMW US again reported $59,614,925 in section 29b.  (ECF 13-2 at 1.)  In its refund claim, BMW US explained that it had reviewed its 2019 returns and revised the deduction claimed on line 29b from $59,614,925 to $242,644,454, due to a "detailed study" that prompted BMW US to revise its claimed deductions.  (ECF 5-1 at 3.)

Unlike in *Greene* and *Iglinski*, the refund sought by BMW US is based on an amount that remained unchanged from the initial return to the superseding return, and no change in law or relevant event occurred between the filing of the initial return and the superseding return to support the refund BMW US now claims.  Thus, *Greene* and *Iglinski* do not support the argument that BMW US's refund claim is timely.

In the alternative, the plaintiff argues that its refund claim is timely because the limitations period to file its 2019 refund claim was tolled by 26 U.S.C. § 7508A(d) and the presidential declaration of a disaster from the COVID-19 pandemic.[4]  BMW US argues that after

---

[4] The 2019 version of 26 U.S.C. 7508A(a) and (d), applicable to the plaintiff's claim, provides:

(a) In general.—In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A)) or a terroristic or military action (as defined in section 692(c)(2)), the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—

(1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),

(2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and

11

(3) the amount of any credit or refund. IRC § 7508A(a) (2019).

\* \* \*

(d) Mandatory 60-day extension.--

(1) In general.--In the case of any qualified taxpayer, the period--

(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and

(B) ending on the date which is 60 days after the latest incident date so specified,

shall be disregarded in the same manner as a period specified under subsection (a).

(2) Qualified taxpayer.--For purposes of this subsection, the term "qualified taxpayer" means--

(A) any individual whose principal residence (for purposes of section 1033(h)(4)) is located in a disaster area,

(B) any taxpayer if the taxpayer's principal place of business (other than the business of performing services as an employee) is located in a disaster area,

(C) any individual who is a relief worker affiliated with a recognized government or philanthropic organization and who is assisting in a disaster area,

(D) any taxpayer whose records necessary to meet a deadline for an act described in section 7508(a)(1) are maintained in a disaster area,

(E) any individual visiting a disaster area who was killed or injured as a result of the disaster, and

(F) solely with respect to a joint return, any spouse of an individual described in any preceding subparagraph of this paragraph.

(3) Disaster area.--For purposes of this subsection, the term "disaster area" has the meaning given such term under subparagraph (B) of section 165(i)(5) with respect to a Federally declared disaster (as defined in subparagraph (A) of such section).

(4) Application to rules regarding pensions.--In the case of any person described in subsection (b), a rule similar to the rule of paragraph (1) shall apply for purposes of subsection (b) with respect to--

(A) making contributions to a qualified retirement plan (within the meaning of section 4974(c)) under section 219(f)(3), 404(a)(6), 404(h)(1)(B), or 404(m)(2),

(B) making distributions under section 408(d)(4),

(C) recharacterizing contributions under section 408A(d)(6), and

12

a national disaster had been declared by the President, section 7508A(d) tolled the statute of limitation. (ECF 22 at 31.) According to the plaintiff, the period "'beginning on the earliest incident date specified in the declaration' to which the disaster area relates, and 'ending on the date which is 60 days after the latest incident date so specified,' shall be disregarded in determining whether any of the acts in IRC §7508(a), which includes the filing of a claim for refund, were performed within the time prescribed." (*Id.* at 33) (quoting 26 U.S.C. § 7508A(d)).

Relying on *Kwong* and cases interpreting the "shall be disregarded" language in 26 U.S.C. § 7508(a), also found in section 7508A, BMW US argues that the period between a declaration of a disaster and 60 days after the date the natural disaster is declared over is tolled.

On March 13, 2020, FEMA retroactively declared New Jersey, BMW US's principal place of business, a major disaster area beginning on January 20, 2020. BMW US reasons that because it filed both its initial 2019 tax return and its superseding return after the disaster had been declared, and before the disaster was declared ended, the limitations period of section 6511 did not begin to run until July 10, 2023, 60 days after the disaster was declared to have ended. According to the plaintiff, under section 7508A(d), it had until July 9, 2026, to file its refund claim and, therefore, its refund claim filed on October 13, 2023, is timely.

The defendant responds that section 7508A(d) acts to postpone deadlines rather than to toll the statute of limitations during any period for which a federal disaster has been declared. The defendant notes that *Kwong* expressly declined to decide whether section 7508A(d) provides for the postponement of specific deadlines or the tolling of the statute of limitations, 179 Fed. Cl. at 389. Thus, *Kwong* does not support the plaintiff's timeliness argument here.

The defendant contends that the title of section 7508A reflects that the purpose of the section is simply to "postpone certain deadlines" falling within the period specified in the statute and is not to function as a tolling statute. The defendant also argues that longstanding IRS guidance has interpreted section 7508A only to postpone deadlines, and Congress has amended section 7508A without clarifying that it is a tolling statute. Treas. Reg. § 301.7508A-1(b)(2) (limiting relief under section 7508A to due dates that "fall[] within the postponement period."); Internal Revenue Manual 25.15.9.6.2, 2007 WL 9848429, at *3 (suspension of interest applies to "returns having an original return due date that falls within the disaster period").

---

(D) making a rollover under section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).

(5) Coordination with periods specified by the Secretary.--Any period described in paragraph (1) with respect to any person (including by reason of the application of paragraph (4)) shall be in addition to (or concurrent with, as the case may be) any period specified under subsection (a) or (b) with respect to such person.

Congress has amended section 7508A on three occasions since 2019, once in 2021 and twice in 2025. Because BMW US filed its 2019 tax returns in September and October of 2020, and no amendment applies retroactively, the version of section 7508A quoted in this note in effect from December 2019 until November 2021 applies to this dispute.

13

The parties agree that the plaintiff is a qualified taxpayer for purposes of section 7508A(d) because its principal place of business was declared a disaster area on March 13, 2020. The parties dispute whether the "shall be disregarded" language in section 7508A(d) functions to toll deadlines, removing the specified time from the limitations calculations or merely postpones deadlines that fall during the designated disaster. The parties also dispute the correct period of the COVID-19 disaster. The plaintiff argues that, according to *Kwong*, the period during which the disaster declaration was in effect ran from January 20, 2020, to July 10, 2023. The defendant contends that *Kwong* is still on appeal and maintains the position that the disaster period ran from January 20, 2020, through March 20, 2020.

In *Kwong,* the question was whether the "[m]andatory 60-day extension" under the 2019 version of section 7508A(d) ended 60 days after January 20, 2020 (the "incident date" specified in the disaster declaration), as the government contended, or 60 days after May 11, 2023 (the date on which the disaster declaration was rescinded). Judge Silfen resolved that question favorably to the plaintiff.

The parties in *Kwong* had also disputed whether section 7508A(d) postponed deadlines that fell during the designated disaster or acted as a tolling mechanism, removing the time between the declaration of a disaster and 60 days after the rescission of a disaster declaration from the calculation of the statute of limitations. *Kwong*, 179 Fed. Cl. 385. Judge Silfen declined to resolve that issue because regardless of whether section 7508A(d) operates as a tolling or a postponement statute, the plaintiff in *Kwong* had filed his claim within 60 days of the end of the COVID-19 disaster declaration. Thus, regardless of whether section 7508A(d) operates as a tolling or a postponement statute, the complaint there was found to be timely. *Id*. at 389 ("it does not matter whether the statute provides for tolling or a postponement period.")

The plaintiff relies on *Kwong*'s interpretation of the application of section 7508A(d) to the COVID-19 disaster period to support its argument that its statute of limitations was tolled by section 7508A(d) for the entirety of that period. As *Kwong* is on appeal in the Federal Circuit, there has yet to be a definitive ruling on whether section 7508A(d) is either a tolling or a postponement statute and how it applies to the COVID-19 disaster period. A ruling on the issue now will not finally resolve the question for BMW US's claim. As the parties were informed during oral argument, the resolution of that question will be held in abeyance pending the outcome of the appeal in *Kwong*.

## V.    CONCLUSION

Neither the holdings of *Haggar* and its progeny nor the outcomes of *Greene* and *Iglinski* make BMW US's refund claim timely. *Zellerbach Paper* requires that BMW US's initial 2019 tax return trigger the running of the statute of limitations, not its superseding 2019 return. The plaintiff filed its initial 2019 tax return on September 14, 2020. Under section 6511(a), the limitations period for a refund claim expired on September 15, 2023, three years after the filing of that return. BMW US filed its 2019 refund claim on October 13, 2023, 28 days outside the three-year statute of limitations. Therefore, the plaintiff's refund claim is untimely, unless the onset of the statute of limitations is subject to being tolled.

14

Section 7508A(d) of title 26, however, may apply to the plaintiff's claim if *Kwong* is upheld by the Federal Circuit. Therefore, the defendant's motion to dismiss is granted in part, but the motion will be held in abeyance and its resolution postponed pending the outcome of the appeal in *Kwong*. A separate order reflecting this decision is being filed concurrently with this opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**